# EXHIBIT 2

AMERICAN ARBITRATION ASSOCIATION

Individual Claimants,

                       Claimants,

        v.

Valve Corporation,

                  Respondent.

Case No. 01-23-0005-8578

## ORDER OF PROCESS ARBITRATOR

The arbitrations that are subject to this Order were commenced by Claimants in April 2024. The Process Arbitrator has been appointed by the parties pursuant to Respondent's Steam Subscriber Agreements that the parties entered into and the Mass Arbitration Supplementary Rules of the American Arbitration Association ("AAA"). Having been duly sworn; and having duly heard the proofs and allegations of Claimants, represented by Mason LLP and Siri & Glimstad LLP, and Respondent, represented by Skadden, Arps, Slate, Meagher & Flom LLP; do hereby Order as follows:

1

<u>Procedural Background</u>

Claimants' counsel made four mass AAA arbitration filings against Respondent, totaling 19,911 claimants – three in December 2023 and one in April 2024.

The Process Arbitrator was appointed by the AAA on or about October 23, 2025. The appointment is solely with respect to the fourth mass arbitration filing in April 2024 on behalf of 5,000 Claimants (the "April 2024 Arbitrations"). The Process Arbitrator has been asked to rule on the following administrative issues:

1. Respondent has asked the Process Arbitrator to determine whether the April 2024 Arbitrations should be closed or stayed pending a determination by a court regarding which of two separate Steam Subscriber Agreements applies to the April 2024 Arbitrations.

2. Claimants have asked the Process Arbitrator to determine whether the AAA 2023 Mass Arbitration Supplementary Rules ("2023 MA Rules") or AAA 2024 Mass Arbitration Supplementary Rules ("2024 MA Rules") apply to the April 2024 Arbitrations.

The Emergency Arbitrator conducted a preliminary video conference with counsel for the parties on November 11, 2025, during which a briefing schedule was agreed upon. Thereafter, Claimants filed with the AAA Claimants' Brief on the Applicable AAA Mass Arbitration Supplementary Rules, dated December 12, 2025; Claimants' Opposition to Respondent Valve Corporation's Request to Close or Stay the Arbitrations, dated January 9, 2026; and Claimants' Reply Brief on the Applicable AAA Mass Arbitration Supplementary Rules, dated January 26, 2026.

2

Respondent filed with the AAA Respondent Valve Corporation's Memorandum of Law in support of its Request that the Arbitrations be Closed or Stayed, dated December 12, 2025; Respondent Valve Corporation's Response to Claimants' Brief on the applicable AAA Mass Arbitration Supplementary Rules, dated  January 9, 2024; and Respondent Valve Corporation's Reply Memorandum of Law in further support of its Request that the Arbitrations be Closed or Stayed, dated January 26, 2026.

Factual Summary

The Parties

Respondent Valve Corporation is, among other things, a developer and owner of Steam, a digital video game distribution platform. In 2003, Respondent launched Steam to distribute and update its own video games. By 2005, Respondent expanded Steam's capabilities to allow third parties to market and distribute their video games through Steam. Steam currently has tens of thousands of game developers and publishers using the platform to distribute more than 100,000 games and engage with millions of players worldwide. Gamers rely on Steam to purchase and play video games from Respondent and other publishers and to connect with fellow players and game developers. Claimants are 5,000 individuals who are Steam users.

The Steam Subscriber Agreement

To become a Steam user, one must first create a Steam account and agree to Respondent's Steam Subscriber Agreement ("SSA"). Therefore, as Steam users, Claimants were required to agree to an SSA.

In arbitrations that preceded the filing of the April 2024 Arbitrations, in which claims were asserted that are the same or similar to the claims asserted in the April 2024 Arbitrations,

rulings were made by merits arbitrators that the agreement to arbitrate that was in the SSA and in effect in 2023 (the "2023 SSA") was unenforceable.

Thereafter, on or about September 26, 2024, Respondent amended the 2023 SSA (the "2024 SSA"). In the 2024 SSA, Valve removed the arbitration agreement and class action waiver. Instead, the 2024 SSA requires that all disputes arising out of the 2024 SSA be resolved exclusively in courts in King County, Washington State.

