THE HON. JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

VALVE CORPORATION,

Plaintiff,

v.

JASON IRIAS,

Defendant.

**Case No. 2:26-cv-00698-JNW**

**DEFENDANT'S MOTION TO DISMISS**

**NOTE ON MOTION CALENDAR:**
May 6, 2026

# TABLE OF CONTENTS

MOTION..................................................................................................................................1

INTRODUCTION...................................................................................................................3

STATEMENT OF FACTS.....................................................................................................3

ARGUMENT..........................................................................................................................5

     I.     MR. IRIAS DID NOT CONSENT TO THE NEW SSA TERMS............................6

          A.  Washington Law Requires Mutual Assent Through
              Unambiguous Conduct……………………………………………………..6

          B.  Valve's Own Terms Distinguish Between Account Access
              and Use of Subscriptions……………………………………………………...7

          C.  A Log-in Without Any Substantive Activity Does Not
              Manifest Assent......................................................................................8

     II.    THE DUTY TO ARBITRATE IS PRESERVED BY A SURVIVORSHIP
          CLAUSE...................................................................................................10

     III.   VALVE'S UNILATERAL MODIFICATION VIOLATES THE IMPLIED
          COVENANT OF GOOD FAITH AND FAIR DEALING.....................................11

     IV.   THE CURRENT SSA IS PROCEDURALLY AND SUBSTANTIVELY
          UNCONSCIONABLE AS APPLIED TO MR. IRIAS.............................................13

          A.  The Current SSA Is Procedurally Unconscionable.............................................13

          B.  The Current SSA Is Substantively Unconscionable............................................15

     V.    VALVE IS EQUITABLY ESTOPPED FROM DENYING THE
          ARBITRATION AGREEMENT'S ENFORCEABILITY…………………………16

     VI.   VALVE'S ALL WRITS ACT CLAIM FAILS AS A MATTER OF LAW………..17

CONCLUSION………………………………………………………………………...…..18

DEFENDANT'S MOTION TO DISMISS      - 2 -      SIRI & GLIMSTAD LLP
CASE NO. 2:26-cv-00698-JNW                      745 Fifth Avenue Suite 500
                                              New York, NY 10151
                                              (772) 7834-8436

**INTRODUCTION**

Defendant Jason Irias moves to dismiss the Complaint in the above-captioned action under Fed, R. Civ. P. 12(b)(6), because the Complaint fails to state a claim.[1] Valve's complaint represents an extraordinary attempt by a large corporation to unilaterally escape its contractual obligation to arbitrate after the arbitration process has turned against it. Despite having spent years compelling consumers like Mr. Irias into binding arbitration, Valve now asks this Court to declare that it can simply delete its arbitration clause and force those same consumers to start over in federal court. The Court should reject this gambit and dismiss Valve's complaint in its entirety.

**STATEMENT OF FACTS**

Taking Valve's allegations as true, Jason Irias has been a Steam subscriber since October 28, 2012. Complaint for Declaratory and Injunctive Relief ("Compl."), ¶¶ 26, 33, ECF No. 1. He initiated arbitration against Valve in December of 2023, after Valve successfully moved this Court to compel individual arbitration of all consumer antitrust claims against Valve. Complaint, ¶¶ 10, 11; *see also Wolfire Games, LLC v. Valve Corp.*, No 2:21-cv-00563-JCC, 2021 U.S. Dist. LEXIS 206045 at *1 (W.D. Wash. Oct. 25, 2021). Valve's motion was based upon a mandatory arbitration clause in its Steam Subscriber Agreement that "survives any expiration or termination." *See* Motion for Judicial Notice, Ex. 1, at Section 9D.

---

[1] Counsel for the parties met and conferred via Zoom on April 7, 2026. Counsel for the Defendant explained the bases for the motion (lack of consent, survivorship clause, unconscionability, duty of good faith and fair dealing, inapplicability of the All-Writs Act, etc.). In an email later that day, counsel for Valve declined to amend the Complaint.

On September 26, 2024, Valve "replaced and superseded" what it now calls the "Superseded SSA" with a "Current SSA" that purports to remove the arbitration agreement and class action waiver, even for pre-existing arbitration claims. *See* Complaint Ex. 1, Sections 8B and 11.  The Current SSA states that a "failure to cancel Your account prior to the effective date of the amendment will constitute Your acceptance of the amended terms," and that the only remedy for those who do not agree to the amended terms is to "cancel Your Account or cease use of the affected Subscriptions." Compl. Exhibit 1, Section 8B. Valve does not refund consumers for the value of games, accumulated progress, purchased add-ons, or anything else that may be lost by canceling one's account. *See* Compl. Exhibit 1, Section 9B.

