THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

           Plaintiff,

      v.

JASON IRIAS,

           Defendant.

No. 2:26-CV-00698-JNW

**PLAINTIFF VALVE CORPORATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND...............................3

       A.    Valve, the Steam Platform, and the SSA .......................................3

       B.    The Consumer Plaintiffs in *Wolfire* Commence a Consumer Antitrust Class Action Against Valve...............................................4

       C.    Valve Removes the Arbitration Provision Held To Be Unenforceable From the Current SSA and Defendant Accepts the Updated SSA.......................................................................................4

       D.    The AAA Administratively Stays Defendant's Arbitration and Mason Commences Litigation ........................................................6

III.   LEGAL STANDARD...............................................................................7

IV.    THE COURT SHOULD DENY THE MOTION TO DISMISS ...............7

       A.    The Complaint Pleads that Defendant Consented to the Current SSA .................................................................................................7

             1.    The Complaint Pleads That Valve Provided Steam Users With Conspicuous and Repeated Notice of the Current SSA .......................................................................................9

             2.    The Complaint Pleads that Defendant Agreed to the Current SSA ....................................................................11

       B.    The Current SSA's Dispute Resolution Provision is Enforceable Notwithstanding the Survivorship Clause in the Superseded SSA13

       C.    Valve Pleads a Mutual and Not a Unilateral Amendment and the Current SSA Does Not Violate the Implied Covenant of Good Faith and Fair Dealing ...................................................................15

       D.    Defendants' Unconscionability Arguments Fail...........................18

       E.    Equitable Estoppel Is Inapplicable Here.......................................20

       F.    Valve Adequately Pleads an All Writs Act Claim.........................21

V.     CONCLUSION.......................................................................................23

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– i

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*134th Street Lofts, LLC v. iCap Northwest Opportunity Fund, LLC*,
15 Wash. App. 2d 549 (2020) ................................................................................................16

*Adkins v. Nestle Purina PetCare Co.*,
779 F.3d 481 (7th Cir. 2015) ............................................................................................22, 23

*In re Amazon Prime Video Litigation*,
765 F. Supp. 3d 1165 (W.D. Wash. 2025) ............................................................................18

*Applied Energetics, Inc. v. NewOak Capital Markets, LLC*,
645 F.3d 522 (2d Cir. 2011) ..............................................................................................1, 15

*Badgett v. Security State Bank*,
116 Wash. 2d 563 (1991) .......................................................................................................17

*Bassett v. Electronic Arts Inc.*,
No. 13-CV-04208 (MKB)(SMG),
2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015),
*report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015) .......................19

*Bayani v. T-Mobile USA, Inc.*,
No. 2:23-cv-00271-JHC,
2023 WL 6959287 (W.D. Wash. Oct. 20, 2023) ......................................................................1

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................................7

*Cazares v. Pacific Shore Funding*,
No. CV04-2548DSF(SSX),
2006 WL 149106 (C.D. Cal. Jan. 3, 2006) ............................................................................19

*Cobb v. Ironwood Country Club*,
233 Cal. App. 4th 960 (2015) .................................................................................................18

*Dasher v. RBC Bank (USA)*,
745 F.3d 1111 (11th Cir. 2014) .........................................................................................1, 14

*Distribuidora Industrial De Calzado S.A. v. Brooks Sports Inc.*,
No. C18-0501-JCC,
2019 WL 2393791 (W.D. Wash. June 6, 2019) .......................................................................8

*Dlugolecki v. PeopleConnect, Inc.*,
No. CV 20-3657-GW-GJSx,
2020 WL 13587803 (C.D. Cal. Nov. 9, 2020) .......................................................................11

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– ii

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Ginoyan v. Barclays Bank Delaware*,
    443 F. Supp. 3d 1136 (C.D. Cal. 2020) ...........................................................................19

*Goggins v. Amazon.com Inc.*,
    No. 2:24-cv-00257,
    2025 WL 2782872 (W.D. Wash. Sep. 30, 2025)........................................................12, 13

*Gomez v. Elite Labor Services Weeklys, Ltd.*,
    Nos. 24-3261, 24-3594,
    2025 WL 2556107 (9th Cir. Sep. 5, 2025) ......................................................................14

*Grant v. T-Mobile USA, Inc.*,
    No. 2:23-cv-01946-MJP,
    2024 WL 3510937 (W.D. Wash. July 23, 2024) .............................................................8, 9

*Gray v. Amazon.com, Inc.*,
    653 F. Supp. 3d 847 (W.D. Wash. 2023),
    *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024)...............................................................17

*Ireland-Gordy v. Tile, Inc.*,
    No. 25-403,
    2026 WL 594859 (9th Cir. Mar. 03, 2026)........................................................8, 11, 12, 20

*Johnson v. Yousoofian*,
    84 Wash. App. 755 (1996),
    *as amended* (Jan. 9, 1997)...............................................................................................16

*Liberty Mutual Insurance Co. v. Aventura Engineering & Construction Corp.*,
    534 F. Supp. 2d 1290 (S.D. Fla. 2008) ...........................................................................21

*Martin v. DPR Contruction*,
    No. 19-cv-03254-HSG,
    2019 WL 6912005 (N.D. Cal. Dec. 19, 2019)....................................................................8

*McGary v. City of Portland*,
    386 F.3d 1259 (9th Cir. 2004) ...........................................................................................7

*Missing Link, Inc. v. eBay, Inc.*,
    No. C-07-04487 RMW,
    2008 WL 3496865 (N.D. Cal. Aug, 12, 2008) ................................................................16

*In re National Football League's Sunday Ticket Antitrust Litigation*,
    No. ML 15-2668 PSG (JEMx),
    2021 WL 2350814 (C.D. Cal. Apr. 20, 2021) ..................................................................20

*Open Book Theatre Co. v. Brown Paper Tickets, LLC*,
    749 F. Supp. 3d 1076 (S.D. Cal. 2024)..............................................................................9

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– iii

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Pennsylvania Bureau of Correction v. U.S. Marshals Service*,
    474 U.S. 34 (1985)..........................................................................................................22

*Pilon v. Discovery Communications, LLC*,
    769 F. Supp. 3d 273 (S.D.N.Y. 2025)................................................................2, 11, 16, 17

*PMI America, Inc. v. M.B. International*,
    No. 1:12-cv-2293-TCB,
    2012 WL 13018298 (N.D. Ga. Nov. 6, 2012) ............................................................3, 21

*Ramos v. Citimortgage, Inc.*,
    No. CIV. 08-02250 WBS KJM,
    2009 WL 86744 (E.D. Cal. Jan. 8, 2009) ........................................................................19

*Sadlock v. Walt Disney Co.*,
    No. 22-cv-09155-EMC,
    2023 WL 4869245 (N.D. Cal. July 31, 2023)...........................................................8, 9, 11

*Saeedy v. Microsoft Corp.*,
    757 F. Supp. 3d 1172 .......................................................................................................17

