THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION,<br><br>               Plaintiff,<br><br>          v.<br><br>JASON IRIAS,<br><br>               Defendant. | No. 2:26-cv-000698-JNW<br><br>**PLAINTIFF VALVE CORPORATION'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**NOTE ON MOTION CALENDAR: May 27, 2026**<br><br>**ORAL ARGUMENT REQUESTED** |

MOTION FOR PRELIMINARY INJUNCTION - i

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................................... 1

II.   STATEMENT OF FACTS .......................................................................................... 3

    A.   Valve, the Steam Platform, and the SSA ...................................................... 3

    B.   Plaintiffs in *Wolfire* Commence a Consumer Antitrust Class Action Against Valve. 4

    C.   Mason Attempts To Pursue AAA Arbitrations Against Valve ................................. 4

    D.   Valve Removes The Arbitration Provision Held To Be Unenforceable From The Current SSA And Defendant Accepts The Updated SSA ........................................ 5

    E.   The AAA Administratively Stays Defendant's Arbitration and Mason Commences Litigation .................................................................................. 7

    F.   Valve Files This Action and the AAA Places Defendant's Arbitration in Abeyance for 90 Days .................................................................................. 8

III.  THE MOTION FOR PRELIMINARY INJUNCTION SHOULD BE GRANTED ............. 8

    A.   Valve Is Likely To Succeed On The Merits: The Parties Have No Agreement To Arbitrate ..................................................................................................... 9

        1.   Supreme Court Authority Requires That This Court Decide Which Agreement Is Controlling ...................................................................... 9

        2.   The Current SSA Is Valid And Fully Enforceable As To Defendant........... 10

            (a)   Valve Properly Provided Steam Users With Conspicuous And Repeated Notice Of The Current SSA ............................................... 11

            (b)   Defendant Agreed To The Current SSA ......................................... 13

        3.   Under The Current SSA, Disputes Between Defendant And Valve Must Be Resolved In Court ..................................................................... 16

    B.   Valve Will Face Irreparable Harm If Forced To Arbitrate ................................... 18

    C.   The Relative Interests of the Parties Favor An Injunction...................................... 19

    D.   The Public Interest Favors An Injunction................................................................ 20

    E.   The Court Should Not Require A Bond.................................................................... 21

IV.   CONCLUSION........................................................................................................... 21

MOTION FOR PRELIMINARY INJUNCTION - ii

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Adkins v. Facebook, Inc.*,
    Nos. C 18-05982 WHA, C 19-00117 WHA
    2019 WL 3767455 (N.D. Cal. Aug. 9, 2019) ..............................................................................15

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) .......................................................................................................9

*AT & T Mobility LLC v. Smith*,
    No. 11-cv-5157,
    2011 WL 5924460 (E.D. Pa. Oct. 7, 2011)...................................................................................20

*AT & T Mobility LLC v. Bernardi*,
    Nos. C 11-03992 CRB, C 11-04412 CRB,
    2011 WL 5079549 (N.D. Cal. Oct. 26, 2011)................................................................................20

*Bassett v. Electronic Arts Inc.*,
    No. 13-CV-04208 (MKB)(SMG),
    2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015),
    *report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015)...............................15

*Bauer v. Atlantis Events, Inc.*,
    No. CV 13-05290 SJO (JCx),
    2014 WL 12603112 (C.D. Cal. Mar. 5, 2014),
    *aff'd*, 645 F. App'x 545 (9th Cir. 2016)....................................................................................15

*Coinbase, Inc. v. Suski*,
    602 U.S. 143 (2024)........................................................................................2, 10, 18, 19

*COR Clearing, LLC v. LoBue*,
    No. EDCV 16-909 JGB (KKx),
    2016 WL 9088704 (C.D. Cal. June 16, 2016) .....................................................................20, 21

*Dasher v. RBC Bank (USA)*,
    745 F.3d 1111 (11th Cir. 2014) ...............................................................................................16

*Dlugolecki v. PeopleConnect, Inc.*,
    No. CV 20-3657-GW-GJSx,
    2020 WL 13587803 (C.D. Cal. Nov. 9, 2020)..........................................................................13

MOTION FOR PRELIMINARY INJUNCTION - iii

*Edward E. Gillen Co. v. Insurance Co. of the State of Pennsylvania*,
    747 F. Supp. 2d 1058 (E.D. Wis. 2010)...................................................................................19, 21

*Enderlin v. XM Satellite Radio Holdings, Inc.*,
    No. 4:06-CV-0032 GTE,
    2008 WL 830262 (E.D. Ark. Mar. 25, 2008) ...........................................................................17

*Goetsch v. Shell Oil Co.*,
    197 F.R.D. 574 (W.D.N.C. 2000)..............................................................................................17

*Goggins v. Amazon.com Inc.*,
    No. 2:24-cv-00257,
    2025 WL 2782872 (W.D. Wash. Sep. 30, 2025)......................................................................14

*Goldman, Sachs & Co. v. City of Reno*,
    747 F.3d 733 (9th Cir. 2014) .......................................................................................................9

*Grant v. T-Mobile USA, Inc.*,
    No. 2:23-cv-01946-MJP,
    2024 WL 3510937 (W.D. Wash. July 23, 2024) ......................................................................11

*Ingram Micro Inc. v. Signeo Int'l, Ltd.*,
    No. SACV 13-1934-DOC (ANx),
    2014 WL 3721197 (C.D. Cal. July 22, 2014)...........................................................................17

*Ireland-Gordy v. Tile, Inc.*,
    No. 25-403,
    2026 WL 594859 (9th Cir. Mar. 3, 2026)..............................................................3, 11, 13, 14

*Johnson v. Walmart Inc.*,
    57 F.4th 677 (9th Cir. 2023) ......................................................................................................10

*Koman v. Weingarten/Investments, Inc.*,
    No. H-10-1836,
    2010 WL 3717312 (S.D. Tex. Sep. 17, 2010) ..........................................................................21

*Lamps Plus, Inc. v. Varela*,
    587 U.S. 176 (2019)...................................................................................................................10

*LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distribution, Teamsters Local 63*,
    849 F.2d 1236 (9th Cir. 1988) ...................................................................................................18

*Majidi-Ahy v. ClassPass, Inc.*,
    No. 2:25-cv-05003-KS,
    2026 WL 585465 (C.D. Cal. Feb. 11, 2026)......................................................................16, 17

MOTION FOR PRELIMINARY INJUNCTION - iv

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Monavie, LLC v. Quixtar Inc.*,
741 F. Supp. 2d 1227 (D. Utah 2009)......................................................................................20

*Morgan Keegan & Co. v. McPoland*,
829 F. Supp. 2d 1031 (W.D. Wash. 2011)...............................................................18, 19, 20, 21

*Morgan Stanley & Co. v. Couch*,
134 F. Supp. 3d 1215 (E.D. Cal. 2015),
*aff'd*, 659 F. App'x 402 (9th Cir. 2016).......................................................................9, 18, 20, 21