It is not contested that Respondent provided notice that the 2023 SSA was amended and replaced by the 2024 SSA -- in an email to Steam users, an in-app pop-up notification, and a notice on Respondent's website ("This updated Steam Subscriber Agreement will become effective immediately when you agree to it, including when you make more purchases, fund your Steam wallet, or otherwise accept it. Otherwise, the updated Steam Subscriber Agreement will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then.") [Valve Ex. 13] Steam users accepted the 2024 SSA by checking a box labeled "I agree to the Updated Steam Subscriber Agreement" and clicking "Accept Updated SSA" when prompted, making purchases, or funding their Steam wallet.

Accordingly, Claimants have accepted the 2024 SSA either by affirmatively accepting the 2024 SSA or continuing to use their Steam accounts on or after November 1, 2024. Regarding any Claimant who has not logged on to Steam since November 1, 2024, Respondent has represented that it is prepared to continue with the April 2024 Arbitrations.

Analysis and Discussion

### Applicable Law and Rules

Section 10 of the 2023 SSA and 2024 SSA provide that they shall be governed by the laws of the State of Washington.

Section 11 of the 2023 SSA provides, in relevant part: "YOU AND VALVE AGREE TO RESOLVE ALL DISPUTES AND CLAIMS BETWEEN US IN INDIVIDUAL BINDING ARBITRATION."

Section 8B of the 2023 SSA provides for its unilateral amendment:

Valve may amend this Agreement . . . unilaterally at any time in its sole discretion. In this case, you will be notified by e-mail of any amendment to this Agreement made by Valve at least 30 (30) before the effective date of the amendment. . .. Your failure to cancel your Account prior to the effective date of the amendment will constitute your acceptance of the amended terms. If you don't agree to the amendments or to any of the terms in this Agreement, your only remedy is to cancel your Account or to cease use of the affected Subscription(s).

Section 10 of the 2024 SSA provides, in relevant part: "You and Valve agree that all disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction." Section 11 of the 2024 SSA includes a merger clause, which states: "This Agreement . . . constitutes and contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior oral or written agreements."

The 2023 MA Rules state, in relevant part: "Only administrative issues may be submitted to the Process Arbitrator for determination. Administrative issues include . . . iii. determining the applicable AAA rules that will govern the individual disputes . . . v. any other administrative issue arising out of the nature of the Mass Arbitration." 2023 MA Rules 6(d)(iii), (v).

The 2024 MA Rules state, in relevant part: "The Process Arbitrator shall have the authority to determine the following issues: . . . vi. Determining the applicable AAA-ICDR Rules that will govern the individual disputes; . . . ix. Whether subsequently filed cases are part of the

same mass arbitration. . . . xi. Any other non-merits issues affecting case administration arising out of the nature of the mass arbitration that the Process Arbitrator determines is appropriate for determination[.]" 2024 MA Rules 6(c)(vi), (ix), (xi).

<u>Does the 2023 SSA or 2024 SSA apply to the April 2024 Arbitrations</u>

On the issue of whether the 2023 SSA or 2024 SSA applies to the April 2024 Arbitrations, Claimants argue that the 2023 SSA applies and that the determination of such issue is for the arbitrator.

In contrast, Respondent argues that the issue of whether the 2023 SSA or 2024 SSA applies is for a court to decide, not an arbitrator. Respondent relies upon the United States Supreme Court case, *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024). The issue before the Court in *Coinbase* was "the question of who -- a judge or an arbitrator -- should decide whether a subsequent contract supersedes an earlier arbitration agreement that contains a delegation clause." *Coinbase*, 602 U.S. at 147.