Valve alleges that Mr. Irias consented to the new SSA because he "logged into his Steam account on December 11, 2025, more than a year after the Current SSA went into effect on November 1, 2024." Complaint, ¶ 44. Valve does not allege that Mr. Irias played any games, made any purchases, funded his Steam Wallet, or otherwise engaged with the platform's Content and Services during that December 11, 2025, log-in. Valve relies solely on the notion that a single log-in to the Steam platform demonstrates Mr. Irias's agreement to drop his still-pending, two-year old arbitration and accept the Current SSA.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate where "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citing *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990)).

The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). If an arbitration agreement is valid, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original). Section 2 of the FAA, however, does provide that arbitration agreements may be invalidated by generally applicable contract defenses, including unconscionability. *AT&T Mobility*, 563 U.S. at 339. Still, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985).

Valve's Complaint fails for several reasons: (1) Valve does not allege facts sufficient to show that Mr. Irias consented to the Current SSA; (2) the arbitration requirement survived Valve's attempt to "supersede" it; (3) Valve's unilateral modification of the SSA to strip Mr. Irias of his vested arbitration rights violates the implied covenant of good faith and fair dealing; (4) applying the Current SSA to Mr. Irias would be procedurally and substantively unconscionable; (5) Valve is equitably estopped from derailing the arbitration it demanded; and (6) Valve's All-Writs Act claim fails as a matter of law because this does not involve a certified class and the Act cannot otherwise be used to circumvent limits on federal jurisdiction or to enjoin separate proceedings based upon speculative concerns about inconsistent rulings.

## I.    MR. IRIAS DID NOT CONSENT TO THE NEW SSA TERMS.

Washington law requires that consent to contract be unambiguous.  Merely logging in to one's account does not demonstrate unambiguous consent where Valve's notification and the Current SSA both indicate that more is required, and where "consent" would mean agreeing to drop a two-year-old arbitration and start over again in court.

**A. Washington Law Requires Mutual Assent Through Unambiguous Conduct.**
Under Washington law, contract formation requires mutual assent. For online agreements, mutual assent turns on whether the consumer had reasonable notice of the terms and took some action that unambiguously manifests assent to those terms. As the Western District of Washington explained in *Grant v. T-Mobile USA, Inc.*, mutual assent requires that "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button

or checking a box, that unambiguously manifests his or her assent to those terms." 2024 U.S. Dist. LEXIS 130069, at *4 (W.D. Wash. July 23, 2024).

When modification of existing contracts is at issue, parties to existing contracts may agree to new terms only where "the offeree's actions ***clearly*** evince acceptance of the offeror's modifications." *United Fin. Cas. Co. v. Coleman*, 173 Wash. App. 463, 473 (2012) (emphasis added). Mere passive conduct or ambiguous actions are insufficient to establish acceptance; the conduct must be affirmative and unambiguous. Moreover, "in the context of online agreements, the existence of mutual assent turns on whether the consumer had reasonable notice of the terms of service agreement." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) (applying Washington law).

### B.  Valve's Own Terms Distinguish Between Account Access and Use of Subscriptions.

The SSA draws a distinction between an "Account" and "Subscriptions." Under Section 1.B of the SSA, "Subscriptions" are defined as "the rights to access and/or use any Content and Services accessible through Steam." Each Subscription allows a user to "access particular Content and Services"—meaning games, in-game content, and software. The SSA further clarifies that "Content and Services" includes "Valve or third-party video games and in-game content, software associated with Hardware and any virtual items you trade, sell or purchase."  *See* Complaint Ex. 1, Section 1.

This distinction matters because Valve's September 26, 2024 email notification specified that acceptance of the Current SSA would become effective when a user "make[s]

SIRI & GLIMSTAD LLP
745 Fifth Avenue Suite 500
New York, NY 10151
(772) 783-4436

most purchases, fund[s] your Steam wallet, or otherwise accept[s] it." The phrasing "otherwise accept it" implies affirmative conduct analogous to making purchases or funding the Steam Wallet—not merely logging in to check one's account. Furthermore, Section 8.B of the SSA states that a subscriber's "failure to cancel your Account prior to the effective date of the amendment will constitute your acceptance of the amended terms" and that if the user disagrees, "your only remedy is to cancel your Account *or to cease use of the affected Subscription(s)*" (emphasis added).  Complaint Ex. 1, Section 8B.