*Saucedo v. Experian Information Solutions, Inc.*,
    No. 1:22-cv-01584-ADA-HBK,
    2023 WL 4708015 (E.D. Cal. July 24, 2023) ..................................................................20

*Saunders v. Lloyd's of London*,
    113 Wash. 2d 330 (1989).................................................................................................2, 21

*SCPS LLC v. Kind Law*,
    No. CV 25-3255-MWF (SSCx),
    2026 WL 96898 (C.D. Cal. Jan. 8, 2026) ........................................................................20

*Search v. Bank of America, N.A.*,
    No. C12-52 TSZ,
    2012 WL 4514285 (W.D. Wash. Oct. 2, 2012) ................................................................18

*Smokey Point Commercial, LLC v. Dick's Sporting Goods, Inc.*,
    No. C17-1015JLR,
    2017 WL 4882664 (W.D. Wash. Oct. 30 2017) ...............................................................14

*Teed v. Chen*,
    No. 22-cv-02862-CRB,
    2022 WL 16839496 (N.D. Cal. Nov. 9, 2022) .................................................................18

*Travelers Casualty and Surety Co. of America v. Highland Partnership, Inc.*,
    No. 10cv2503 AJB (POR),
    2011 WL 4381629 (S.D. Cal. Sep. 20, 2011)...................................................................14

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– iv

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Trudeau v. Google LLC*,
816 F. App'x 68 (9th Cir. 2020) ...................................................................................2, 17

*United Financial Casualty Co. v. Coleman*,
173 Wash. App. 463 (2012) ...................................................................................................8

*West v. Uber Technologies*,
No. 18-CV-3001-PSG-GJS,
2018 WL 5848903 (C.D. Cal. Sep. 5, 2018).......................................................................11

*Wilmuth v. Amazon.com Inc.*,
No. 2:23-cv-01774-JNW,
2024 WL 5088337 (W.D. Wash. Dec. 12, 2024) ........................................................7, 8, 14

*Wolfire Games, LLC v. Valve Corp.*,
No 2:21-cv-00563-JCC,
2021 WL 4952220 (W.D. Wash. Oct. 25, 2021) ..............................................................3, 4

## STATUTES

28 U.S.C. § 1651..............................................................................................................3, 21

28 U.S.C. § 2283..................................................................................................................23

---

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– v

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I.    INTRODUCTION[1]

The Court should deny Defendant Jason Irias's Motion to Dismiss Plaintiff Valve Corporation's Complaint for Declaratory and Injunctive Relief for the following reasons:

*First*, Defendant fails to show as a matter of law that he is not bound by the Current SSA. As the Complaint alleges, Valve introduced the Current SSA in compliance with the procedure set forth in the Superseded SSA for mutual and unilateral modifications. (Compl. ¶¶ 34-43; Declaration of Gary E. Mason dated April 8, 2026 ("Mason Decl.") Ex. 1 § 8(A)-(B).) Valve alleges that Defendant agreed to the Current SSA in accordance with those procedures. Defendant's Motion identifies no defects in that pleading. *See Bayani v. T-Mobile USA, Inc.*, 2023 WL 6959287, at *3-4 (W.D. Wash. Oct. 20, 2023) (denying defendant's motion to dismiss claims based on arguments that "require[] the Court to perform fact-based inquiries at the pleading stage," because "whether [a party] assented to the terms of the [agreement]—so as to establish mutual assent—is a factual inquiry that should not be considered at the motion to dismiss stage"). Valve has thus sufficiently pleaded that Defendant is bound by the Current SSA.

*Second*, Defendant asserts that even if he consented to the Current SSA, Valve's arbitration obligation is preserved by the Superseded SSA's survivorship clause. (Mot. at 10.) Again, Defendant seeks to dispute the well-pleaded allegations in the Complaint that the Current SSA superseded the Superseded SSA, including any survivorship clause. Regardless, Defendant's reliance on the survivorship clause in the Superseded SSA is misplaced. Courts routinely hold that a dispute resolution provision in an updated agreement is enforceable, notwithstanding the existence of a survivorship clause in the superseded agreement, so long as the modified agreement articulates that intent. *See Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1123 (11th Cir. 2014); *see also Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 524-26 (2d Cir. 2011). Here, the Current SSA expressly covers all disputes and includes a clause confirming it replaces prior agreements in full. (Compl. Ex. 1, §§ 10-11.) As a result, any prior obligation to arbitrate was

---

[1] Emphases are added and internal citations are omitted unless otherwise indicated.

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 1

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

displaced by the parties' subsequent agreement, and the Current SSA's dispute resolution provision governs.

*Third*, Defendant argues that Valve's amendment was "unilateral" and violated the implied covenant of good faith. (Mot. at 11.) On the contrary, Valve alleges that Defendant affirmatively assented to the Current SSA—an allegation this Court must accept as true. (Compl. ¶ 4.) Mutual amendments do not implicate the covenant. *See, e.g.*, *Trudeau v. Google LLC*, 816 F. App'x 68, 70 n.1 (9th Cir. 2020); *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 295 (S.D.N.Y. 2025). But even if there were a "unilateral amendment" to the SSA, Valve has alleged a valid and good faith reason for that amendment, which the Court also must accept as true for purposes of this Motion: the arbitration provision had been ruled unenforceable and a putative consumer class action had been commenced in court on the basis of its unenforceability. Defendant has not, and cannot, dispute this.

*Fourth*, Defendant argues that the Current SSA is procedurally and substantively unconscionable as applied to Defendant. Not so. Even if Defendant could raise these arguments at the pleading stage—and he cannot—there is nothing unconscionable about requiring a party to pursue a legal claim in court rather than arbitration. Defendant had a genuine choice whether to accept the Current SSA. After receiving notice, Defendant had 30 days to decide whether to accept the Current SSA, or to refrain from using his Steam account while his arbitration proceeded or terminate his account entirely. There was nothing unconscionable about that, particularly since gaming is a non-essential activity.

*Fifth*, equitable estoppel is inapplicable here and certainly cannot justify dismissal at the pleading stage. Equitable estoppel requires acts that are both "inconsistent" and inequitable. *See Saunders v. Lloyd's of London*, 113 Wash. 2d 330, 340 (1989) (en banc). As the Complaint alleges, Valve has not taken any inconsistent position. It filed a motion to compel arbitration ***before*** an arbitrator ruled that the Superseded SSA was unenforceable and ***before*** Valve removed the arbitration provision from the Superseded SSA. (Compl. ¶ 3.) This Court previously held in

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 2

*Wolfire* that enforceability of the arbitration agreement in the Superseded SSA was an issue to be decided by an arbitrator and declined to resolve that issue. (*Id*. ¶ 11 (citing *Wolfire Games, LLC v. Valve Corp.*, No 2:21-cv-00563-JCC, 2021 WL 4952220, at *1 (W.D. Wash. Oct. 25, 2021).) There is nothing inconsistent or inequitable about seeking a declaration that the arbitration agreement in the Superseded SSA no longer binds the parties.