*In re National Football League's Sunday Ticket Antitrust Litigation*,
No. ML 15-2268 PSG (JEMx),
2021 WL 2350814 (C.D. Cal. Apr. 20, 2021) ...........................................................................17

*Open Book Theatre Co. v. Brown Paper Tickets, LLC*,
749 F. Supp. 3d 1076 (S.D. Cal. 2024)......................................................................................11

*Oppenheimer & Co. v. Mitchell*,
No. C23-67 MJP,
2023 WL 2428404 (W.D. Wash. Mar. 9, 2023) ................................................................. *passim*

*Pilon v. Discovery Communications, LLC*,
769 F. Supp. 3d 273 (S.D.N.Y. 2025).............................................................................10, 13, 17

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010)............................................................................................................9

*Resource Group International Ltd. v. Chishti*,
91 F.4th 107 (2d Cir. 2024) ...................................................................................................19

*Sadlock v. Walt Disney Co.*,
No. 22-cv-09155-EMC,
2023 WL 4869245 (N.D. Cal. July 31, 2023)...........................................................................11,13

*Saucedo v. Experian Information Solutions, Inc.*,
No. 1:22-cv-01584-ADA-HBK,
2023 WL 4708015 (E.D. Cal. July 24, 2023) ...........................................................................17

*SCPS LLC v. Kind Law*,
No. CV 25-3255-MWF (SSCx),
2026 WL 96898 (C.D. Cal. Jan. 8, 2026) ................................................................................16

*Textile Unlimited, Inc. v. A..BMH & Co.*,
240 F.3d 781 (9th Cir. 2001) ..................................................................................................9

*United Financial Casualty Co. v. Coleman*,
173 Wash. App. 463 (2012)...................................................................................................11

MOTION FOR PRELIMINARY INJUNCTION - v

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*West v. Uber Technologies,*
    No. 18-CV-3001-PSG-GJS,
    2018 WL 5848903 (C.D. Cal. Sep. 5, 2018)........................................................................13

*Williams v. Experian Information Solutions Inc.,*
    No. CV-23-01076-PHX-DWL,
    2024 WL 3876171 (D. Ariz. Aug. 20, 2024)........................................................................10

*Winter v. National Resources Defense Council, Inc.,*
    555 U.S. 7 (2008)......................................................................................................................8

*Wolfire Games, LLC v. Valve Corp.,*
    No. C21-0563-JCC,
    2021 WL 4952220 (W.D. Wash. Oct. 25, 2021) ................................................................4

**RULES**

Federal Rule of Civil Procedure 65 ........................................................................................1

MOTION FOR PRELIMINARY INJUNCTION - vi

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I.   **INTRODUCTION**

Plaintiff Valve Corporation ("Valve") brings this Motion for Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure to enjoin Defendant Jason Irias ("Defendant") from continuing to pursue his arbitration before the American Arbitration Association ("AAA") because the controlling agreement between the parties requires Defendant's claim to proceed in court.

On January 28, 2026, the AAA commenced administration of Defendant's arbitration. On February 6, 2026, the AAA determined that it would proceed with the appointment of a merits arbitrator over Valve's objection. Accordingly, on February 27, 2026, Valve filed this action to enjoin the arbitration. That same day, Valve advised the AAA of the filing of this action. On March 10, 2026, the AAA placed Defendant's arbitration in abeyance for 90 days based on the pendency of this action. After that 90-day period, the AAA may administer Defendant's arbitration.

The arbitration should be enjoined because there is no agreement to arbitrate between Valve and Defendant. The record facts are straightforward and unequivocally support that conclusion:

- Valve operates Steam, a digital video game distribution platform. Steam users are required to agree to Valve's Steam Subscriber Agreement ("SSA").

- A prior version of the SSA (the "Superseded SSA," Ex. A)[1] contained an arbitration provision and a class action waiver. However, in July 2024, a series of arbitration rulings held that provision unenforceable.

- In August 2024, following those rulings, counsel for those arbitration claimants filed a putative class action in this Court, *Elliott v. Valve Corporation*, No. 2:24-cv-01218 (W.D. Wash. filed Aug. 9, 2024), asserting antitrust claims substantially similar to those asserted by Defendant on behalf of a nationwide class of Steam users. The *Elliott* complaint asserted that the arbitration agreement was unenforceable as to the entire putative class

---

[1] All references to "Ex." followed by a letter refer to exhibits to the accompanying declaration of Scott Lynch, dated April 27, 2026 ("Lynch Decl."). All references to "Ex." followed by a number refer to exhibits to the accompanying declaration of Blake Marks-Dias, dated April 29, 2026. All emphases are added, internal citations, quotations, and alterations are omitted unless otherwise indicated.

MOTION FOR PRELIMINARY INJUNCTION - 1

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

(including Defendant) and that Steam users could therefore proceed in court. This Court has since consolidated *Elliott* with an earlier-filed consumer class action, *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JNW ("*Wolfire*")—in which Defendant's former counsel in arbitration, Vorys, Sater, Seymour and Pease ("Vorys"), is counsel to the consumer plaintiffs—and with two other later-filed actions, *Hepler v. Valve Corporation*, No. 2:24-cv-01735 (W.D. Wash. filed Oct. 23, 2024), and *Drake v. Valve Corporation*, No. 2:24-cv-01743 (W.D. Wash. filed Oct. 24, 2024). That consolidated action remains pending.

- In light of those developments, on September 26, 2024, Valve implemented a new SSA (the "Current SSA," Ex. B) to remove the arbitration agreement and class action waiver. The Current SSA requires all disputes to be resolved in courts sitting in King County, Washington.

- Valve provided Steam users, including Defendant, conspicuous notice of the Current SSA through several channels.

- Defendant agreed to the Current SSA through continued use of Steam. He is therefore bound by the Current SSA.

Accordingly, Defendant must pursue his claims in court, not arbitration.

The Court should grant Valve's motion for a preliminary injunction enjoining Defendant's arbitration because Valve meets each requirement for relief:

*First*, Valve is likely to succeed on the merits. (*Infra* Part III.A.) Under controlling Supreme Court precedent, the question of whether the Superseded SSA (with its arbitration agreement) or the Current SSA (without an arbitration agreement) governs cannot be left to an arbitrator, but must be decided by this Court. *See Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024). The Court should hold that the Current SSA governs: Defendant received notice of the Current SSA when it was implemented and he assented to it through his continued use of Steam. The Current SSA provides that all claims, including any already-accrued claims, must be resolved in court in Washington. Under well-settled law, a new

MOTION FOR PRELIMINARY INJUNCTION - 2

forum provision that expressly applies to preexisting claims is enforceable and governs pending disputes. *See*, *e.g.*, *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *1-5 (9th Cir. Mar. 3, 2026) (enforcing updated terms changing arbitral forum with respect to plaintiffs' pending claims).