The Court stated in *Coinbase* that, where there are two competing agreements, one with an arbitration clause and one without such clause, "a court must decide which contract governs. To hold otherwise would be to impermissibly "'elevate a [delegation provision] over other forms of contract.'"" 602 U.S. at 152 (citations omitted). Thus, the Court reached this conclusion even though the arbitration clause at issue contained a delegation clause broadly delegating questions of arbitrability to the arbitrator. The Court found that delegation cannot override a court's authority to determine which contract controls. The Court's rationale is rooted in the foundational principle that arbitration is a matter of contract and consent, and parties are bound to arbitrate only if they have agreed to do so. "[B]efore either the delegation provision or the

forum selection clause can be enforced, a court needs to decide what the parties have agreed to -
i.e., which contract controls." 602 U.S. at 145.

In approximately two years since *Coinbase* was decided, lower federal courts have
adopted its holding. In *Pilon v. Discovery Communications, LLC*, 769 F. Supp. 3d 273, 291
(S.D.N.Y. 2025), the court held that "where . . . parties have agreed to two contracts—one
sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending
arbitrability disputes to the courts—a court must decide which contract governs." (quoting
*Coinbase*, 602 U.S. at 152); *Tachi-S Eng'g U.S.A., Inc. v. Canoo Techs. Inc.*, No. 24-1291, 2025
WL 253046, at *5 (6th Cir. Jan. 21, 2025) (applying *Coinbase* in affirming denial of motion to
compel arbitration; removal of an arbitration provision in a subsequent contract applied
retroactively to an action under the first contract); *Williams v. Experian Info. Sols. Inc.*, No. CV-
23-01076-PHX-DWL, 2024 WL 3876171, at *16 (D. Ariz. Aug. 20, 2024) ("[T]he delegation
clause in the April 2016 Arbitration Agreement does not preclude the Court from determining
whether that version of the arbitration agreement was later superseded by the February 2023
Arbitration Agreement."). Respondent asserts that these decisions confirm that the court's
authority to decide whether the parties agreed to arbitrate is not displaced by an arbitration or
delegation clause in a prior agreement.

Claimants assert that, in contrast to *Coinbase*, where separate competing agreements
were at issue, this case presents different versions of the same agreement. However, the Court in
*Coinbase* held without qualification that "a court, not an arbitrator, must decide whether the
parties' first agreement was superseded by their second." *Coinbase*, 602 U.S. at 152. A court "has
the authority to enjoin arbitration proceedings where there is no valid, enforceable arbitration
agreement between the parties." *Morgan Stanley & Co. v. Couch*, 134 F. Supp. 3d 1215, 1234

(E.D. Cal. 2015), *aff'd*, 659 F. App'x 402 (9th Cir. 2016). The fact that the parties dispute

whether an amendment to an arbitration provision is applicable to claims does not affect the

court's exclusive authority to determine which agreement controls. In *Pilon v. Discovery

Communications, LLC*, the Court found that the relevant petitioner's assent to Discovery's

updated terms by clicking through a pop-up and continuing to use the Discovery service

"extinguishes any right he once had under the delegation clause" of the prior agreement, even

though his claims had already accrued. 769 F. Supp. 3d at 292. That was so even though

petitioner's claims had been noticed and already accrued prior to the amendment:

> Though the parties dispute whether a modification applicable to accrued contract
> claims is enforceable, that dispute does not extend to a subsequent forum-
> selection clause that supersedes a delegation clause. That is because the
> arbitrability decision is not a *claim* that *accrues*, but merely a forum-selection
> determination based on the scope of an agreement to arbitrate.

769 F. Supp. 3d 273 at 292 n.4.

Claimants argue that, if Respondent's approach is accepted, any company could compel

arbitration, wait for claims to accrue, see how the arbitration proceeds, and then delete arbitration

clauses in the operative agreement to escape liability and force a claimant to start over again in

another forum. In this regard, Claimants argue that Respondent regards *Coinbase* as an open

ticket to derail arbitrations at any stage, even after an arbitrator has rendered a decision on the

merits, thereby making arbitration agreements illusory and upsetting mass arbitration

administration nationwide. However, Claimants' argument does not account for the fact that

Claimants (with limited exceptions) accepted the 2024 SSA through their acts described above.

The question of which agreement governs is not an administrative or case management

issue, but rather a substantive, threshold question of contract law. *Bassidji v. Goe*, 413 F.3d 928,

936 (9th Cir. 2005) ("The question whether a particular agreement is enforceable is one of

substance, not procedure.").