The SSA thus contemplates that a user can maintain an Account without actively "using" their Subscriptions.  Mr. Irias's single log-in, without playing any games or engaging in any transactions, represents mere access to his Account, not "use" of any Subscription or Content and Services.  As such, it does not manifest Mr. Irias's consent to dropping his arbitration and starting over in court.

**C.    A Log-in Without Any Substantive Activity Does Not Manifest Assent**

Courts have found that continued use of a service can constitute assent to modified terms where that use involves substantive engagement with the service. In *Sadlock v. Walt Disney Co.*, the court noted that "emails plus continued use can be enough to establish assent."  *Sadlock v. Walt Disney Co.*, No. 22-cv-09155-EMC, 2023 U.S. Dist. LEXIS 132295, at *29 (N.D. Cal. July 31, 2023). But the "use" contemplated in these cases involved actual consumption of the service's benefits—not a bare log-in. Similarly, in *Pilon v. Discovery Communications, LLC*, the court found assent where the user "continued to subscribe to and use [the service]" after receiving notice of updated terms. 769 F. Supp. 3d 273, 289-90 (S.D.N.Y. 2025).

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-cv-00698-JNW
- 8 -
SIRI & GLIMSTAD LLP
745 Fifth Avenue Suite 500
New York, NY 10151
(772) 7834-8436

By contrast, a single log-in that involves no game play, no purchases, no wallet funding, and no engagement with Steam's Content and Services cannot be characterized as "use" of the platform. The user who logs in briefly—perhaps to check whether they received a message, verify account settings, or simply confirm their account still exists—does not manifest their intent to engage with Steam in a manner that demonstrates acceptance of new terms.

Washington law requires that acceptance be unambiguous. *See Grant*, 2024 U.S. Dist. LEXIS 130069, at *4. The logic underlying browse-wrap and click-wrap jurisprudence is that certain conduct—clicking "I agree," making a purchase, actively using a service—creates a "forced confrontation with the terms and forced decision to accept or reject them." *Open Book Theatre Co. v. Brown Paper Tickets, LLC*, 749 F. Supp. 3d 1076, 1084 (S.D. Cal. 2024).

A bare log-in presents no such confrontation. A reasonable user logging in to check their account would not understand that merely logging in constitutes binding acceptance of materially different contract terms—especially undisclosed, vague, or confusing terms that eliminate the user's right to continue pursuing their pre-existing arbitration claims. *See Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1195 (W.D. Wash. Nov. 21, 2024) (applying a "reasonably prudent Internet user" standard for notice conspicuousness). Because Valve has not adequately alleged that Mr. Irias consented to the Current SSA, Valve cannot establish that the Current SSA is enforceable against him. For this reason, Count I (declaratory judgment) and Count III (injunctive relief) must be dismissed because

SIRI & GLIMSTAD LLP
745 Fifth Avenue Suite 500
New York, NY 10151
(772) 7834-8436

there is no valid agreement to declare or enforce. Count II (breach of contract) likewise fails because, absent Mr. Irias's consent to a valid and enforceable agreement, he cannot have breached any obligation by continuing his pending arbitration.

## II.   THE DUTY TO ARBITRATE IS PRESERVED BY A SURVIVORSHIP CLAUSE.

Even if Mr. Irias were found to have "consented" to the Current SSA, Valve is still contractually bound by the arbitration provision in the Superseded SSA. Section 9D of the Superseded SSA contains a survivorship clause that expressly provides that certain provisions—including the requirement to arbitrate—"will survive *any* expiration or termination of this Agreement." Superseded SSA § 9.D (emphasis added). The plain language of the survivorship clause thus ensures that the duty to arbitrate remains in effect even after the Superseded SSA expires, ends, or is otherwise terminated.

In communications with consumers, Valve has described the Current SSA as an "update" to the prior agreement. *See* Complaint at ¶ 35-36, 39. But this characterization is belied by the Current SSA's own terms. Section 11 of the Current SSA provides: "If you were a Subscriber before [September 26, 2024], [this Agreement] *replaces and supersedes* your existing agreement with Valve." Complaint Ex. 1, § 11 (emphasis added). The Current SSA further states that it "constitutes and contains the entire agreement between the parties . . . *and supersedes any prior oral or written agreements."* *Id*. (emphasis added) This is not the language of a mere amendment.  These words establish that the old SSA was terminated and replaced by the new SSA.