*Sixth*, this Court has authority to grant Valve its requested relief under the All Writs Act. That statute authorizes courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). Courts can enjoin an arbitration if it would threaten a court's jurisdiction. *See, e.g.*, *PMI Am., Inc. v. M.B. Int'l*, 2012 WL 13018298, at *8 (N.D. Ga. Nov. 6, 2012) ("Having concluded that the arbitration agreement is not binding on Pelham in his individual capacity, the Court finds that allowing the arbitration to proceed against him in that capacity would undermine and directly threaten the Court's holding that he did not agree to arbitration. Accordingly, the Court will grant Plaintiffs' motion for a preliminary injunction pursuant to its authority under the All Writs Act.").

Therefore, the Court should deny Defendant's Motion.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Valve, the Steam Platform, and the SSA

Valve is a video game developer, publisher, and digital distribution company. (Compl. ¶ 30.) Valve offers an online platform called Steam, where consumers can purchase, play, and interact with their friends about video games. (*Id*.) For an individual to create a Steam account and become a Steam user, that person must first agree to the SSA. (*Id*. ¶ 31.) Valve has periodically modified the SSA since it was first implemented in 2003. (*Id*. ¶ 32.) Defendant originally agreed to the SSA on October 28, 2012. (*Id*. ¶ 33.) That version of the agreement contained an arbitration agreement and class action waiver. (*Id*.)

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 3

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**B.      The Consumer Plaintiffs in *Wolfire* Commence a Consumer Antitrust Class Action Against Valve**

In 2021, two video game developers and seven consumer plaintiffs initiated *Wolfire Games LLC v. Valve Corp.*, No 2:21-cv-00563 (W.D. Wash. filed Apr. 27, 2021), and two other putative class actions against Valve alleging violations of the federal antitrust laws. This Court consolidated the two other actions—including *Colvin v. Valve Corporation*, No. 21-cv-00801 (C.D. Cal. filed Apr. 8, 2021), filed by Defendant's former co-counsel Vorys, Sater, Seymour and Pease LLP ("Vorys")—into *Wolfire*. When the plaintiffs filed their complaints, the applicable SSA—the Superseded SSA—contained an arbitration provision providing for AAA arbitration and a class action waiver. (Compl. ¶ 2.)

In accordance with that SSA, Valve moved to compel arbitration of the claims asserted by the seven consumer plaintiffs. This Court granted Valve's motion notwithstanding a challenge to the arbitration provision's enforceability because the Court found that enforceability was an issue to be decided by the arbitrator. This Court stayed the *Wolfire* action as to the consumer plaintiffs. *See Wolfire Games*, 2021 WL 4952220, at *3.

**C.      Valve Removes the Arbitration Provision Held To Be Unenforceable From the Current SSA and Defendant Accepts the Updated SSA**

On July 8, 2024, in four AAA arbitrations commenced by Bucher Law, a merits arbitrator determined that the arbitration clause in the Superseded SSA was unenforceable. (Compl. ¶ 11.)

On August 9, 2024, Bucher Law commenced a new putative antitrust class action against Valve naming those four claimants as plaintiffs. That action, *Elliott*, is brought on behalf of a putative class of all Valve consumers, and asserts claims similar to the antitrust claims Defendant is pursuing against Valve. (Compl. ¶ 12.) It contends that the Superseded SSA's arbitration provision is unenforceable as to all Steam users. (*Id*.) *Elliott* has been consolidated with *Wolfire*.[2]

---

[2] Two other putative class actions asserting antitrust claims against Valve were filed in October 2024 and also consolidated with *Wolfire. Hepler v. Valve Corp.*, No. 2:24-cv-01735-JNW (W.D. Wash. filed Oct. 23, 2024) and *Drake v. Valve Corp.*, No. 2:24-cv-01743-JNW (W.D. Wash. filed Oct. 24, 2024).

| | |
|---|---|
| PLAINTIFF VALVE CORPORATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS– 4 | **CORR CRONIN LLP** 1015 Second Avenue, Floor 10 Seattle, Washington 98104-1001 Tel (206) 625-8600 Fax (206) 625-0900 |

Vorys sought unsuccessfully to be appointed lead counsel to the consumer class in *Wolfire*. *See Wolfire*, Dkts. 409, 441.

On September 26, 2024, in light of the arbitral determination that the SSA's arbitration provision was unenforceable and the filing of the *Elliott* action, Valve gave notice to Steam users that it was amending the SSA to remove both the arbitration provision and the class action waiver. (Compl. ¶ 34.) The dispute resolution section of the Current SSA now provides:

> You and Valve agree that all disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction.

(*Id.* ¶ 5.)

The Current SSA also includes a merger clause, which provides:

> This Agreement, including any Subscription Terms, Rules of Use, the Valve Privacy Policy, and the Valve Hardware Limited Warranty Policy, constitutes and contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior oral or written agreements.

(*Id.* ¶ 48.)

Beginning that very day, Valve provided notice of that change through several channels—direct email to users, an in-app pop-up notification, and a conspicuous notice on Valve's website. (Compl. ¶ 35.) Valve also notified users that they could also accept the Current SSA through their continued use of Steam: "the updated Steam Subscriber Agreement will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then." (*Id.* ¶ 36.) Also on that same day, Valve provided Defendant the email notice of the change at the email address that he provided to Steam when his account was opened. (*Id.* ¶ 43.)

The next day, September 27, 2024, Valve directly notified Defendant's then-counsel, Vorys and Mason LLP ("Mason"), that Valve had "removed the arbitration agreement from the SSA." Valve also informed Vorys and Mason that Valve would reimburse their clients' arbitration filing fees. (Compl. ¶ 49.)

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 5

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

On October 1, 2024, Vorys and Mason accepted Valve's offer to reimburse them for their clients' AAA filing fees, including Defendant's. Valve reimbursed Vorys and Mason for their clients' AAA filing fees in the amount of $1,518,325.00. (Compl. ¶ 50.)

Defendant did not delete or discontinue use of his Steam account by November 1, 2024. (Compl. ¶ 44.) To the contrary, Defendant logged into his account on December 11, 2025, more than a year after the Current SSA went into effect on November 1, 2024. (*Id.*)

**D.     The AAA Administratively Stays Defendant's Arbitration and Mason Commences Litigation**

On May 15, 2025, the AAA administratively stayed Defendant's arbitration and the 14,910 other arbitrations Mason was pursuing at Mason's request. (Compl. ¶ 51.) Mason then commenced a series of duplicative court proceedings in an effort to compel Valve to pay the AAA's $20.875 million invoice in case management fees for all 14,911 Mason claimants:

- On May 2, 2025, Mason filed a putative class action in California, *Welty v. Valve Corp.*, No. 2:25-cv-02450 (W.D. Wash) (Dkt. 1), seeking an order compelling Valve to pay the case management fees. *Welty* has been transferred to this Court.