*Second*, Valve is suffering and will continue to suffer irreparable harm if the arbitration proceeds. (*Infra* Part III.B.) Forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes *per se* irreparable harm. Although Valve has requested that the AAA close Defendant's arbitration administratively for lack of jurisdiction, the AAA will not address the request and instead intends to appoint a merits arbitrator. While the AAA held the matter in abeyance on March 10, 2026, that stay will lapse in 90 days unless the AAA extends it. If the arbitration proceeds, Valve will be required to commit significant time and resources to attending pre-hearing conferences, engaging in information exchange revealing confidential company information, briefing pre-hearing disputes, and preparing for and attending final merits hearings in unauthorized arbitrations. And any award would be subject to vacatur on the grounds that the arbitration proceeding was *ultra vires*.

*Third*, the equities between the parties favor an injunction. (*Infra* Part III.C.) The parties did not agree to arbitrate; forcing them to do so would serve no purpose. Defendant is free to pursue his claims in court.

*Fourth*, the public interest favors an injunction. (*Infra* Part III.D.) The public interest is not served by compelling parties to arbitrate in the absence of an agreement to arbitrate, where any award entered in that proceeding may be vacated on the ground that there was never any authority to conduct that arbitration. That is all the more true where there is an overlapping putative class action already pending.

## II.    STATEMENT OF FACTS

### A.    Valve, the Steam Platform, and the SSA

Valve is a video game developer, publisher, and digital distribution company. Valve offers an online platform called Steam, where consumers can purchase, play, and interact with their friends about video games. For an individual to create a Steam account and become a Steam user, that person must first agree to the SSA. Valve has periodically modified the SSA since it was first implemented in 2003.

MOTION FOR PRELIMINARY INJUNCTION - 3

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Defendant originally agreed to the SSA on October 28, 2012. (Lynch Decl. ¶ 13.) That version of the agreement contained an arbitration agreement and class action waiver. (*Id.* ¶¶ 5-6.)

**B.    Plaintiffs in *Wolfire* Commence a Consumer Antitrust Class Action Against Valve**

In 2021, two video game developers and seven consumer plaintiffs initiated *Wolfire Games LLC v. Valve Corp.*, No 2:21-cv-00563 (W.D. Wash. filed Apr. 27, 2021), and two other putative class actions—including *Colvin v. Valve Corporation*, No. 21-cv-00801 (C.D. Cal. filed Apr. 8, 2021), filed by Defendant's former co-counsel, Vorys—against Valve alleging violations of the federal antitrust laws. This Court consolidated the two other actions into *Wolfire*. When the plaintiffs filed their complaints, the applicable SSA—the Superseded SSA—contained an arbitration provision providing for AAA arbitration and a class action waiver. (Lynch Decl. ¶¶ 5-6.)

Accordingly, Valve moved to compel arbitration of the claims asserted by the seven consumer plaintiffs. This Court granted Valve's motion notwithstanding a challenge to the arbitration provision's enforceability because it found that enforceability was an issue to be decided by the arbitrator. This Court stayed the *Wolfire* action as to the consumer plaintiffs. *See Wolfire Games, LLC v. Valve Corp.*, 2021 WL 4952220, at *3 (W.D. Wash. Oct. 25, 2021).

**C.    Mason Attempts To Pursue AAA Arbitrations Against Valve**

Defendant's counsel, Mason LLP ("Mason") is attempting to pursue AAA arbitrations on behalf of 19,911 claimants, including Defendant, notwithstanding that the Current SSA does not provide for arbitration. Mason has also threatened arbitration claims on behalf of more than 100,000 other putative claimants. (Marks-Dias Decl. ¶ 4.) Based on Valve's preliminary analysis of this overall claimant pool, there appear to be (i) more than 200 putative claimants who are dead—including 10 claimants whose claims Mason has filed with the AAA; (ii) more than 350 claimants in active bankruptcy proceedings; and (iii) claimants who were minors at the time their claims were asserted. (*Id.* ¶ 5.) Mason also appears to be pursuing or threatening claims on behalf of more than 1,400 claimants who are represented by one or two other law firms pursuing or threatening to pursue the same or substantially similar antitrust claims on their behalf against Valve. (*Id.* ¶ 6.)

MOTION FOR PRELIMINARY INJUNCTION - 4

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Mason has received litigation funding from Bench Walk 22m, L.P., an affiliate of Bench Walk Advisors LLC (collectively, "Bench Walk"), to pursue its mass arbitration strategy. (Exs. 17-18.) Other law firms that have received litigation funding from Bench Walk are also pursuing mass arbitrations asserting antitrust claims against Valve, including Bucher Law PLLC ("Bucher Law"). (Ex. 19.)

On December 15, 2023, Mason and its then co-counsel Vorys filed Defendant's claim with the AAA pursuant to the arbitration agreement in the Superseded SSA. (*Id.* ¶ 3.)

**D.      Valve Removes The Arbitration Provision Held To Be Unenforceable From The Current SSA And Defendant Accepts The Updated SSA**

On July 8, 2024, in four AAA arbitrations commenced by Bucher Law, a merits arbitrator determined that the arbitration clause in the Superseded SSA was unenforceable. The arbitrator dismissed the arbitration proceedings before him on that basis. (Marks-Dias Decl. ¶ 7; *Elliott v. Valve Corporation*, No. 2:24-cv-01218 (W.D. Wash. filed Aug. 9, 2024) Dkt. 1 ("*Elliott* Compl.") ¶ 13, 30-31.)

On August 9, 2024, Bucher Law commenced a new putative antitrust class action against Valve naming those four claimants as plaintiffs. That action, *Elliott*, is brought on behalf of a putative class of all Valve consumers, and asserts claims similar to the antitrust claims Defendant is pursuing against Valve. (Marks-Dias Decl. ¶ 8; *Elliott* Compl. ¶ 167.) It contends that the Superseded SSA's arbitration provision is unenforceable as to all Steam users. (*Elliott* Compl. ¶ 13.) *Elliott* has been consolidated with *Wolfire*.[2] Vorys sought unsuccessfully to be appointed lead counsel to the consumer class in *Wolfire*. (*See Wolfire*, Dkts. 409, 441.)

On September 26, 2024, in light of the arbitral determination that the SSA's arbitration provision was unenforceable and the filing of the *Elliott* action, Valve gave notice to Steam users that it was amending the SSA to remove both the arbitration provision and the class action waiver. (Marks-Dias Decl. ¶ 9; Lynch Decl. ¶¶ 6-11.) The dispute resolution section of the Current SSA now provides:

---

[2] Two other putative class actions asserting antitrust claims against Valve were filed in October 2024 and also consolidated with *Wolfire*. *Hepler v. Valve Corp.*, No. 2:24-cv-01735-JNW (W.D. Wash. filed Oct. 23, 2024) and *Drake v. Valve Corp.*, No. 2:24-cv-01743-JNW (W.D. Wash. filed Oct. 24, 2024).

MOTION FOR PRELIMINARY INJUNCTION - 5

> You and Valve agree that all disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction.

(*See* Ex. B § 10 (*available at* https://store.steampowered.com/subscriber_agreement/).)

The Current SSA also includes a merger clause, which provides:

> This Agreement, including any Subscription Terms, Rules of Use, the Valve Privacy Policy, and the Valve Hardware Limited Warranty Policy, constitutes and contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior oral or written agreements.