The Process Arbitrator's role is expressly limited to resolving administrative, i.e., non-merits, issues enumerated in AAA MA Rule 6. In this matter, the AAA has confirmed that the Process Arbitrator's function is confined to addressing administrative issues. Accordingly, determining whether the 2023 SSA or 2024 SSA governs is a question outside the Process Arbitrator's authority under the 2023 MA Rules and 2024 MA Rules.

However, the Process Arbitrator does have authority under the AAA MA Rules to direct that the AAA stay the April 2024 Arbitrations until a court determines which SSA applies. In this case, the Process Arbitrator finds that a court must rule on whether the 2023 SSA or 2024 SSA governs the April 2024 Arbitrations and stays the April 2024 Arbitrations until such ruling is made.

<u>Which AAA Rules apply to the April 2024 Arbitrations</u>

In a letter, dated May 7, 2024, the AAA confirmed:

Upon review of the documents submitted in the above-referenced matters, the AAA has determined that these disputes [the April 2024 Arbitrations] will be administered in accordance with the AAA's Mass Arbitration Supplementary Rules, as effective April 1, 2024, in conjunction with the Consume Arbitration Rules. The Consumer Mass Arbitration and Mediation Fee Schedule, as effective January 15, 2023, will also apply to these matters. We note that this is the result of AAA's initial review, and is subject to review by a Process Arbitrator.

Claimants request that the Process Arbitrator review this AAA determination.

Claimants assert that the April 2024 Arbitrations are part of the mass arbitration started in 2023, even though they were not filed simultaneously, because they involve the same claims against Respondent as the claims brought by the same counsel in 2023. Claimants point out that MA Rule 1(c) states: "These Supplementary Rules apply whenever 25 or more similar Demands for Arbitration are filed, whether or not such cases are filed simultaneously." Thus, Claimants

9

argue that any group of cases that satisfies the standard set by MA Rule 1(b) is a mass arbitration, even when cases are not all filed at the same time. Since the April 2024 Arbitrations are part of the same mass arbitration started in 2023, they should all be governed by the 2023 MA Rules.

In response, Respondent argues that the 2024 MA Rules apply to the April 2024 Arbitrations because: (1) the 2024 Rules were in effect when Claimants commenced the April 2024 Arbitrations; and (2) Claimants' Counsel confirmed the understanding that the 2024 MA Rules apply to the April 2024 Arbitrations by enclosing an attorney affirmation attesting to the truth and correctness of the information contained in each of the April 2024 Arbitrations, which the 2024 MA Rules require but the 2023 MA Rules do not. More specifically, Respondent points out that an amendment to the 2023 MA Rules was to add a requirement that every mass submission "must include an affirmation that the information provided for each individual case is true and correct to the best of the representative's knowledge." 2024 MA Rules, MA-2.

Neither the 2023 MA Rules nor the 2024 MA Rules require that all arbitrations submitted in a mass arbitration be subject to the same set of rules. Nor is there language in the 2023 MA Rules or 2024 MA Rules that provides for segregating a group of claims that meet the definition of mass arbitration under MA Rule 1(b).

The AAA has confirmed that the 2024 MA Rules were in effect at the time the April 2024 Arbitrations commenced and determined that the 2024 MA Rules apply to the April 2024 Arbitrations. The Process Arbitrator agrees with the determination of the AAA and determines that the 2024 MA Rules apply.

Conclusion

Based on the forgoing, the Process Arbitrator makes the following Order:

1. The April 2024 Arbitrations are stayed pending resolution by a court of the issue of whether the 2023 SSA or 2024 SSA governs the April 2024 Arbitrations.

2. The AAA 2024 Mass Arbitration Supplementary Rules apply to the April 2024 Arbitrations.

February 9, 2026

David C. Singer, Process Arbitrator

I, David C. Singer, do hereby affirm upon my oath as Process Arbitrator that I am the individual described in and who executed this instrument, which is the Order of Process Arbitrator.

February 9, 2026

David C. Singer, Process Arbitrator