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-cv-00698-JNW

- 10 -

SIRI & GLIMSTAD LLP
745 Fifth Avenue Suite 500
New York, NY 10151
(772) 7834-8436

According to Black's Law Dictionary, "supersede" means to "obliterate, set aside, annul, replace, make void, inefficacious or useless, repeal." By "replac[ing] and supersed[ing]" the Superseded SSA, Valve did not merely "amend" it – Valve *terminated* it. This automatically triggered the survivorship clause, which continues to preserve the duty on both sides to arbitrate any disputes before the American Arbitration Association.

Because the duty to arbitrate survived the termination of the Superseded SSA, Valve's request for a declaratory judgment that the Current SSA eliminates that obligation (Count I) fails. Valve's breach of contract claim (Count II) likewise fails because Mr. Irias is contractually entitled to continue arbitrating under the survivorship clause. And Valve's request for injunctive relief halting the arbitration (Count III) must be denied because the arbitration is proceeding under a valid and enforceable agreement that, by its own terms, survives any expiration or termination.

III.    **VALVE'S UNILATERAL MODIFICATION VIOLATES THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

Under Washington law, which governs the SSA, a duty of good faith and fair dealing is implied in every contract. *Smartwings, a.s. v. Boeing Co.*, No. C21-918 RSM, 2022 U.S. Dist. LEXIS 33640 at *6 (W.D. Wash. Feb. 25, 2022). This duty prohibits a party from using discretionary contract terms to deny the other party the benefit of its bargain. *Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wash. 2d 102, 113-14 (2014). *See also Scribner v. WorldCom, Inc.*, 249 F.3d 902, 910 (9th Cir. 2001) ("[g]ood faith limits the authority of a party retaining discretion to interpret contract terms; it does not provide a blank check for that party to define terms however it chooses.").

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-cv-00698-JNW                    - 11 -

SIRI & GLIMSTAD LLP
745 Fifth Avenue Suite 500
New York, NY 10151
(772) 7834-8436

Valve's sudden removal of the arbitration clause during pending arbitration proceedings violates this duty. Courts have consistently held that the implied covenant of good faith and fair dealing prohibits a party from unilaterally changing an agreement to apply retroactively to known or accrued claims because doing so would interfere unreasonably with the other party's expectations of how the parties would resolve their dispute. Valve's attempt to retroactively apply the Current SSA based solely on a single log-in—without any evidence that Mr. Irias played games, made purchases, or meaningfully engaged with Steam—is an exercise of discretion that is inconsistent with the reasonable expectations of the parties and the spirit of the contract.

In *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015), four months after the plaintiffs filed their complaint in court, the defendant added an arbitration provision to its bylaws and sought to compel arbitration of the pending lawsuit. The court held that the defendant violated the implied covenant of good faith and fair dealing by attempting to retroactively apply the new arbitration requirement to a pending dispute. The court explained that the subsequent amendment "did not reflect any agreement by these plaintiffs to arbitrate the already pending lawsuit." *Id.* at 964-65.

The present case is the mirror image of *Cobb*. Valve removed the arbitration provision more than a year after Mr. Irias initiated arbitration. Just as the *Cobb* defendant could not in good faith compel arbitration of claims already pending in court, Valve cannot in good faith compel litigation of claims already pending in arbitration.

Valve's violation of the implied covenant of good faith and fair dealing renders its unilateral modification unenforceable as applied to Mr. Irias's pending claims. This independently requires dismissal of Counts I and III, which seek declaratory and injunctive relief premised on the validity of that modification, and Count II, which alleges that Mr. Irias breached an agreement that Valve imposed in bad faith.  Moreover, Valve's bad-faith exercise of its modification power independently requires dismissal of Counts I and III, which seek declaratory and injunctive relief premised on the validity of Valve's modification, and Count II, which alleges breach of an agreement that Valve imposed in violation of its duty of good faith.

## IV.    THE CURRENT SSA IS PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE AS APPLIED TO MR. IRIAS

Under Washington law, either procedural or substantive unconscionability is sufficient to invalidate a contract or clause. *Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1174 (W.D. Wash. 2002). The Current SSA, as applied to claimants with pending arbitrations, is both procedurally and substantively unconscionable.

### A.  The Current SSA Is Procedurally Unconscionable

A unilateral modification clause is unenforceable if exercised "in a way that would make it unconscionable." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016). Procedural unconscionability also exists when a party lacks meaningful choice in manifesting assent. *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash. 2d 293, 305 (2004).