- On June 11, 2025, Mason filed a motion for sanctions in *Wolfire* demanding that Valve pay the case management fees for Defendant and 14,910 other claimants[3] as a "sanction." *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JNW (Dkt. 467.)

- On August, 5, 2025, Mason filed another putative class action, *Smith v. Valve Corp.*, No. 2:25-cv-01478-JNW (W.D. Wash.) (Dkt. 1), again seeking an order compelling Valve to pay the case management fees. Defendant is a member of the putative class in *Smith*.

On December 17, 2025, Mason notified the AAA that Defendant had "elected to move forward with his arbitration claim against Valve" and that Mason would advance the case

---

[3] The claims of yet another 5,000 Mason claimants were referred to a AAA Process Arbitrator. On February 9, 2026, the Process Arbitrator ruled that only a court can decide which agreement applies to the claimants as between the Superseded SSA and Current SSA and stayed their arbitrations pending a court's ruling on that issue. (Compl. ¶ 19.)

| | |
|---|---|
| PLAINTIFF VALVE CORPORATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS– 6 | **CORR CRONIN LLP** 1015 Second Avenue, Floor 10 Seattle, Washington 98104-1001 Tel (206) 625-8600 Fax (206) 625-0900 |

management fees for his arbitration. (Compl. ¶ 53.)

On February 3, 2026, Valve objected to the AAA's administration of Defendant's arbitration because the Current SSA—to which Defendant agreed—does not include an arbitration agreement. (Compl. ¶ 54.) On February 6, 2026, the AAA declined to resolve Valve's objection and advised that it would proceed with the appointment of a merits arbitrator to hear Defendant's claim. (*Id.* ¶ 55.)

On February 27, 2026, Valve commenced this action by filing a Complaint to enjoin Defendant's arbitration. On March 10, 2026, the AAA placed Defendant's arbitration in abeyance for 90 days as a result of Valve's commencement of this action. On April 8, 2026, Defendant filed this Motion. The filing of this Motion appears to be a strategic maneuver to delay resolution of this proceeding so that Defendant may seek to lift the stay of his arbitration before this Court rules on the merits.

## III.   LEGAL STANDARD

The court may grant a motion to dismiss for failure to state a claim only if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support their claims." *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004); *see also Bell Atl. Corp.*, 550 U.S. at 556 (holding that complaints may proceed even where "recovery is very remote and unlikely"). "The Rule 12(b)(6) standard requires the court to take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Wilmuth v. Amazon.com Inc.*, 2024 WL 5088337, at *6, *8 (W.D. Wash. Dec. 12, 2024) (Whitehead, J.) (denying motion to dismiss).

## IV.   THE COURT SHOULD DENY THE MOTION TO DISMISS

### A.   The Complaint Pleads that Defendant Consented to the Current SSA

Defendant argues that "Valve does not allege facts sufficient to show that [he] consented to the Current SSA." (Mot. at 6.) Not so. The Complaint sufficiently pleads that the Current SSA

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 7

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

is valid and enforceable as to Defendant. (Compl. ¶¶ 4, 15, 45.) To prevail on his Motion, Defendant would have to establish, as a matter of law, Defendant did not assent to the Current SSA. But Defendant's challenge to the Current SSA depends on factual questions not appropriately resolved at the pleading stage. Defendant cannot at this stage dispute well-pleaded allegations, which must be accepted as true for purposes of this Motion. *See Wilmuth*, 2024 WL 5088337, at *6; *see also Distribuidora Industrial De Calzado S.A. v. Brooks Sports Inc.*, 2019 WL 2393791, at *2, *4 (W.D. Wash. June 6, 2019) (holding "[t]he Court does not evaluate the contract at issue on a motion to dismiss, for doing so would be 'premature'" and denying motion to dismiss); *Martin v. DPR Contruction*, 2019 WL 6912005, at *3 (N.D. Cal. Dec. 19, 2019) (denying motion to dismiss because, *inter alia*, while defendant "may dispute the existence of this contract [] that is not a matter for the Court's consideration at the motion to dismiss stage").

Valve has sufficiently pleaded Defendant's assent to the Current SSA. Parties to existing contracts may freely agree to new agreements that become binding "if the offeree's actions clearly evince acceptance of the offeror's modifications." *United Fin. Cas. Co. v. Coleman*, 173 Wash. App. 463, 473 (2012). For online transactions, "mutual assent turns on whether the consumer had reasonable notice of the terms of service agreement." *Grant v. T-Mobile USA, Inc.*, 2024 WL 3510937, at *3 (W.D. Wash. July 23, 2024). If "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* at *4. "[E]mails followed by continued use is [also] sufficient to establish assent." *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023); *see also Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *4 (9th Cir. Mar. 3, 2026) (plaintiffs "unambiguously manifested assent" to the updated terms "through their continued use" of the defendants' app). All of that has been sufficiently alleged here.

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 8

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**1. The Complaint Pleads That Valve Provided Steam Users With Conspicuous and Repeated Notice of the Current SSA**

The Complaint sufficiently alleges that Valve provided conspicuous notice of the terms of the Current SSA to all users. (Compl. ¶¶ 4, 34-43.) For notice to be "reasonably conspicuous," it must be "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Grant*, 2024 WL 3510937, at *4. "The presence of a hyperlink must be readily apparent, customarily by us[ing] of a contrasting font color (typically blue)." *Open Book Theatre Co. v. Brown Paper Tickets, LLC*, 749 F. Supp. 3d 1076, 1082 (S.D. Cal. 2024). Updates to dispute resolution agreements are sufficiently conspicuous when they are specifically called out and not buried or difficult to discern. *See Sadlock*, 2023 WL 4869245, at *12. Valve alleges that its notice to Steam users more than met those requirements:

- **Electronic Mail.** Beginning on September 26, 2024, Valve provided email notice to all U.S. customers (including Defendant) of the change in Valve's SSA, sending the notice to the email address of record for their Steam accounts. The email, only two paragraphs long and hyperlinking in blue to the updated Steam Subscriber Agreement, specifically called out changes to the dispute resolution provision, providing: "[t]he updated dispute resolution provisions are in Section 10 and require all claims and disputes to proceed in court and not in arbitration." (Compl. ¶ 36.) The email also provided: "[T]he updated [SSA] will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then." (*Id.* ¶ 39.)

- **Blog Post.** Beginning on September 26, 2024, Valve published a blog post on Steam providing notice of the amended SSA. The blog post, again hyperlinking in blue to the Current SSA, stated: "We've eliminated the requirement that disputes be resolved by individual arbitration." Instead, if informal resolution did

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 9

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

not resolve a dispute, "the updated SSA now provides that any disputes are to go forward in court instead of arbitration." (*Id.* ¶ 41.)

- **Steam Website.** The Current SSA has been available online from September 26, 2024 to the present. (*Id.* ¶ 35.)