(*See* Ex. B § 11 (*available at* https://store.steampowered.com/subscriber_agreement/).)

Starting on September 26, 2024, Valve provided notice of that change through several channels—direct email to users, an in-app pop-up notification, and a conspicuous notice on Valve's website. (Lynch Decl. ¶¶ 6-11.) Valve notified users that they would accept the Current SSA through their continued use of Steam: "the updated Steam Subscriber Agreement will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then." (*Id.* ¶ 8.)

On or around September 26, 2024, Valve provided Defendant the email notice at the email address provided to Steam when his account was opened. (Lynch Decl. ¶ 14.)

Defendant did not delete or discontinue use of his Steam account by November 1, 2024. (Lynch Decl. ¶ 15.) To the contrary, Defendant logged into his account on December 11, 2025, more than a year after the Current SSA went into effect on November 1, 2024. (*Id.* ¶ 16.) He also interacted with Steam through the Steam mobile app on March 2, 2026. (*Id.* ¶ 17.)

On September 27, 2024, Valve directly notified Defendant's then-counsel, Vorys and Mason, that Valve had "removed the arbitration agreement from the SSA." (Marks-Dias Decl. ¶ 10; Ex. 1.) Valve also informed Vorys and Mason that Valve would reimburse their clients' arbitration filing fees. (*Id.*)

On October 1, 2024, Vorys and Mason accepted Valve's offer to reimburse them for their clients' AAA filing fees, including Defendant's. (Marks-Dias Decl. ¶ 12; Ex. 3.) Valve reimbursed Vorys and Mason for their clients' AAA filing fees in the amount of $1,518,325.00. (*Id.* ¶ 13; Ex. 4.)

MOTION FOR PRELIMINARY INJUNCTION - 6

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**E.    The AAA Administratively Stays Defendant's Arbitration and Mason Commences Litigation**

On February 13, 2025, Valve requested that the AAA administratively close the already-filed arbitrations, noting that the AAA no longer had jurisdiction because there is no agreement to arbitrate in the Current SSA. (Marks-Dias Decl. ¶ 14; Ex. 5.) On March 24, 2025, the AAA denied Valve's request to close the arbitrations. (*Id.* ¶ 15; Ex. 6.) The AAA then issued an invoice to Valve of approximately $20.875 million in case management fees for Defendant's and Mason's other 14,910 arbitration claimants. (Marks-Dias Decl. ¶ 16; Ex. 7.) On April 23, 2025, Valve declined to pay the fees, as is Valve's right under the AAA rules, on the ground that there is no agreement to arbitrate in the Current SSA. (Marks-Dias Decl. ¶ 17; Ex. 8.) On May 15, 2025, the AAA administratively stayed Defendant's arbitration and the 14,910 other arbitrations Mason was pursuing at Mason's request. (Marks-Dias Decl. ¶ 18; Ex. 9.)

Mason then commenced a series of duplicative court proceedings in an effort to compel Valve to pay those case management fees:

(1)    On May 2, 2025, Mason filed a putative class action in California, *Welty v. Valve Corp.*, No. 2:25-cv-02450 (W.D. Wash) (Dkt. 1), seeking an order compelling Valve to pay the case management fees. *Welty* has been transferred to this Court.

(2)    On June 11, 2025, Mason filed a motion for sanctions in *Wolfire* demanding that Valve pay the case management fees for Defendant and 14,910 other claimants[3] as a "sanction." *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JNW (Dkt. 467.)

(3)    On August, 5, 2025, Mason filed another putative class action, *Smith v. Valve Corp.*, No. 2:25-cv-01478-JNW (W.D. Wash.) (Dkt. 1), again seeking an order compelling Valve to pay the case management fees. Defendant is a member of the putative class in *Smith*.

---

[3] The claims of yet another 5,000 Mason claimants were referred to a AAA Process Arbitrator. On February 9, 2026, the Process Arbitrator ruled that only a court can decide which agreement applies to the claimants as between the Superseded SSA and Current SSA. (Marks-Dias Decl ¶ 25; Ex. 16 at 11.)

MOTION FOR PRELIMINARY INJUNCTION - 7

On December 17, 2025, Mason notified the AAA that this Defendant had "elected to move forward with his arbitration claim against Valve" and that Mason would advance the case management fees for his arbitration. (Marks-Dias Decl. ¶ 19; Ex. 10.) The AAA is administering his arbitration. (Marks-Dias Decl. ¶ 20; Ex. 11.) Mason has represented that it will seek an order of the arbitrator requiring Valve to repay the case management fees that Mason will advance in Defendant's arbitration. (Marks-Dias Decl. ¶ 19.)

On February 3, 2026, Valve objected to the AAA's administration of Defendant's arbitration because the Current SSA—to which Defendant agreed—does not include an arbitration agreement. (Marks-Dias Decl. ¶ 21; Ex. 12.) On February 6, 2026, the AAA declined to resolve Valve's objection and advised that it would proceed with the appointment of a merits arbitrator to hear Defendant's claim. (Marks-Dias Decl. ¶ 22; Ex. 13.)

### F.    Valve Files This Action and the AAA Places Defendant's Arbitration in Abeyance for 90 Days

On February 27, 2026, Valve commenced this action by filing a Complaint to enjoin Defendant's arbitration.

Also on February 27, 2026, Valve notified the AAA that Valve filed this action to enjoin Defendant's arbitration. (Marks-Dias Decl. ¶ 23; Ex. 14.) On March 10, 2026, the AAA advised the parties that it would hold Defendant's arbitration in abeyance for 90 days in light of the pendency of this action. (Marks-Dias Decl. ¶ 24; Ex. 15.) On April 8, 2026, Defendant filed a motion to dismiss this action. (Dkt. 22.) That filing appears to be a strategic maneuver to delay resolution of this proceeding so that Defendant may seek to lift the stay of his arbitration before this Court rules on the merits.

## III.    <u>THE MOTION FOR PRELIMINARY INJUNCTION SHOULD BE GRANTED</u>

A party is entitled to a preliminary injunction where it shows "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit applies a "sliding scale" approach to preliminary injunctions: "the elements of the preliminary injunction test are balanced, so that a stronger showing of

MOTION FOR PRELIMINARY INJUNCTION - 8

one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 738 (9th Cir. 2014) (applying these standards to motion to enjoin arbitration); *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001) (same).

In particular, a court "has the authority to enjoin arbitration proceedings where there is no valid, enforceable arbitration agreement between the parties." *Morgan Stanley & Co. v. Couch*, 134 F. Supp. 3d 1215, 1234 (E.D. Cal. 2015), *aff'd*, 659 F. App'x 402 (9th Cir. 2016); *see also Oppenheimer & Co. v. Mitchell*, 2023 WL 2428404, at *6-7 (W.D. Wash. Mar. 9, 2023) (granting motion for preliminary injunction enjoining arbitrations where movant showed that the parties had no agreement to arbitrate). "Given that federal courts sometimes must determine whether a party has a right to arbitration (*e.g.*, in the context of a motion to compel arbitration), it follows that the federal judiciary may enjoin arbitration if necessary to enforce its orders." *Morgan Stanley*, 134 F. Supp. 3d at 1233 (discussing *Goldman*, 747 F.3d at 735). "[T]he Ninth Circuit has indicated that . . . [t]he opposing party need not wait until the initiating party moves in federal court to compel the opposing party's participation in the arbitration." *Id.*

As demonstrated below, a preliminary injunction is warranted here because (i) Valve is likely to succeed on the merits of its claim that it is not required to arbitrate; (ii) Valve is suffering irreparable harm and will continue to suffer immediate irreparable harm if forced to arbitrate without an agreement to do so; (iii) the equities weigh in Valve's favor; and (iv) the public interest favors an injunction where the parties have not agreed to arbitrate.