Notice of material changes must be "reasonably conspicuous," and they must be displayed in a "font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Patrick v. Running Warehouse, LLC*, 93 F.4th

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-cv-00698-JNW

- 13 -

SIRI & GLIMSTAD LLP
745 Fifth Avenue Suite 500
New York, NY 10151
(772) 7834-8436

468, 477 (9th Cir. 2024); *see also Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1262 (9th Cir. 2005) **(**holding that, under Washington law, courts may refuse to enforce adhesion arbitration agreements with unilateral modification clauses on unconscionability grounds).

Despite notifying Mr. Irias and other consumers that they "use" the Steam platform and therefore "consent" to the new SSA by engaging in financial transactions, Valve now expands the word "use" to include merely logging in to the platform. This sort of "bait and switch" is procedurally unconscionable. If a user is deemed to have "consented" to the new SSA merely by logging in to the Steam platform, Valve should have stated so explicitly, rather than limit its only tangible examples of "consent" to specific types of transactions that only take place *after* the user logs in.

The Current SSA is also procedurally unconscionable because it purports to be effective for any subscriber who continues using their Steam account after November 1, 2024.  The Ninth Circuit recently addressed an analogous situation in *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670 (9th Cir. 2024).  There, Ticketmaster revised its terms of service to include expedited arbitration provisions that applied retroactively to prior purchases. The court held that the revised terms were procedurally unconscionable because consumers "often revisit the site in order to use previously purchased digital tickets" and "it is thus nearly impossible to avoid retroactive application of any changes Ticketmaster imposes." *Id.* at 678.

Steam users are in the same position. They must revisit the Steam platform to access their previously purchased games, making it "nearly impossible to avoid retroactive

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-cv-00698-JNW

- 14 -

SIRI & GLIMSTAD LLP
745 Fifth Avenue Suite 500
New York, NY 10151
(772) 7834-8436

application" of Valve's amended terms. The *Heckman* court emphasized that "[a]mending a contract unilaterally with a provision that applies retroactively amid ongoing litigation 'evinces an extreme amount of procedural unconscionability.'" *Id.* at *20 (citation omitted). That principle applies with full force here.

### B.  The Current SSA Is Substantively Unconscionable

A contract provision is substantively unconscionable if it is "one-sided or overly harsh, shocking to the conscience, monstrously harsh, or exceedingly calloused." *Tadych v. Noble Ridge Constr., Inc.*, 519 P.3d 199, 202 (Wash. 2022) (quotations and citations omitted). The provision of the Superseded SSA that enabled Valve to retract the arbitration provision during litigation—more than three years after the Court granted Valve's motion to compel arbitration—is one-sided, overly harsh, and fundamentally unfair. According to Valve, the unilateral modification provision gives users the right to reject the new forum selection clause if they are willing to sacrifice their entire investment of time and money in purchased games, add-ons, game progress, access to social networks, and anything else built around his hobby. This is an especially unsavory choice for Mr. Irias, who must now abandon arbitration claims he brought two years ago, after Valve demanded and won its (then) choice of forum. If that is the sort of Hobson's choice that confronts consumers like Mr. Irias, the Current SSA is substantively unconscionable.

Because the Current SSA is both procedurally and substantively unconscionable as applied to Mr. Irias, it cannot serve as the basis for any of Valve's claims. Counts I and III must be dismissed because the Court cannot declare enforceable, or issue an injunction

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-cv-00698-JNW                         - 15 -

SIRI & GLIMSTAD LLP
745 Fifth Avenue Suite 500
New York, NY 10151
(772) 7834-8436

based upon, an unconscionable contract provision. Count II must likewise be dismissed because an unconscionable agreement cannot give rise to an actionable breach.

## V.    VALVE IS EQUITABLY ESTOPPED FROM DENYING THE ARBITRATION AGREEMENT'S ENFORCEABILITY

Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) (quotations and citations omitted); *see also East West Bank v. Bingham*, 992 F.Supp.2d 1130, 1132-33 (W.D.Wash., 2014) (finding that Washington courts have adopted the *Mundi* standard for applying equitable estoppel in the arbitration context). Valve cannot equitably claim the benefits of the SSA—including the right to bind consumers to its terms through continued use—while simultaneously avoiding the burden of the arbitration agreement it drafted and enforced.