Valve alleges that when users clicked on the hyperlinks in any of the various notices or visited the SSA page on the Steam website, they saw a banner at the top of the Current SSA, set apart in a box outlined in red, prominently announcing: "Valve has updated the Steam Subscriber Agreement. The updates affect your legal rights, including how disputes and claims between you and Valve are resolved. Among other things, the new dispute resolution provisions in Section 10 require that all disputes and claims proceed in court and not in arbitration. Please review carefully." (Compl. ¶ 35.)

Valve further alleges that those notices were consistent with the modification requirements set out in the Superseded SSA. The Superseded SSA provided: "This Agreement may at any time be mutually amended by your explicit consent to changes proposed by Valve." (Mason Decl. Ex. 1.) Valve's email notice explained: "This updated Steam Subscriber Agreement will become effective immediately when you agree to it, including when you make most purchases, fund your Steam wallet, or otherwise accept it." (Compl. ¶ 38.)

The Superseded SSA also provided for amendment through notice followed by continued use:

> Valve may amend this Agreement . . . unilaterally at any time in its sole discretion. In this case, you will be notified by e-mail of any amendment to this Agreement made by Valve at least 30 (30) days before the effective date of the amendment. You can view the Agreement at any time at http://www.steampowered.com/. Your failure to cancel your Account prior to the effective date of the amendment will constitute your acceptance of the amended terms.

(Mason Decl. Ex. 1.) That SSA went on to explain that if the user did not agree to the updated SSA, he or she could cancel his or her Steam account or cease using the service. (*Id.*) Consistent with these terms, the email notice provided: "[T]he updated [SSA] will become effective on

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 10

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

November 1, 2024, unless you delete or discontinue use of your Steam account before then." (Compl. ¶ 39.) Individually and collectively, the notices Valve provided to Defendant were more than reasonably conspicuous and made it clear that the arbitration provision and class action waiver were being removed.

**2.    The Complaint Pleads that Defendant Agreed to the Current SSA**

Defendant asserts that "[m]ere passive conduct" is "insufficient to establish acceptance" but provides no support for that argument. (Mot. at 7.) Nor is there anything "passive" about logging into a service. Defendant asserts that logging into a service only "briefly" is insufficient, yet he cites no authority for that claim either. (*Id*. at 9.) On the contrary, users manifest assent if they use a service after receiving notice of updated terms—regardless of how much time they spent on the service. *See, e.g.*, *Tile*, 2026 WL 594859, at *4 (users "unambiguously manifested assent" to updated terms  "through their continued use of the Tile App"); *Pilon*, 769 F. Supp. 3d at 289-90 (claimant assented where he "continued to subscribe to and use [service]" after receiving notice of updated agreement); *Sadlock*, 2023 WL 4869245, at *12 ("[E]mails followed by continued use is sufficient to establish assent."); *Dlugolecki v. PeopleConnect, Inc.*, 2020 WL 13587803, at *2 (C.D. Cal. Nov. 9, 2020) (plaintiff assented to updated arbitration agreement that went into effect in 2017 because even though plaintiff's last log in to his account was in 2014, plaintiff "acknowledge[d] that he 'may have' visited [defendant's] [w]ebsite 'between 2018 and thereafter'"); *West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sep. 5, 2018) ("Courts have found that when consumers receive emails such as this one, continued use of the service or product constitutes assent to the updated terms.").

The Ninth Circuit's recent decision in *Tile* illustrates the point. There, consumer plaintiffs filed a putative class action, contending that their claims against the defendants were not arbitrable under the defendants' terms of service. The defendants thereafter updated their terms

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 11

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

to change the forum for disputes[4] and to clarify that questions of arbitrability were for the arbitrator. The court enforced those updated terms with respect to the plaintiffs' pending claims. *See Tile*, 2026 WL 594859, at *1-5 (enforcing agreement updated in October 2023); *see also* Complaint, *Ireland-Gordy v. Tile, Inc.*, No. 23-cv-04119-RFL (N.D. Cal. filed Aug. 14, 2023). The court held that the plaintiffs had received notice of the updated terms through an email notice, rejecting their contentions that such notice was insufficient because they did not read the emails. *See Tile*, 2026 WL 594859, at *3-4. That court further held that the plaintiffs "unambiguously manifested assent" to the updated terms by "using" the defendants' app. *Id.* at *4. The court thus enforced the updated agreement.

The decision in *Goggins v. Amazon.com Inc.*, 2025 WL 2782872 (W.D. Wash. Sep. 30, 2025) (Whitehead, J.), is similarly instructive. In *Goggins*, the plaintiff agreed to an "Advantage Agreement" with Amazon, which originally included a provision requiring that all disputes be resolved in court. *Id.* at *2. The agreement authorized Amazon to change any of its terms by posting a change notice or new agreement on its website, with continued membership constituting acceptance. *Id.* at *3. Four years later, Amazon amended the Advantage Agreement to include an arbitration provision. *Id.* Amazon notified the plaintiff of that amendment by posting a "News" item on top of his Advantage homepage for one month which noted that Amazon had "changed the dispute resolution mechanism to arbitration" and "[y]our continued membership in Advantage after the posting of these changes constitutes your acceptance of the changes." *Id.* The plaintiff then repeatedly accessed the Advantage homepage. *Id.* The plaintiff argued that the notice was inadequate. *Id.* at *6. This Court rejected that challenge because (i) "Amazon notified [the plaintiff] of the modification in **precisely the manner to which [the plaintiff] assented in the Original Advantage Agreement**" and (ii) the plaintiff repeatedly

---

[4] The earlier arbitration agreements required all disputes to be arbitrated before the American Arbitration Association; the updated arbitration agreement required disputes to be arbitrated before JAMS for disputes in North America. *See* Declaration of Steve Klinkner, Ex. B § 25.C, Ex. E § XVII.B, Ex. I at 23, *Ireland-Gordy v. Tile, Inc.*, No. 3:23-cv-04119-RFL, Dkt. No. 34.

| | |
|---|---|
| PLAINTIFF VALVE CORPORATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS– 12 | **CORR CRONIN LLP** 1015 Second Avenue, Floor 10 Seattle, Washington 98104-1001 Tel (206) 625-8600 Fax (206) 625-0900 |

accessed the Advantage homepage and "[a]t no point then—or since—did [the plaintiff] discontinue membership in the Advantage program." *Id.* Thus, this Court granted Amazon's motion to compel arbitration under the updated terms. *Id.* at \*10.

Here, Valve's email notice informed Defendant, consistent with the terms of the Superseded SSA, that the Current SSA would become effective November 1, 2024, unless he deleted or discontinued use of his account. (Compl. ¶ 39.) On or around September 26, 2024, Valve provided Defendant the email notice at the email address provided to Steam when his account was opened. (*Id.* ¶ 34.)