### A. Valve Is Likely To Succeed On The Merits: The Parties Have No Agreement To Arbitrate

#### 1. Supreme Court Authority Requires That This Court Decide Which Agreement Is Controlling

As an initial matter, the Federal Arbitration Act ("FAA") "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "Given that arbitration agreements are simply contracts, the first principle that underscores all arbitration

MOTION FOR PRELIMINARY INJUNCTION - 9

decisions is that arbitration is strictly a matter of consent." *Coinbase*, 602 U.S. at 148 (quoting *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019)). Under the FAA, the court must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Johnson v. Walmart Inc.*, 57 F.4th 677, 680 (9th Cir. 2023). Accordingly, whether the Current or Superseded SSA governs is a question exclusively for this Court—not the arbitrators—to decide.

In *Coinbase*, the parties disagreed as to which of two agreements applied to individuals' claims. The first agreement contained a clause delegating disputes as to arbitrability to an arbitrator. The second agreement contained a forum selection clause providing that all such disputes must be decided by a court. Because the parties disputed which agreement applied, they also disputed whether arbitrability was for an arbitrator or a court to decide. *Coinbase*, 602 U.S. at 145.

The Court unanimously held that "a court, not an arbitrator, must decide whether the parties' first agreement was superseded by their second." *Coinbase*, 602 U.S. at 152. The Court explained:

> Arbitration is a matter of contract and consent, and we have long held that disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes. Here, then, before either the delegation provision or the forum selection clause can be enforced, a court needs to decide what the parties have agreed to—*i.e.*, which contract controls.

*Id.* at 145; *accord Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 291 (S.D.N.Y. 2025) (applying *Coinbase*; "a court must decide which contract governs" where superseded and an updated terms of use agreement "contain conflicting forum-selection clauses on the issue of arbitrability"); *Williams v. Experian Info. Sols. Inc.*, 2024 WL 3876171, at *16 (D. Ariz. Aug. 20, 2024) ("delegation clause in the [prior] [a]rbitration [a]greement does not preclude the Court from determining whether that version of the arbitration agreement was later superseded by the [new] [a]rbitration [a]greement").

Here, as in *Coinbase*, only this Court may decide which is the controlling agreement: the Superseded SSA or the Current SSA.

### 2. The Current SSA Is Valid And Fully Enforceable As To Defendant

The Current SSA is valid and enforceable as to Defendant. Parties to existing contracts may freely agree to new agreements that become binding "if the offeree's actions clearly evince acceptance

MOTION FOR PRELIMINARY INJUNCTION - 10

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

of the offeror's modifications." *United Fin. Cas. Co. v. Coleman*, 173 Wash. App. 463, 473 (2012). For online transactions, "mutual assent turns on whether the consumer had reasonable notice of the terms of service agreement." *Grant v. T-Mobile USA, Inc.*, 2024 WL 3510937, at *3 (W.D. Wash. July 23, 2024). If "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* at *4. "[E]mails followed by continued use is [also] sufficient to establish assent." *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023); *see also Tile*, 2026 WL 594859, at *4 (plaintiffs "unambiguously manifested assent" to the updated terms "through their continued use" of the defendants' app). All of that has been established beyond dispute here.

(a)    <u>Valve Properly Provided Steam Users With Conspicuous And Repeated Notice Of The Current SSA</u>

Valve provided conspicuous notice of the terms of the Current SSA to all users in ways commonly used across industries to provide user notice of such changes. For notice to be "reasonably conspicuous," it must be "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Grant*, 2024 WL 3510937, at *4. "The presence of a hyperlink must be readily apparent, customarily by us[ing] of a contrasting font color (typically blue)." *Open Book Theatre Co. v. Brown Paper Tickets, LLC*, 749 F. Supp. 3d 1076, 1082 (S.D. Cal. 2024). Updates to dispute resolution agreements are sufficiently conspicuous when they are specifically called out and not buried or difficult to discern. *Sadlock*, 2023 WL 4869245, at *12. Valve's notice to Steam users more than met those requirements:

- **Electronic Mail.** Beginning on September 26, 2024, Valve provided email notice to all U.S. customers (including Defendant) of the change in Valve's SSA, sending the notice to the email address of record for their Steam accounts. The email, only two paragraphs long and hyperlinking in blue to the updated Steam Subscriber Agreement, specifically called out changes to the dispute resolution provision, providing: "[t]he updated dispute resolution provisions are in Section 10 and require all claims and disputes to proceed in

MOTION FOR PRELIMINARY INJUNCTION - 11

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

court and not in arbitration." (Lynch Decl. ¶ 8.) The email also provided: "[T]he updated [SSA] will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then." (*Id.*)

- **Blog Post.** Beginning on September 26, 2024, Valve published a blog post on Steam providing notice of the amended SSA. The blog post, again hyperlinking in blue to the Current SSA, stated: "We've eliminated the requirement that disputes be resolved by individual arbitration." (*Id.* ¶ 10.) Instead, if informal resolution did not resolve a dispute, "the updated SSA now provides that any disputes are to go forward in court instead of arbitration." (*Id.*)

- **Steam Website.** The Current SSA has been available online from September 26, 2024, to the present, in 10 languages. (*Id.* ¶ 6; *see* https://store.steampowered.com/subscriber_agreement/.)

When users clicked on the hyperlinks in any of the various notices or visited the SSA page on the Steam website, they saw a banner at the top of the Current SSA, set apart in a box outlined in red, prominently announcing: "Valve has updated the Steam Subscriber Agreement. The updates affect your legal rights, including how disputes and claims between you and Valve are resolved. Among other things, the new dispute resolution provisions in Section 10 require that all disputes and claims proceed in court and not in arbitration. Please review carefully." (Lynch Decl. ¶ 7.)

Those notices were consistent with the modification requirements set out in the Superseded SSA. The Superseded SSA provided: "This Agreement may at any time be mutually amended by your explicit consent to changes proposed by Valve." (Ex. A § 8(A).) Valve's email notice explained, "This updated Steam Subscriber Agreement will become effective immediately when you agree to it, including when you make most purchases, fund your Steam wallet, or otherwise accept it." (Lynch Decl. ¶ 8.)

The Superseded SSA also provided for amendment through notice followed by continued use:

> Valve may amend this Agreement . . . unilaterally at any time in its sole discretion. In this case, you will be notified by e-mail of any amendment to this Agreement made by Valve at least 30 (30) days before the effective date of the amendment. You can view the Agreement at any time at

MOTION FOR PRELIMINARY INJUNCTION - 12

http://www.steampowered.com/. Your failure to cancel your Account prior to the effective date of the amendment will constitute your acceptance of the amended terms.