Mr. Irias's arbitration has been pending for over two years. If this Court were to dismiss his arbitration now, he will be forced to wait for many more months if not years before he has the opportunity to opt out of a certified class and resume pursuing his claims on an individual basis. Witnesses and documents will be lost, memories will fade, and much of the evidence upon which Mr. Irias's claim is based will evaporate -- an unfair and inefficient outcome that equity forbids.

Equitable estoppel bars Valve from repudiating the arbitration agreement it drafted and enforced. This requires dismissal of Count I, which seeks a declaration that the arbitration agreement no longer binds the parties, and Count III, which seeks to enjoin Mr. Irias from exercising his rights under that agreement.

## VI.   VALVE'S ALL WRITS ACT CLAIM FAILS AS A MATTER OF LAW

Valve's Fourth Cause of Action, invoking the All Writs Act, 28 U.S.C. § 1651(a), should be dismissed because it fundamentally misconstrues the Act's scope and purpose. The All Writs Act permits federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). It is a procedural tool, not a source of independent jurisdiction, and cannot be used to expand or create jurisdiction that does not otherwise exist. *Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 41 (1985).

Valve argues that Mr. Irias's arbitration "would threaten the jurisdiction" of this Court in the *Wolfire* class action because of potential inconsistent rulings. (Compl. ¶ 74.) This argument fails for multiple reasons.

First, the All-Writs Act is "in aid of" existing jurisdiction—it cannot create jurisdiction that does not otherwise exist.  *Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 41 (1985). Mr. Irias is not a party to *Wolfire*, and there is no certified consumer class that covers Mr. Irias.  Courts cannot enjoin non-parties from pursuing their own proceedings based on the mere possibility that their claims might overlap with a pending class action.

Second, the mere possibility of inconsistent outcomes between separate proceedings does not justify an All Writs Act injunction. *Adkins v. Neslte Purina PetCare Co.*, 779 F.3d 481, 484-85 (7th Cir. 2015)). Federal courts regularly tolerate parallel proceedings that might produce different results.

Third, the All Writs Act cannot be used to circumvent the Federal Arbitration Act, which expresses a strong federal policy favoring arbitration. *AT&T Mobility*, 563 U.S. at 339. If parties have a valid agreement to arbitrate—as they do here—the FAA requires courts to enforce that agreement, not enjoin it.

For each of these reasons, Count IV must be dismissed. The All Writs Act does not provide Valve with an independent basis to enjoin a private arbitration where the arbitration is governed by a valid and enforceable agreement under the FAA.

## CONCLUSION

For all the foregoing reasons, Defendant Jason Irias respectfully requests that this Court grant his motion and dismiss Valve Corporation's complaint in its entirety with prejudice. Specifically, Counts I and III should be dismissed because Valve's allegations do not establish a right to a declaratory judgment or injunction; Count II should be dismissed because Valve's allegations do not sufficiently plead a breach of any contract; and Count IV should be dismissed because the All Writs Act is not applicable to this case.

DATED this 8th day of April 8, 2026.

I certify that this memorandum contains 4110 words, in compliance with the Local Civil Rules.

Respectfully submitted,

By:  /s/ Kent M. Williams
Kent M. Williams (admitted *pro hac vice*)
kent.williams@sirillp.com
**SIRI & GLIMSTAD LLP**

400 S. 4th Street, Suite 401
Minneapolis, MN 55415
T: 929-220-2759

Mason A. Barney (admitted *pro hac vice*)
mbarney@sirillp.com
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
T: 772-783-8463
F: 646-417-5967

Gary E. Mason (admitted *pro hac vice*)
gmason@masonllp.com
Theodore B. Bell (admitted *pro hac vice*)
tbell@masonllp.com
Danielle L. Perry (admitted *pro hac vice*)
dperry@masonllp.com
Jacob D. Eisenberg (admitted *pro hac vice*)
jeisenberg@masonllp.com
**MASON LLP**
5335 Washington Avenue NW, Suite 640
Washington, D.C. 20015
T: 202-429-2290

*Attorneys for Defendant*

/s/ Michael C. Subit
Michael C. Subit (WSBA No. 29189)
msubit@frankfreed.com
**FRANK FREED SUBIT & THOMAS LLP**
705 2nd Avenue, Suite 1200
Seattle, WA 98104
T: 206-682-6711

*Local Counsel for Defendant*

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-cv-00698-JNW
- 19 -
SIRI & GLIMSTAD LLP
745 Fifth Avenue Suite 500
New York, NY 10151
(772) 7834-8436