On September 27, 2024, Valve also notified Defendant's counsel, Mason and Vorys, that it had "removed the arbitration agreement from the SSA" in light of the arbitrator's rulings that it was unenforceable and the putative *Elliott* class action on behalf of Steam purchasers nationwide, including Defendant and the thousands of other claimants Mason and Vorys purported to represent. (Compl. ¶ 49.) Valve also informed the firms that it would reimburse their clients' filing fees in connection with the arbitrations. (*Id.*)

Defendant did not delete or discontinue use of his Steam account by November 1, 2024. (*Id*. ¶ 44.) To the contrary, Defendant logged into his account on December 11, 2025, more than a year after the Current SSA went into effect on November 1, 2024. (*Id*.) That Defendant logged in only once, "without playing any games or engaging in any transactions," does not change the analysis. (Mot. at 8.)

**B.      The Current SSA's Dispute Resolution Provision is Enforceable Notwithstanding the Survivorship Clause in the Superseded SSA**

Defendant argues that even if he consented to the Current SSA, Valve's duty to arbitrate is preserved by Section 9D of the Superseded SSA, which "contains a survivorship clause that expressly provides that certain provisions—including the requirement to arbitrate—'will survive ***any*** expiration or termination of this Agreement.'" (Mot. at 10.) Defendant's reliance on the survivorship clause in the Superseded SSA is misplaced. The Complaint pleads that on September

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 13

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

26, 2024, Valve implemented the Current SSA that superseded the parties' previous agreement and removed the arbitration agreement. (Compl. ¶ 3.) Defendant asks this Court to ignore the Complaint's allegations. That is not permitted at the pleading stage. *Wilmuth*, 2024 WL 5088337, at \*6; *see also Smokey Point Com., LLC v. Dick's Sporting Goods, Inc.*, 2017 WL 4882664, at \*4 (W.D. Wash. Oct. 30 2017) (denying motion to dismiss where contract interpretation question could not be resolved at the pleading stage). Nor does a Court at this stage decide which of two agreements applies. *See Travelers Cas. & Sur. Co. of Am. v. Highland P'ship, Inc.*, 2011 WL 4381629, at \*5 (S.D. Cal. Sep. 20, 2011) (declining to determine which of two separate agreements applied, holding that "[w]hether [the] terms conflict . . . is a question of fact not properly resolved at the motion to dismiss stage," and thus the "motion to dismiss this claim is denied"); *Gomez v. Elite Lab. Servs. Weeklys, Ltd.*, 2025 WL 2556107, at \*2 (9th Cir. Sep. 5, 2025) (affirming denial of motion to dismiss that impermissibly asked the court to resolve a factual question of which of two agreements—a prior agreement and a subsequent agreement—controlled: "We agree with the district court that this ambiguity presented a fact issue that could not be resolved on a motion to dismiss.").

Defendant's argument fails for another reason: The survivorship clause in the Superseded SSA applies only where the agreement expires or is terminated. As the Complaint pleads, however, Superseded SSA did not expire and was not terminated. Rather, the Complaint pleads that the parties agreed to amend the SSA to remove the arbitration agreement. (Compl. ¶ 34.) The parties did not terminate their relationship. To be sure, Defendant could have terminated his Steam account. But Defendant did not do that (and, more fundamentally, nowhere does the Complaint allege that). Instead, as the Complaint alleges, Defendant agreed to the Current SSA, which expressly provides that it "constitutes and contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior oral or written agreements." (*Id.* § 11.) With respect to existing customers, it specifically states: "If you were a Subscriber before" September 24, 2024, the Controlling SSA "replaces and supersedes your existing agreement with

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 14

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Valve." (*Id.*)

Further, courts routinely hold that a dispute resolution provision in an updated agreement is enforceable when the agreement plainly articulates that intent, even if the superseded agreement contained a survivorship clause. In *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1127 (11th Cir. 2014), the court concluded that a new agreement without an arbitration clause superseded and applied retroactively to foreclose arbitration under a prior agreement containing an arbitration clause. Although the claim was originally asserted when the agreement had an arbitration clause, the court reasoned that the parties "expressed their clear and definite intent to execute" the new agreement "to supersede" the prior agreement, and that intent controlled. *Id.* at 1117. The court rejected the argument that "there is . . . no statutory authorization permitting parties to *remove* from arbitration an existing controversy." *Id.* at 1125 (emphasis in original). The court reasoned that, because "arbitration is simply a matter of contract," courts "should simply enforce the parties' agreements, whether that means adding a retroactively applicable arbitration provision *or* removing it." *Id.* (emphasis in original); *see also Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 524-26 (2d Cir. 2011) (reversing order granting motion to compel arbitration despite survivorship clause and where amended terms contained a merger clause, holding "contracting parties are free to revoke an earlier agreement to arbitrate by executing a subsequent agreement the terms of which plainly preclude arbitration"). Defendant does not cite a single case to the contrary.

### C. Valve Pleads a Mutual and Not a Unilateral Amendment and the Current SSA Does Not Violate the Implied Covenant of Good Faith and Fair Dealing

Defendant argues that Valve's "sudden removal of the arbitration clause during pending arbitration proceedings" violates the implied covenant of good faith and fair dealing. (Mot. at 12.) But the Complaint expressly pleads that the amendment to the parties' agreement was bilateral as "Defendant received conspicuous notice of the Current SSA and agreed to it through continued use of Steam." (Compl. ¶ 4.) Defendant cannot dispute these well-pleaded allegations on a motion

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 15

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

to dismiss.

Defendant's argument is also wrong as a matter of law for numerous reasons:

*First*, Defendant fails to show that Valve exceeded the rights that it was expressly granted by the Superseded SSA in amending that agreement. The implied covenant "requires only that the parties perform in good faith the obligations imposed by their agreement" and does not "inject substantive terms into the parties' contract." *Badgett v. Sec. State Bank*, 116 Wash. 2d 563, 569, 574 (1991) (en banc) (implied covenant "did not give rise to a duty on the part of [defendant] to consider the [plaintiffs'] proposal. The duty arises, if at all, in connection with contract terms."); *see also 134th St. Lofts, LLC v. iCap Nw. Opportunity Fund, LLC*, 15 Wash. App. 2d 549, 564 (2020) (no breach of implied covenant because party acted in accordance with "the express terms of its Settlement Agreement"); *Johnson v. Yousoofian*, 84 Wash. App. 755, 762 (1996) (implied covenant claim failed because agreement "does not impose an obligation on the landlord to consent to any assignment"), *as amended* (Jan. 9, 1997). "[T]he covenant does not come from thin air, but from the promises the parties have actually made to each other through contract." *Pilon*, 769 F. Supp. 3d at 295. "[I]f the defendant did what it was expressly given the right to do, there can be no breach" of the implied covenant because "the conduct is, by definition, within the reasonable expectation of the parties." *Missing Link, Inc. v. eBay, Inc.*, 2008 WL 3496865, at *5 (N.D. Cal. Aug. 12, 2008). Here, the Complaint alleges that the Superseded SSA expressly included mutual and unilateral amendment procedures. (Mason Decl. Ex. 1 § 8(A)-(B).) Defendant does not dispute that Valve did what these amendment procedures permitted Valve to do.