(Ex. A § 8(B).) That SSA went on to explain that if the user did not agree to the updated SSA, he or she could cancel his or her Steam account or cease using the service. (*Id.*) Consistent with these terms, the email notice provided: "[T]he updated [SSA] will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then." (Lynch Decl. ¶ 8.) Individually and collectively, the notices Valve provided to Defendant were more than reasonably conspicuous and made it clear that the arbitration provision and class action waiver were being removed.

(b)       Defendant Agreed To The Current SSA

Users manifest assent if they continue to use a service after receiving notice of updated terms. *See, e.g.*, *Pilon*, 769 F. Supp. 3d at 289-90 (claimant assented where he "continued to subscribe to and use [service]" after receiving notice of updated agreement); *Sadlock*, 2023 WL 4869245, at *12 ("[E]mails followed by continued use is sufficient to establish assent."); *Dlugolecki v. PeopleConnect, Inc.*, 2020 WL 13587803, at *2 (C.D. Cal. Nov. 9, 2020) (users manifested assent by continuing to use an online service where they received email notice that "continued use" would "constitute your acceptance of all changes"); *West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sep. 5, 2018) ("Courts have found that when consumers receive emails such as this one, continued use of the service or product constitutes assent to the updated terms.").

The Ninth Circuit's recent decision in *Tile* illustrates the point. There, consumer plaintiffs filed a putative class action, contending that their claims against the defendants were not arbitrable under the defendants' terms of service. The defendants thereafter updated their terms to change the forum for disputes[4] and to clarify that questions of arbitrability were for the arbitrator. The court enforced those updated terms with respect to the plaintiffs' pending claims. *See Tile*, 2026 WL 594859, at *1-5

---

[4] The earlier arbitration agreements required all disputes to be arbitrated before the American Arbitration Association; the updated arbitration agreement required disputes to be arbitrated before JAMS for disputes in North America. *See* Declaration of Steve Klinkner, Ex. B § 25.C, Ex. E § XVII.B, Ex. I at 23, *Ireland-Gordy v. Tile, Inc.*, No. 3:23-cv-04119-RFL, Dkt. No. 34.

MOTION FOR PRELIMINARY INJUNCTION - 13

(enforcing agreement updated in October 2023); *see generally* Complaint, *Ireland-Gordy v. Tile, Inc.*, No. 23-cv-04119-RFL (N.D. Cal. filed Aug. 14, 2023). The Ninth Circuit held that the plaintiffs had received notice of the updated terms through an email notice, rejecting their contentions that such notice was insufficient because they did not read the emails. *See Tile*, 2026 WL 594859, at *3-4. That court further held that the plaintiffs "unambiguously manifested assent" to the updated terms by "using" the defendants' app. *Id.* at *4. The court thus enforced the updated agreement.

The decision in *Goggins v. Amazon.com Inc.*, 2025 WL 2782872 (W.D. Wash. Sep. 30, 2025) (Whitehead, J.), is similarly instructive. In *Goggins*, the plaintiff agreed to an "Advantage Agreement" with Amazon, which originally included a provision requiring that all disputes be resolved in court. *Id.* at *2. The agreement authorized Amazon to change any of its terms by posting a change notice or new agreement on its website, with continued membership constituting acceptance. *Id.* at *3. Four years later, Amazon amended the Advantage Agreement to include an arbitration provision. *Id.* Amazon notified the plaintiff of that amendment by posting a "News" item on top of his Advantage homepage for one month which noted that Amazon had "changed the dispute resolution mechanism to arbitration" and "[y]our continued membership in Advantage after the posting of these changes constitutes your acceptance of the changes." *Id.* The plaintiff then accessed the Advantage homepage numerous times. *Id.* The plaintiff argued that the notice was inadequate. *Id.* at *6. This Court rejected that challenge because (i) "Amazon notified [the plaintiff] of the modification in **precisely the manner to which [the plaintiff] assented in the Original Advantage Agreement**" and (ii) the plaintiff accessed the Advantage homepage numerous times and "[a]t no point then—or since—did [the plaintiff] discontinue membership in the Advantage program." *Id.* Thus, this Court granted Amazon's motion to compel arbitration under the updated terms. *Id.* at *10.

Here, Valve's email notice informed Defendant, consistent with the terms of the Superseded SSA, that the Current SSA would become effective November 1, 2024, unless he deleted or discontinued use of his account. (Lynch Decl. ¶ 8.) On or around September 26, 2024, Valve provided Defendant the email notice at the email address provided to Steam when his account was opened. (*Id.* ¶ 14.)

MOTION FOR PRELIMINARY INJUNCTION - 14

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

On September 27, 2024, Valve also notified Defendant's counsel, Mason and Vorys, that it had "removed the arbitration agreement from the SSA" in light of the arbitrator's rulings that it was unenforceable and the putative *Elliott* class action on behalf of Steam purchasers nationwide, including Defendant and the thousands of other claimants Mason and Vorys purported to represent. (Marks-Dias Decl. ¶ 10; Ex. 1 at 2.) Valve also informed the firms that it would reimburse their clients' filing fees in connection with the arbitrations. (*Id.*)

Defendant did not delete or discontinue use of his Steam account by November 1, 2024. (Lynch Decl. ¶ 15.) To the contrary, Defendant logged into his account on December 11, 2025, more than a year after the Current SSA went into effect on November 1, 2024. (*Id.* ¶ 16.) He also interacted with Steam through the Steam mobile app on March 2, 2026. (*Id.* ¶ 17.)

To be sure, under the Superseded SSA's amendment framework, Defendant *could have* rejected the Current SSA, kept his account, *and* retained his licenses to play games, provided he ceased using his account while arbitrating under the Superseded SSA. (Ex. A § 2(A).) For example, Ryan Lally, another Steam user asserting claims against Valve, did not log onto his Steam account after the Current SSA was adopted and had not otherwise accepted the Current SSA. Accordingly, Valve agreed to proceed with Lally's arbitration under the Superseded SSA. (Marks-Dias Decl. ¶ 11; Ex. 2 at 5.) Defendant's option to temporarily suspend playing video games via Steam until his arbitration was resolved was a genuine choice: "for nonessential activities, the consumer always has the option of forgoing the activity." *Bassett v. Elec. Arts Inc.*, 2015 WL 1298644, at *11 (E.D.N.Y. Feb. 9, 2015) (video games "are nonessential recreational activities" and "a term cannot be so unconscionable as to invalidate a contract when the contract at issue concerns a nonessential recreational activity"), *report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015); *Bauer v. Atlantis Events, Inc.*, 2014 WL 12603112, at *3 (C.D. Cal. Mar. 5, 2014) (cruise cancellation policy was not unconscionable since plaintiffs could have forgone the cruise or "booked another type of vacation"), *aff'd*, 645 F. App'x 545 (9th Cir. 2016); *Adkins v. Facebook, Inc.*, 2019 WL 3767455, at *2 (N.D. Cal. Aug. 9, 2019) (Facebook's social media service "is not one of life's necessities" which is "fatal to finding oppression here").