*Second*, as Defendant concedes (*see* Mot. at 12), the implied covenant does not restrict parties from agreeing to mutual modifications. The covenant "ordinarily works to save provisions allowing *unilateral* modifications—even retroactive ones—from being considered illusory, since the covenant bars the party with unilateral power to modify from using that power capriciously." *Pilon*, 769 F. Supp. 3d at 295 (emphasis in original). The covenant, however, "does not prevent parties from mutually modifying their contracts." *Id.*; *Trudeau*, 816 F. App'x at 70 n.1 (implied

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 16

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

covenant not implicated when plaintiff "'had expressly agreed to' the 2017 TOS"). Parties are always free to agree to enter into a new agreement that supersedes a prior agreement, and such agreements may apply retroactively, including to accrued claims. *Pilon*, 769 F. Supp. 3d at 295 (implied covenant did not prevent mutual modification even though amendment occurred "after . . . the accrual of [plaintiff's] claim").

Here, the Complaint alleges that the update to the SSA was mutual, not unilateral. For online transactions "a determination of mutual assent often turns on whether a consumer had reasonable notice of the terms." *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1189 (W.D. Wash. 2024). As Part IV.A.1 above explained, Valve provided notice through several channels and Steam users could agree to the new terms through use of Steam. In the email notice Valve sent to the email address Defendant provided when his account was opened stated: "[T]he updated [SSA] will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then." (Compl. ¶¶ 39, 34.) Defendant did not delete or discontinue use of his Steam account by November 1, 2024. (*Id*. ¶ 44.) Thus, this was a mutual amendment. *See Pilon*, 769 F. Supp. 3d at 290-91, 295.

The authority on which Defendant relies, *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015) (Mot. at 12), addressed unilateral amendments, and its reasoning "does not extend to mutual modifications." *Pilon*, 769 F. Supp. 3d at 295 (distinguishing *Cobb*); *accord Trudeau*, 816 F. App'x at 70 n.1.

Courts routinely enforce modified consumer contract terms that require acceptance of new terms as a condition of using the service. *See Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 857 n.9 (W.D. Wash. 2023) (rejecting argument that updated terms "do not apply to Plaintiffs' claims" where terms "expressly provide that users' 'continued use of Alexa' after any modifications to that agreement 'constitutes [their] acceptance of the terms'" (alteration in original)), *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024); *Search v. Bank of Am., N.A.*, 2012 WL 4514285, at *5 (W.D. Wash. Oct. 2, 2012) (notice was "an invitation to enter into a new relationship governed by the

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 17

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

modified terms" and "Plaintiff accepted" by "continuing to use [her] card" (alteration in original)); *In re Amazon Prime Video Litig.*, 765 F. Supp. 3d 1165, 1170, 1173 (W.D. Wash. 2025) (change in terms "permit[ted]" where terms provided that user's "continued use of the Service or Software following any changes will constitute your acceptance of such changes"). The Complaint reasonably pleads that that is what occurred here.

*Third*, even if, contrary to the well-pleaded allegations in the Complaint, the amendment was considered "unilateral," the Complaint alleges the amendment was made in good faith. Valve amended the SSA only after (i) arbitral rulings held that the arbitration provision in the Superseded SSA was unenforceable and (ii) a putative class action asserting the same underlying antitrust claims was commenced on that basis. (Compl. ¶ 3.) Valve advised Defendant's Counsel of this amendment and its rationale the day after the amendment was made. (Compl. ¶ 49.) Valve also offered to reimburse Defendant's arbitration filing fees. (*Id.*) The amendment gave all parties comfort that their disputes could be adjudicated in one forum through an orderly, final, and binding process. Defendant may dispute Valve's good faith as a factual matter, but that dispute cannot carry Defendant's burden on this Motion.

### D.   Defendants' Unconscionability Arguments Fail

Defendant argues that applying the Current SSA to Defendant would be procedurally and substantively unconscionable. (Mot. at 13.) As a preliminary matter, unconscionability generally cannot be raised as a proper argument on a motion to dismiss unless it clearly appears on the face of the complaint. *See, e.g.*, *Cazares v. Pac. Shore Funding*, 2006 WL 149106, at *6 n.4 (C.D. Cal. Jan. 3, 2006) ("A determination of whether a contract is unconscionable requires a consideration of facts that are beyond the scope of a motion to dismiss. For this reason alone, [defendants] cannot obtain a dismissal."); *Teed v. Chen*, 2022 WL 16839496, at *5 (N.D. Cal. Nov. 9, 2022) (holding defendant's "unconscionability argument is unavailing at this stage because the question of whether a contract is unconscionable exceeds the scope of a 12(b)(6) motion"); *Ramos v. Citimortgage, Inc.*, 2009 WL 86744, at *7 (E.D. Cal. Jan. 8, 2009) (holding "consideration of . . .

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 18

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

claim that his loan is unconscionable is premature at this stage in the litigation, and the court must deny defendant's motion to dismiss with respect [to] this aspect of the Complaint"). No such facts are pleaded on the face of the Complaint.

Even if unconscionability were a proper argument on a motion to dismiss, the Current SSA is not unconscionable. Defendant asserts that the Current SSA is procedurally unconscionable because "Valve now expands the word 'use' to include merely logging in to the platform," which constitutes a procedurally unconscionable "bait and switch." (Mot. at 14.) Defendant further maintains that the Current SSA "purports to be effective for any subscriber who continues using their Steam account after November 1, 2024," and users "must revisit the Steam platform to access their previously purchased games, making it 'nearly impossible to avoid retroactive application' of Valve's amended terms." (Mot. at 14-15.) These are simply Defendants' contentions. But at this stage, all inferences must be drawn in Valve's favor.

Regardless, Defendants cannot show that the modification is unconscionable as a matter of law. That is because "unconscionability requires a deprivation of meaningful choice, and for nonessential activities, the consumer always has the option of forgoing the activity." *Bassett v. Elec. Arts Inc.*, 2015 WL 1298644, at *11 (E.D.N.Y. Feb. 9, 2015), *report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015). Video games "are nonessential recreational activities," and presenting a choice whether to forego video games cannot render a consumer agreement unconscionable. *See id*.

Further, the Superseded SSA set forth how Valve could amend the parties' agreement and what would constitute acceptance. As the Complaint pleads, Valve followed those procedures. (Compl. ¶ 34-42.) Consistent with the amendment provisions in the Superseded SSA, Valve provided Defendant the option to (i) accept the Current SSA or (ii) discontinue use of or terminate his Steam account. *See Ginoyan v. Barclays Bank Del.*, 443 F. Supp. 3d 1136, 1141 (C.D. Cal. 2020) (rejecting plaintiff's argument that defendant "forced him" to take the action that constituted assent to the arbitration agreement). As the Complaint pleads, Defendant elected to accept the

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 19

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Current SSA.