MOTION FOR PRELIMINARY INJUNCTION - 15

### 3. Under The Current SSA, Disputes Between Defendant And Valve Must Be Resolved In Court

Valve is likely to prevail on its claim that, under the Current SSA, the parties no longer have any agreement to arbitrate. A dispute resolution provision in an updated agreement is enforceable with respect to accrued and already-asserted claims so long as the provision provides for that. For example, in *SCPS LLC v. Kind Law*, 2026 WL 96898 (C.D. Cal. Jan. 8, 2026), the agreement that the parties had in place when the claimants submitted their notices of dispute provided that the parties must arbitrate disputes before the AAA. *Id.* at *2. The updated agreement to which claimants agreed after they submitted their notices of dispute provided that the parties must arbitrate disputes before ADR Chambers. *Id.* The court enforced the updated agreement and ordered the claimants to arbitrate before ADR Chambers because (i) the claimants had received notice of the updated agreement and assented to it and (ii) the updated agreement by its terms applied to already accrued, pending claims. *Id.* at *9-10.

Similarly, in *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014), the Eleventh Circuit concluded that a new agreement without an arbitration clause superseded and applied retroactively to foreclose arbitration under a prior agreement containing an arbitration clause. *Id.* at 1127. Although the claim was originally asserted when the agreement had an arbitration clause, the court reasoned that the parties "expressed their clear and definite intent to execute [the new agreement] to supersede [the prior agreement]," and that intent controlled. *Id.* at 1117. The court rejected the argument that "there is . . . no statutory authorization permitting parties to *remove* from arbitration an existing controversy." *Id.* at 1125. The court reasoned that, because "arbitration is simply a matter of contract," courts "should simply enforce the parties' agreements, whether that means adding a retroactively applicable arbitration provision *or* removing it." *Id.*

In *Majidi-Ahy v. ClassPass, Inc.*, 2026 WL 585465 (C.D. Cal. Feb. 11, 2026), the court enforced an updated arbitration agreement that changed the arbitral forum for disputes with respect to "ANY AND ALL DISPUTES . . . WHETHER PRESENTLY IN EXISTENCE OR BASED ON ACTS OR OMISSIONS IN THE PAST OR IN THE FUTURE." *Id.* at *6-9. The plaintiff argued that the updated arbitration agreement was unenforceable because the agreement purportedly "allow[ed] one party to

MOTION FOR PRELIMINARY INJUNCTION - 16

unilaterally modify it retroactively" to "already-accrued claims," thus violating the implied covenant of good faith and fair dealing. *Id.* at \*7. The court rejected this argument because the updated terms "were adopted by bilateral agreement" of the parties where the plaintiff (i) received notice of the update through an in-platform pop-up and an email notice and (ii) affirmatively assented to the terms by "clicking the 'I accept' button on the pop-up and her continued use of [the defendants'] services." *Id.* at \*6-8. Accordingly, the court held that cases applying the implied covenant of good faith and fair dealing were inapposite. *Id.* at \*8. The court further explained that "the Ninth Circuit consistently upholds the enforceability of the retroactivity of arbitration clauses." *Id.*

Likewise, in *Pilon*, a district court denied a motion to compel arbitration under a superseded arbitration agreement because the petitioner (i) unambiguously assented to a new agreement that changed the arbitration forum and (ii) had inquiry notice of the retroactive arbitration provisions. 769 F. Supp. 3d at 286-90, 294-98. The court enforced the new agreement even though the claims accrued and were noticed before the parties entered into the new agreement. *Id.* at 283.

In short, courts consistently apply amended dispute resolution provisions to pending claims when the agreement plainly articulates that intent. *See, e.g.*, *Saucedo v. Experian Info. Sols., Inc.*, 2023 WL 4708015 at \*6 (E.D. Cal. July 24, 2023) (enforcing arbitration agreement entered into after suit filed); *Ingram Micro Inc. v. Signeo Int'l, Ltd.*, 2014 WL 3721197, at \*3 (C.D. Cal. July 22, 2014) (enjoining arbitration "because subsequent agreements both superseded the 2011 Program Agreement, the only contract containing an arbitration provision, and extinguished any claims arising from the 2011 Program Agreement"); *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2021 WL 2350814, at \*4 (C.D. Cal. Apr. 20, 2021) (enforcing agreement revised two years after suit filed); *Enderlin v. XM Satellite Radio Holdings, Inc.*, 2008 WL 830262, at \*7 (E.D. Ark. Mar. 25, 2008) (collecting cases applying amended agreements to on-going litigation); *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 577 (W.D.N.C. 2000) (compelling individual arbitration based on terms of provision that had been revised to add a class waiver after the commencement of litigation and holding that new agreement applies where "[t]he agreement clearly provides for retroactive effect").

MOTION FOR PRELIMINARY INJUNCTION - 17

Here, the Current SSA applies to "all disputes and claims between [the user] and Valve (including any dispute or claim that arose before the existence of this or any prior agreement)." (Ex. B § 10.) It also provides: "This Agreement . . . constitutes and contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior oral or written agreements." (*Id.* § 11.) It specifically states: "If you were a Subscriber before [September 26, 2024], [this Agreement] replaces and supersedes your existing agreement with Valve." (*Id.*) Therefore, on December 17, 2025, by the time Defendant notified the AAA that he had "elected to move forward with his arbitration claim against Valve," he had already agreed to the Current SSA, that it would replace and supersede the agreement to arbitrate, and that it would apply to his existing claims. (Marks-Dias Decl. ¶19; Ex. 10.)

The parties therefore no longer have any agreement to arbitrate. As "[a]rbitration is a matter of contract and consent, and . . . disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes," Valve has no obligation to arbitrate, Defendant has no right to arbitrate, and the arbitrators have no authority to continue arbitration proceedings. *Coinbase*, 602 U.S. at 145.

### B.    Valve Will Face Irreparable Harm If Forced To Arbitrate

If Valve is not granted injunctive relief and must continue arbitrating, Valve will face irreparable injury. A party is "irreparably injured if it is forced to arbitrate when it does not have to." *Oppenheimer*, 2023 WL 2428404, at *6. Indeed, "forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes per se irreparable harm." *Id.* (quoting *Morgan Keegan & Co. v. McPoland*, 829 F. Supp. 2d 1031, 1036 (W.D. Wash. 2011)); *see also*, *e.g.*, *LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distrib., Teamsters Loc. 63*, 849 F.2d 1236, 1241 n.3 (9th Cir. 1988) (plaintiff "was entitled to injunctive relief once it established that it was no longer under a contractual duty to arbitrate" without an additional showing of irreparable harm); *Morgan Stanley*, 134 F. Supp. 3d at 1235 ("[M]ost, if not all courts hold that being required to arbitrate a dispute the parties did not agree to arbitrate is *per se* irreparable harm.").