Defendant also argues the Current SSA is substantively unconscionable because it enables Valve "to retract the arbitration provision during litigation—more than three years after the Court granted Valve's motion to compel arbitration." (Mot. at 15.) This argument directly contradicts the well-pleaded allegations in the Complaint. As the Complaint alleges, Valve did not file any motion to compel Defendant to arbitrate, and the Court has not compelled Valve to arbitrate with Defendant. Valve was compelled to arbitrate with seven consumer plaintiffs in 2021 when the Superseded SSA, containing an arbitration clause, was in effect. (Compl. ¶ 11.) The Complaint's allegations, not Defendant's spin, are accepted as true at this stage.

Further, courts consistently apply amended dispute resolution provisions retroactively, even where there is ongoing litigation that predates the amendment. *See, e.g.*, *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2021 WL 2350814, at *4 (C.D. Cal. Apr. 20, 2021) (enforcing agreement revised two years after suit filed); *see also Tile*, 2026 WL 594859, at *1-5 (enforcing forum provision in updated terms retroactively with respect to plaintiffs' pending claims); *SCPS LLC v. Kind Law*, 2026 WL 96898 at *9 (C.D. Cal. Jan. 8, 2026) (enforcing the updated agreement and explaining that "the result would be the same even if the [claimants] had assented [to the updated agreement] after initiating arbitrations with the AAA"); *Saucedo v. Experian Info. Sol., Inc.*, 2023 WL 4708015, at *6 (E.D. Cal. July 24, 2023) (enforcing arbitration agreement entered into after suit filed). Thus, requiring a party to bring a legal claim in court (including on a class wide basis) is not unduly burdensome, particularly when, as here, the party's claims are in early stages. (Compl. ¶ 16 ("Defendant's arbitration is at a preliminary stage. No arbitrator has been selected and no substantive proceedings have occurred in his arbitration.").)

E.    **Equitable Estoppel Is Inapplicable Here**

Defendant argues that "equitable estoppel bars Valve from repudiating the arbitration agreement it drafted and enforced." (Mot. at 16.) Equitable estoppel requires acts that are both "inconsistent" and inequitable. *See Saunders*, 113 Wash. 2d at 340. Valve has not taken any

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 20

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

inconsistent position. Valve filed its motion to compel arbitration *before* an arbitrator ruled that the Superseded SSA was unenforceable and *before* Valve removed the arbitration agreement from the Superseded SSA in response to that ruling. (Compl. ¶ 3.) Taking Defendant's argument to its logical extreme, by filing a successful motion to compel arbitration, a business is permanently estopped from ever entering into a new agreement without an arbitration provision. "Equitable estoppel" does not permit, let alone compel, such a result.

### F.    Valve Adequately Pleads an All Writs Act Claim

Defendant asserts that Valve's claim under the All Writs Act, 28 U.S.C. section 1651(a), "should be dismissed because it fundamentally misconstrues the Act's scope and purpose." (Mot. at 17.) Defendant is wrong.

Under the All Writs Act, courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). Courts can enjoin an arbitration if it would threaten the court's jurisdiction. For example, in *PMI America*, the court issued a preliminary injunction pursuant to the All Writs Act when, "[h]aving concluded that the arbitration agreement [was] not binding on [the defendant] in his individual capacity" "allowing the arbitration to proceed against him in that capacity would undermine and directly threaten the Court's holding that he did not agree to arbitration." 2012 WL 13018298, at *8; *see also Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*, 534 F. Supp. 2d 1290, 1325 (S.D. Fla. 2008) ("Since I have granted summary judgment in favor of plaintiff on the issue of whether it had the right to release Aventura's claim against Goodwill, I find it necessary to issue an All Writs Act Injunction to enjoin the arbitration proceedings between Aventura and Goodwill in order to protect my jurisdiction.").

Here, there is a putative class action pending in this district, the *Wolfire* action, brought on behalf of a putative class that includes Defendant, that encompasses all of Defendant's claims and the relief Defendant seeks in arbitration. (Compl. ¶ 93.) Defendant's counsel has filed a motion for sanctions in *Wolfire* seeking an order requiring Valve to pay the case management fees in Defendant's arbitration. (*Id.* ¶ 94.) Defendant's counsel has also filed a putative class action in

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 21

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Smith* seeking an order requiring Valve to pay the case management fees in Defendant's arbitration. (*Id.* ¶ 95.) Defendant's Counsel has also filed another putative class action in *Welty* seeking an order requiring Valve to pay case management fees in arbitrations Mason is pursuing before the AAA. (*Id.* ¶ 96.) Thus, it would threaten the jurisdiction and any judgment of the court in *Wolfire*, *Smith*, and *Welty* for the arbitration Defendant's counsel is pursuing on behalf of Defendant to proceed because it could result in a ruling inconsistent with a ruling of the *Wolfire*, *Smith*, and/or *Welty* courts. (*Id.* ¶ 97.) Accordingly, this Court should enjoin Defendant's arbitration pursuant to the All Writs Act.

Defendant's authority is not to the contrary. Defendant cites *Pennsylvania Bureau of Correction v. U.S. Marshals Service*, 474 U.S. 34 (1985), for the proposition that the Act "cannot create jurisdiction that does not otherwise exist." (Mot. at 17.) The case does not pertain to injunctions, arbitrations, or involve a situation where the Act was used to create non-existent jurisdiction. In *Pennsylvania Bureau*, the district court issued writs of habeas corpus *ad testificandum* ordering the United States Marshals Service to transport prisoners from a county facility to the federal court to testify. *Id.* at 35-36. The Third Circuit reversed, holding that the All Writs Act did not confer power upon the District Court to issue such relief. *Id.* at 36. The Supreme Court affirmed. *Id.* at 38-39. The Court explained that "[t]he All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute" and here, the habeas corpus statutes covered such writs. *Id.* at 43. The Court, however, "le[ft] open the question of the availability of the All Writs Act to authorize such an order where exceptional circumstances require it." *Id.*

Defendant also cites *Adkins v. Nestle Purina PetCare Co.*, 779 F.3d 481 (7th Cir. 2015), in support of his claim that "the mere possibility of inconsistent outcomes between separate proceedings does not justify an All Writs Act injunction." (Mot. at 17.) But *Adkins* does not even mention the All Writs Act. Rather, *Adkins* analyzes the Anti-Injunction Act (28 U.S.C. § 2283), which limits federal courts' power to enjoin parallel state court proceedings. In *Adkins*, the district

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 22

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

court certified a nationwide class action where the parties reached a settlement. The district court tentatively approved the settlement pending a fairness hearing and enjoined all class members from prosecuting litigation in any other forum. The Seventh Circuit stayed the injunction and explained that an injunction was inappropriate where, unlike here, "no one contends that trial or judgment in the Missouri litigation could imperil the district court's ability and authority to adjudicate the federal suit." *Id.* at 484. Thus, Defendant's authority does not compel a different result.

## V.      CONCLUSION

Valve respectfully requests that the Court deny Defendant's Motion.

DATED: April 29, 2026

I certify that this memorandum contains 7,932 words, in compliance with the Local Civil Rules.

CORR CRONIN LLP

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Plaintiff Valve Corporation*

PLAINTIFF VALVE CORPORATION'S
OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS– 23

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900