Although "[t]ypically, monetary harm does not constitute irreparable harm," "time and resources spent in arbitration constitute irreparable harm where neither the arbitration agreement nor the

MOTION FOR PRELIMINARY INJUNCTION - 18

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Arbitration Act allows for monetary awards of attorneys' fees and costs." *Oppenheimer*, 2023 WL 2428404, at \*6; *see also Res. Grp. Int'l Ltd. v. Chishti*, 91 F.4th 107, 115 (2d Cir. 2024) ("forced arbitration of inarbitrable claims may constitute irreparable harm when . . . 'the time and resources . . . expend[ed] in arbitration is not compensable by any monetary award of attorneys' fees or damages"); *Morgan Keegan*, 829 F. Supp. 2d at 1036 ("A party resisting arbitration suffers irreparable harm when it is forced to expend time and resources arbitrating an issue that is not arbitrable."); *Edward E. Gillen Co. v. Ins. Co. of the State of Pa.*, 747 F. Supp. 2d 1058, 1062 (E.D. Wis. 2010) ("Numerous cases hold that a party forced into an unauthorized arbitration proceeding is irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable.").

Here, if immediate injunctive relief is not granted, Valve will be forced to arbitrate a dispute that Valve and Defendant did not agree to arbitrate, and any award will be subject to vacatur on the ground that the arbitration proceeding was *ultra vires*. Valve has tried to avoid this harm by requesting that the AAA close Defendant's arbitration administratively for lack of jurisdiction. (Marks-Dias Decl. ¶ 21; Ex. 12.) But the AAA will not address the request and instead intends to appoint a merits arbitrator. (*Id.* ¶ 22; Ex. 13.) Although the AAA has placed Defendants' arbitration in abeyance in light of this action, that stay by its terms is for just 90 days. (*Id.* ¶ 24; Ex. 14.)

An arbitrator cannot decide the parties' dispute over whether the Superseded SSA or the Current SSA governs Defendant's arbitration. As *Coinbase* makes clear, only a court can make that determination. *Coinbase*, 602 U.S. at 152 ("[A] court, not an arbitrator, must decide whether the parties' first agreement was superseded by their second"). The time and expense Valve will incur in arbitrating this dispute will be substantial. Valve will incur significant AAA and legal fees and devote substantial employee time to preparing for and attending arbitration hearings under a reservation of rights because there is no agreement to arbitrate.

## C.    The Relative Interests of the Parties Favor An Injunction

The relative interests of the parties support an injunction.

*First*, "[f]orcing a party to engage in arbitration where that party is not bound to arbitrate serves

MOTION FOR PRELIMINARY INJUNCTION - 19

no equitable purpose." *Oppenheimer*, 2023 WL 2428404, at *6. Likewise, a party receives no "countervailing benefit . . . from proceeding with an arbitration when the award, if any, is so likely to be vacated." *Morgan Keegan*, 829 F. Supp. 2d at 1036. Because the parties have not agreed to arbitrate, there is no equitable reason to allow the arbitration to continue.

*Second*, Defendant will suffer no prejudice from an injunction. When an arbitrating party can also seek relief in court, any prejudice from an injunction is limited. *See AT&T Mobility LLC v. Bernardi*, 2011 WL 5079549, at *12 (N.D. Cal. Oct. 26, 2011) (enjoining mass arbitration when regulators were reviewing issues raised by arbitration and injunction "does not leave the Customers completely without recourse"); *AT & T Mobility LLC v. Smith*, 2011 WL 5924460, at *9 (E.D. Pa. Oct. 7, 2011) (enjoining arbitration when parallel lawsuit "may very well result in the precise relief [the defendant] demands"); *Morgan Stanley*, 134 F. Supp. 3d at 1236 (finding equities balance in favor of injunction when defendant could still pursue an appeal of a summary judgment order). Even "[a]ssuming the Court's ruling granting the injunction is erroneous, [Defendant's] ability to arbitrate this dispute would only be delayed, not precluded." *COR Clearing, LLC v. LoBue*, 2016 WL 9088704, at *4 (C.D. Cal. June 16, 2016); *accord Monavie, LLC v. Quixtar Inc.*, 741 F. Supp. 2d 1227, 1242 (D. Utah 2009) ("If the [] Plaintiffs ultimately prevail on the issue of arbitrability, [Defendant] will have lost no bargained-for contractual rights to arbitration because it had none. If [Defendant] ultimately prevails on that issue, the preliminary injunction will be dissolved, and [Defendant] may proceed to exercise those rights.").

Defendant will suffer no prejudice from an injunction because he may pursue his claims in court. There is already a putative class action in this Court, *Wolfire* (which was filed in 2021, well before Mason filed its arbitrations), asserting overlapping claims purportedly on behalf of a putative nationwide class that would include Defendant, although Valve contends that no class could be certified. In any event, under the Current SSA, any Steam user can file his or her own individual claim in court. (Ex. B § 10.)

### D.    The Public Interest Favors An Injunction

Public interest also favors an injunction. "There is no public interest in compelling [the party

MOTION FOR PRELIMINARY INJUNCTION - 20

seeking an injunction] to arbitrate if it does not have to." *Oppenheimer*, 2023 WL 2428404, at *7; *COR Clearing*, 2016 WL 9088704, at *5 ("public interest weighs in favor of enjoining" the arbitration because "[a]llowing an arbitration to proceed without an agreement to arbitrate does not serve the public interest"); *Koman v. Weingarten/Invs., Inc.*, 2010 WL 3717312, at *10 (S.D. Tex. Sep. 17, 2010) (there is "a strong public policy against holding an individual to a contract to which he or she did not agree"; "because [the plaintiff] has shown that he did not agree to arbitrate arbitrability, he will suffer irreparable harm if required to do so."). Likewise, "[n]either the public interest nor the interest of judicial economy would be served by allowing the arbitration to proceed, when such arbitration could lead to further proceedings in this Court to vacate an award." *Morgan Keegan*, 829 F. Supp. 2d at 1037.

### E. The Court Should Not Require A Bond

No bond is necessary because Defendant cannot identify any "costs or damages that [he] will incur by having the arbitration[] delayed as to [his] claims." *Oppenheimer*, 2023 WL 2428404, at *7 (enjoining arbitrations without requiring bond); *accord Morgan Keegan*, 829 F. Supp. 2d at 1037 (same); *see also Morgan Stanley*, 134 F. Supp. 3d at 1237 (enjoining arbitrations without ordering bond); *accord Edward E. Gillen Co.*, 747 F. Supp. 2d at 1062 (bond unnecessary where "the only potential harm to [party] is a delay in pursuing arbitration while the issue is litigated here in federal court").

## IV. CONCLUSION

For these reasons, Valve requests that this Court enter a preliminary injunction enjoining Defendant's arbitration.

MOTION FOR PRELIMINARY INJUNCTION - 21

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

DATED: April 29, 2026

I certify that this memorandum contains 7,899 words, in compliance with the Local Civil Rules.

s/ Blake Marks-Dias
Blake Marks-Dias, WSBA No. 28169
CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Plaintiff Valve Corporation*

MOTION FOR PRELIMINARY INJUNCTION - 22