# EXHIBIT 1

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001
———
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
212-735-3529
DIRECT FAX
917-777-3529
EMAIL ADDRESS
MICHAEL.MCTIGUE@SKADDEN.COM

September 27, 2024

**VIA ELECTRONIC MAIL**

Gary E. Mason
Mason, LLP
5335 Wisconsin Avenue NorthWest
Suite 640
Washington, DC 20016
gmason@masonllp.com

Danielle L. Perry
Mason, LLP
5335 Wisconsin Avenue NorthWest
Suite 640
Washington, DC 20016
dperry@masonllp.com

Douglas Matthews
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, OH 43215
drmatthews@vorys.com

Timothy B. McGranor
Vorys, Sater, Seymour and Pease LLP
52 E. Gay Street
Columbus, OH 43210
tbmcgranor@vorys.com

RE:    *Individual Claimants v. Valve Corporation*, Case No. 01-23-0005-8758

Dear Counsel:

Valve remains committed to trying to resolve your clients' claims, whether during the upcoming mediation or otherwise. We write to inform you that Valve has updated the Steam

Subscriber Agreement ("SSA") after an arbitrator ruled that the arbitration agreement in the prior SSA was unenforceable.

In addition, on August 9, 2024, a putative nationwide class action was filed against Valve. *Elliott v. Valve Corporation*, No. 2:24-cv-01218 (W.D. Wash. filed Aug. 9, 2024). Citing the arbitrator rulings, the plaintiffs in that action assert that the arbitration agreement in the superseded SSA is unenforceable as to all members of a nationwide putative class of Steam purchasers, including all of the claimants in these arbitrations. *Elliott* Complaint ¶ 14.

Accordingly, Valve has now removed the arbitration agreement from the SSA. The updated SSA provides:

> All disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction. You and Valve hereby consent to the exclusive jurisdiction of such courts and waive any objections as to personal jurisdiction or venue in such courts.

Valve will reimburse the filing fees paid in connection with these arbitrations. Please send us a copy of the applicable AAA filing fee invoices paid together with payment instructions and any necessary completed W-9 form(s) so that we may promptly arrange reimbursement.

Sincerely,

/s/ *Michael W. McTigue Jr.*

Michael W. McTigue Jr.

2

# EXHIBIT 2

The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE VALVE ANTITRUST LITIGATION

No. 2:21-CV-00563-JNW

**DEFENDANT VALVE CORPORATION'S OPPOSITION TO PLAINTIFF RYAN LALLY'S MOTION FOR SANCTIONS**

NOTE ON MOTION CALENDAR:
JULY 2, 2025

OPPOSITION TO PLAINTIFF RYAN LALLY'S
MOTION FOR SANCTIONS
(No. 2:21-CV-00563-JNW)

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ....................................................................................1

II.   FACTUAL BACKGROUND ........................................................................................2

    A.    Lally and Six Other Consumers Sued Valve; Judge Coughenour
Compelled Those Plaintiffs to Arbitrate ...........................................................2

    B.    Two Years Later, Lally's Counsel Brought a Mass Arbitration Against
Valve That Included Lally's Demand .................................................................3

    C.    An Arbitrator Ruled That Valve's Arbitration Provision Was
Unenforceable ...................................................................................................3

    D.    Valve Removed the Arbitration Provision; All Consumer Plaintiffs Except
Lally Moved to Lift the Stay .............................................................................3

    E.    The AAA Invoiced Valve $20.8 Million for the 14,911 Arbitration
Demands Brought by Lally's Counsel; Valve Declined to Pay Those Fees
and the AAA Suspended the Arbitrations ..........................................................4

    F.    Lally Apparently Quit Using Steam Before the SSA Was Amended and
Did Not Agree to the Current SSA .....................................................................5

III.  ARGUMENT ..............................................................................................................5

    A.    Lally Is Entitled to No Relief Personally and Has No Standing to Seek
Relief on Behalf of 14,910 Other People ...........................................................5

        1.    Lally Is Not Entitled to Relief Because Valve Has Agreed to
Arbitrate His Individual Claim                                                                    6

        2.    Lally Has No Standing to Seek Relief on Behalf of 14,910 Other
People                                                                                                       7

    B.    The 14,910 Strangers to This Action Have No Right to Arbitrate .........................8

    C.    Valve's Refusal to Pay $20.8 Million in Fees Did Not Violate Judge
Coughenour's Order Compelling Arbitration ....................................................10

    D.    Valve's Update to the Steam Subscriber Agreement Is Not Sanctionable ............11

    E.    Valve Has Not Violated Rule 11 ......................................................................11

    F.    Valve Has Not Committed Criminal Contempt ..................................................12

IV.   CONCLUSION ..........................................................................................................12

OPPOSITION TO PLAINTIFF RYAN LALLY'S
MOTION FOR SANCTIONS – i
(No. 2:21-CV-00563-JNW)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I.    PRELIMINARY STATEMENT

Plaintiff Ryan Lally has no basis to seek sanctions on his own behalf and no standing to seek relief on behalf of 14,910 other strangers to this action. His motion for sanctions should be denied.

**Lally Has No Grounds To Seek Relief on His Own Behalf.** Lally moves for relief on his own behalf on the purported ground that Valve has refused to arbitrate with him. Valve has not refused to arbitrate—this disguised motion to compel arbitration has no merit. Valve has expressly agreed to proceed with Lally's arbitration before the American Arbitration Association ("AAA"). Valve asked the AAA to issue an invoice for Lally's individual case and committed to pay the invoice promptly upon receipt.[1] But Lally's counsel told the AAA "Valve's request for AAA to reissue an invoice for Claimant Ryan Lally should be denied." The AAA acquiesced and declined to issue the invoice. Lally has an arbitration pending before the AAA, and Lally may proceed with his case at any time. Accordingly, Lally has no basis to seek relief on his own behalf.

Lally's newfound insistence on arbitration also comes as a surprise to Valve because it is contrary to the positions Lally took in this Court. In 2021, after Valve moved to compel Lally's claim to arbitration under the Superseded SSA, Lally and his six consumer co-plaintiffs argued that Valve's now-superseded arbitration agreement was unconscionable, unenforceable, and "would deny" them "the ability to seek and obtain the statutory relief available to [them]." In granting Valve's motion, Judge Coughenour ruled that the arguments on enforceability could only be decided in arbitration. In 2024, an arbitrator in four other arbitrations (not involving Lally) held that the arbitration agreement was unenforceable. On August 9, 2024, those four individuals filed a putative class action in this Court asserting antitrust claims on behalf of a nationwide class—including Lally—in a complaint that was a near carbon-copy of Lally's complaint in this action.

---

[1] Valve agreed to arbitrate because Lally's facts are unusual: based on Valve's records, it does not appear that Lally accepted Valve's current Steam Subscriber Agreement which requires all claims—including accrued and pending claims—to proceed in court. Valve's now-superseded Steam Subscriber Agreement (the "Superseded SSA") contained an arbitration agreement.

OPPOSITION TO PLAINTIFF RYAN LALLY'S
MOTION FOR SANCTIONS – 1
(No. 2:21-CV-00563-JNW)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

They argued that they had "won binding decisions from arbitrators rendering Valve's arbitration provision unenforceable." Valve then removed from the Steam Subscriber Agreement the arbitration agreement deemed unenforceable. Lally's six consumer co-plaintiffs then requested that this Court lift the stay as to them so they could proceed with their putative class action. Yet Lally, without explanation, changed course. He apparently decided he did **not** want to proceed in Court, so the Court left the stay in place as to him. And Lally has now repudiated the positions he took in his 2021 filings, including that his putative class action was "superior to any other method for the fair and efficient adjudication of this legal dispute." (ECF 34 ¶314.)

**Lally Has No Basis To Seek Relief on Behalf of Thousands of Strangers.** This motion is a gambit by Lally's counsel, Mason LLP, to force Valve to pay $20.8 million in arbitration fees for 14,910 arbitration claimants who are not parties to this action. This attempt should fail for numerous reasons. First, Lally has no standing to seek relief as to these claimants, which should end the inquiry. Beyond that, (i) Lally has not shown that any of these claimants has an arbitration agreement with Valve; (ii) Lally has not pointed to any case that held a party's refusal to pay arbitration fees (particularly those of non-parties) is sanctionable; and (iii) the very arbitration agreement Lally seeks to enforce expressly forecloses any "representative" action or request for representative or relief—precisely what Lally seeks here.

For the foregoing reasons, the Court should deny Lally's motion in its entirety.

## II.    FACTUAL BACKGROUND

### A.    Lally and Six Other Consumers Sued Valve; Judge Coughenour Compelled Those Plaintiffs to Arbitrate

In 2021, a video game developer and seven consumers, including Lally, brought this action against Valve asserting antitrust claims. At that time, the Superseded SSA had an arbitration provision. (ECF 66.) Valve moved to compel the consumer plaintiffs to arbitrate. Lally opposed the motion, arguing that the arbitration agreement was unconscionable, unenforceable, and "would

OPPOSITION TO PLAINTIFF RYAN LALLY'S
MOTION FOR SANCTIONS – 2
(No. 2:21-CV-00563-JNW)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

deny" him "the ability to seek and obtain the statutory relief available to [him]." (ECF 51 at 1-2, 15-16.)

On October 25, 2021, Judge Coughenour compelled arbitration as to Lally and the six other plaintiffs only, concluding that challenges to the enforceability of the arbitration agreement were for an arbitrator to decide. The Court stayed these claims pending arbitration. (ECF No. 66.)

**B.      Two Years Later, Lally's Counsel Brought a Mass Arbitration Against Valve That Included Lally's Demand**

In December 2023, Lally's counsel—Mason LLP ("Mason")—submitted a total of 14,922 substantially identical individual demands for arbitration against Valve with the AAA, of which 14,911 remain, including Lally's arbitration. (ECF 468 ¶6; Declaration of Blake Marks-Dias ("Marks-Dias Declaration") ¶¶7, 11, Exs. 1, 3.) Those demands asserted antitrust claims substantially identical to those asserted here. Mason informed the AAA that the claimants would argue that the arbitration agreement in the Superseded SSA was unenforceable. (Marks-Dias Declaration ¶13, Ex. 5.) Valve paid the $1,866,100 in non-refundable filing fees the AAA required. (ECF 468 ¶7; Marks-Dias Declaration ¶¶10, 12, Exs. 2, 4.) Before the AAA appointed merits arbitrators, Mason and Valve agreed to mediate. (ECF 468 ¶10, 12.)

**C.      An Arbitrator Ruled That Valve's Arbitration Provision Was Unenforceable**

Meanwhile, the AAA appointed merits arbitrators for 624 arbitrations brought by another firm pursuing mass arbitration, Bucher Law PLLC ("Bucher"). Four of those claimants successfully challenged the arbitration provision in the Superseded SSA as unconscionable and unenforceable. (Marks-Dias Declaration ¶14.) Those claimants then commenced a new consumer class action in this Court, *Elliott v. Valve Corp.*, No. 2:24-cv-01218.

**D.      Valve Removed the Arbitration Provision; All Consumer Plaintiffs Except Lally Moved to Lift the Stay**

On September 26, 2024, after the arbitrator's ruling that the arbitration provision in the Superseded SSA was unenforceable, Valve amended the SSA to remove it. The Current SSA now provides:

OPPOSITION TO PLAINTIFF RYAN LALLY'S
MOTION FOR SANCTIONS – 3
(No. 2:21-CV-00563-JNW)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> You and Valve agree that all disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained **exclusively in any state or federal court** located in King County, Washington, having subject matter jurisdiction.

(Marks-Dias Declaration, Ex. 6 § 10 (emphasis added).) The Current SSA includes a merger clause providing that it supersedes and replaces the parties' prior agreement. (*Id.* §11.)

Valve notified users of the amendment through direct email notice, an in-app "pop-up" notification, and on its website. (*Id.*, Ex. 8.) Users could check a box indicating that they accepted the amendment, but the notices also informed users they would accept the amendment if they continued using the Steam platform. (*Id.*) Users were also required to accept the Current SSA before making additional game purchases on Steam after September 26, 2024.

The next day, Valve notified this Court and the AAA that it had withdrawn the arbitration provision. (ECF 362.) Valve reimbursed Mason for the $1,518,325 in AAA filing fees it had paid—a fact Mr. Mason omits from his declaration. (Marks-Dias Declaration ¶19, Ex. 7.) All consumer plaintiffs except Lally moved to lift the stay. (ECF 370.) On December 10, 2024, the Court lifted the stay, except as to Lally. (ECF 395.)

On October 18, 2024, Valve petitioned this Court to enjoin the pending arbitrations of 624 claimants represented by Bucher on the ground that, under the Current SSA, there is no arbitration agreement between the parties. (Marks-Dias Declaration ¶21, Ex. 8 ("*Abbruzzese*").) *Abbruzzese* remains pending.

**E.     The AAA Invoiced Valve $20.8 Million for the 14,911 Arbitration Demands Brought by Lally's Counsel; Valve Declined to Pay Those Fees and the AAA Suspended the Arbitrations**

On February 5, 2025, after the parties' mediation ended unsuccessfully, Mason advised the AAA it wished to proceed with mass arbitrations. (Marks-Dias Declaration ¶25, Ex. 9.) Valve asked the AAA to close the arbitrations because the Current SSA had no arbitration provision. (*Id.* ¶26, Ex. 10.)

OPPOSITION TO PLAINTIFF RYAN LALLY'S
MOTION FOR SANCTIONS – 4
(No. 2:21-CV-00563-JNW)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

The AAA rejected Valve's request to close the arbitrations and instead issued an invoice to Valve for $20,875,400 in arbitrator appointment fees ($1,400 per case) for the 14,911 arbitrations. Lally's single arbitration demand was part of this collective invoice. Valve elected not to pay that invoice because the Current SSA did not permit arbitration, and no arbitrator had jurisdiction to decide that the Superseded SSA should govern instead. On May 15, 2025, the AAA suspended the arbitrations because of Valve's refusal to pay. (ECF 468 ¶17.)

On May 2, 2025, another claimant represented by Mason brought a putative class action in California seeking to compel Valve to pay those arbitrator appointment fees (which duplicates the relief sought on this Motion). (Marks-Dias Declaration ¶30, Ex. 14.) Lally is a member of that putative class. (ECF 34 ¶29; Marks-Dias Declaration, Ex. 14 ¶50.) Valve is opposing that action.

### F. Lally Apparently Quit Using Steam Before the SSA Was Amended and Did Not Agree to the Current SSA

After receiving this Motion, Valve determined that Lally has not logged on to Steam since June 2023 and thus apparently did not agree to the Current SSA. (Marks-Dias Declaration ¶34, Ex. 16.) Out of the 14,911 claimants, Lally was the only one whom Judge Coughenour compelled to arbitrate. Valve informed Lally's counsel and the AAA that it was willing to arbitrate with Lally individually and requested that the AAA issue an invoice for that arbitration. (*Id.* ¶34-35, Exs. 16-17.)

Lally opposed Valve's request and asked the AAA not to issue an individual invoice, making it clear that the point of this Motion is not to pursue his own arbitration, but to force Valve to pay $20.8 million in fees for other claimants. (*Id.* ¶36, Ex. 18.) On June 25, 2025, the AAA informed the parties it would not issue the invoice. (*Id.* ¶37, Ex. 20.)

### III. ARGUMENT

### A. Lally Is Entitled to No Relief Personally and Has No Standing to Seek Relief on Behalf of 14,910 Other People

Lally seeks an order on behalf of himself and 14,910 other claimants, imposing a "deadline for Valve to pay" $20.8 million, with a threat of default and adverse inference sanctions for non-

OPPOSITION TO PLAINTIFF RYAN LALLY'S
MOTION FOR SANCTIONS – 5
(No. 2:21-CV-00563-JNW)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

compliance, and attorneys' fees. (Mot. 11:17-23.) That relief is not a sanction, but an order compelling arbitration on behalf of 14,910 strangers. All but two of the cases Lally cites address motions to compel arbitration under § 4 or for other relief under the FAA, not sanctions, with several of them *denying* motions to compel.[2] In *Frazier v. X Corp.*, 739 F. Supp. 3d 219 (S.D.N.Y. 2024), for example, where no party disputed that an arbitration agreement existed, the court ordered the defendant to pay administrative fees pursuant to § 4 on an "interim" basis until an arbitrator could rule on fee allocation. Lally is not entitled to compel fee payment on behalf of himself or anyone else.

### 1. Lally Is Not Entitled to Relief Because Valve Has Agreed to Arbitrate His Individual Claim

The FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" may petition a federal district court to compel arbitration. 9 U.S.C. § 4. A refusal to arbitrate is "a prerequisite to compelling arbitration under Section 4 of the FAA." *Jacobs v. USA Track & Field*, 374 F.3d 85, 86 (2d Cir. 2004). Where a party attempts to arbitrate, there is no "failure, neglect, or refusal" by which another party could have been "aggrieved." *Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1181 (9th Cir. 2025).

Here, Valve is willing to arbitrate individually with Lally pursuant to the Superseded SSA and pay AAA fees. Lally's circumstances are unusual: he is one of only seven individuals who were compelled to arbitrate by this Court, and the only one of the seven who—despite having once maintained that the relevant arbitration provision was unenforceable—now seeks to enforce it. Moreover, because no one has logged into the Steam account he claims since June 2023, he has apparently not agreed to the Current SSA requiring disputes to be resolved in court.

---

[2] *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 676 (9th Cir. 2024) (denying motion to compel under § 4); *Tillman v. Tillman*, 825 F.3d 1069, 1075 (9th Cir. 2016) (plaintiff unable to pay arbitral fees could proceed in court); *Sink v. Aden Enters., Inc*, 352 F.3d 1197, 1199-1200 (9th Cir. 2023) (denying motion to compel under § 4); *Allemeier v. Zyppah, Inc.*, 2018 WL 6038340, at *4 (C.D. Cal. Sept. 21, 2018) (granting § 4 motion to compel); *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1065-66 (N.D. Cal. 2020) (granting § 4 motion to compel).

OPPOSITION TO PLAINTIFF RYAN LALLY'S
MOTION FOR SANCTIONS – 6
(No. 2:21-CV-00563-JNW)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Accordingly, Valve requested that the AAA issue an invoice for Lally's arbitration, which Valve would have paid had the AAA provided it. Valve has not refused to arbitrate with Lally, and he is entitled to no relief. That should be the end of the matter.

Lally argues that he has "Been Prejudiced by Valve's Delay Tactics" (Mot. 5) but identifies no such tactics, or any reason why any such tactics might justify the extraordinary relief he now seeks:

1)   Lally asserts that he has been denied "access to any forum for redress for over three years," but he waited more than two years to bring his demand after Judge Coughenour directed him to arbitration. (Mot. 5:5, 21.) He also ignores that he— not Valve—chose to bring his arbitration as part of a "mass arbitration," which, as he acknowledges, caused administrative delays. (Mot. 5:5-12.)

2)   Lally also complains that a mediation between the parties took some time, suggesting that "the availability of the preferred mediator and then the fires in California" were somehow part of "Valve's Delay Tactics." (Mot. 5:4-15.) Valve was not responsible for those circumstances.

3)   Lally further suggests that Valve's promulgation of the Current SSA was itself a "Delay Tactic[]." (*Id.* at 5:15-18.) Valve removed the arbitration provision after an arbitrator ruled it unenforceable, not because doing so would impact Lally's arbitration.

**2.      Lally Has No Standing to Seek Relief on Behalf of 14,910 Other People**

In seeking to compel Valve to pay fees for 14,910 other arbitrations claimants, Lally is seeking relief on behalf of third parties for whom he has no standing to act. The arbitration provision in the Superseded SSA Lally invokes forecloses any "CLASS OR REPRESENTATIVE ACTION" and precludes Valve and Lally from "seek[ing] to combine an action . . . with any other action" without all parties' consent. (ECF 35 at 6-7, Boyd Decl., Ex. E.) That agreement forecloses Lally's attempt to seek collective relief here.

OPPOSITION TO PLAINTIFF RYAN LALLY'S
MOTION FOR SANCTIONS – 7
(No. 2:21-CV-00563-JNW)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Further, a party "generally must assert his own legal rights and interests, and cannot rest [a] claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). To seek relief on behalf of a third party, a person must have a "close relationship with the person who possesses the right" and there must be a "'hindrance' to the possessor's ability to protect his own interests." *Id.* at 130. Here, Lally appears to have no relationship, let alone a "close" one, with those 14,910 people who are not before the Court. Likewise, these other claimants are fully capable of protecting their own interests. One of them is already pursuing a putative class action in California seeking the same relief. (Marks-Dias Declaration ¶30, Ex. 14.) Lally is part of that putative class. (ECF 34 ¶29; Marks-Dias Declaration ¶30, Ex. 14 ¶50.)

**B.    The 14,910 Strangers to This Action Have No Right to Arbitrate**

Lally has also not shown that the 14,910 claimants who are not before the Court have any right to arbitrate:

First, Lally has not shown that these claimants are actually Valve's customers; his counsel's unverified statement that those claimants "are Steam subscribers" is insufficient. *See Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 618-19 (7th Cir. 2024) (error to compel arbitration based on counsel's representations as to arbitration rights where no claimant "submitted any declaration or otherwise attested under penalty of perjury to the facts alleged in the arbitration demands."); *Abernathy*, 438 F. Supp. 3d at 1065 (refusing to compel arbitration for claimants who did not submit a sworn declaration attesting that they had an arbitration agreement). Nor is there any evidence that these other claimants are still bound by the Superseded SSA that contains an arbitration provision, as Lally appears to be.

Second, while the Court need not reach the question here,[3] Lally has not shown that the 14,910 claimants are not bound by the Current SSA, which has been in effect for nine months. Lally suggests that the Current SSA is unenforceable,[4] asserting that "[n]umerous courts, including

---

[3] The *Abbruzzese* Petition addresses this question.

[4] As Lally has not agreed to the Current SSA, he has no standing to challenge its enforceability.

OPPOSITION TO PLAINTIFF RYAN LALLY'S
MOTION FOR SANCTIONS – 8
(No. 2:21-CV-00563-JNW)

arbitrators in other arbitration cases against Valve, have held that retroactive application of unilateral change to an arbitration agreement, as applicable to parties with pending arbitrations, is unconscionable and unenforceable." (Mot. 4.) Not so. Courts enforce modified agreements retroactively where there is notice and manifestation of assent. *E.g.*, *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1127 (11th Cir. 2014); *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 294-98 (S.D.N.Y. 2025); *Brooks v. WarnerMedia Direct, LLC*, 2024 WL 3330305, at *17 (S.D.N.Y. July 8, 2024); *McCumbee v. M Pizza, Inc.*, 2023 WL 2725991, at *10 (N.D. W. Va. Mar. 30, 2023); *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2021 WL 2350814, at *4 (C.D. Cal. Apr. 20, 2021); *Laster v. T-Mobile USA, Inc.*, 2008 WL 5216255, at *6 (S.D. Cal. Aug. 11, 2008); *Enderlin v. XM Satellite Radio Holdings, Inc.*, 2008 WL 830262, at *7 (E.D. Ark. Mar. 25, 2008); *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 577 (W.D.N.C. 2000).

The one case Lally cites, *Heckman*, is distinguishable. That court did not conclude that Ticketmaster's arbitration agreement was "unconscionable and unenforceable" just because it applied retroactively. 120 F.4th at 682. It concluded the agreement was procedurally unconscionable because Ticketmaster could unilaterally modify it at any time without prior notice, apply it to previously-purchased tickets, and bind anyone simply visiting the Ticketmaster website—denying them an opportunity to avoid the new terms. *Id.* at 682-83. It was found to be substantively unconscionable because it incorporated rules that were one-sided and convoluted. *Id.* at 683-84. Here, Valve provided 30 days' notice of the Current SSA via multiple channels, and Steam users affirmatively agreed to the Current SSA through checking a box, making a purchase, or continuing to use Steam after receiving notice. (That Lally did none of those shows he is uniquely situated.)

The lone arbitral decision Lally cites was issued by an arbitrator whom the AAA has since disqualified (Valve informed Mason of that). (Marks-Dias Declaration ¶38.) The arbitrator replacing her rejected her analysis and temporarily stayed the arbitrations. (*Id*. ¶40.) Twenty other arbitrators have stayed arbitrations based on the *Abbruzzese* Petition. (*Id*. ¶41.) Arbitrators have

OPPOSITION TO PLAINTIFF RYAN LALLY'S
MOTION FOR SANCTIONS – 9
(No. 2:21-CV-00563-JNW)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

no jurisdiction to decide whether the Current SSA is enforceable. *See Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024).

### C. Valve's Refusal to Pay $20.8 Million in Fees Did Not Violate Judge Coughenour's Order Compelling Arbitration

Lally argues that Valve "disobe[yed]" Judge Coughenour's order compelling arbitration by refusing to pay $20.8 million in AAA fees. (Mot. 11.) That is wrong. Valve's motion to compel Lally to arbitrate had nothing to do with the other 14,910 non-parties to whom Lally has tied himself. Similarly, Judge Coughenour's order never compelled any of those people except Lally to arbitrate.

Lally had argued to Judge Coughenour that the arbitration provision in the Superseded SSA was unenforceable. (ECF 51 at 1-2, 15-16.) After he filed his arbitration demand, he told the AAA he intended to make that argument again in arbitration. (Marks-Dias Declaration ¶13, Ex. 5.) When the arbitration provision in the Superseded SSA was found unenforceable, and Valve removed that provision from the Current SSA, Lally seemed to have gotten what he wanted. But when he changed his mind and decided to push forward with the arbitration against which he previously fought, Valve agreed to pay the fees necessary for his individual arbitration to proceed. In short, Valve did everything Judge Coughenour's prior order required.

Beyond that, Lally cites no authority holding that a party's refusal to pay arbitration fees is sanctionable. The AAA rules contemplate that a party may refuse to pay fees. If the opposing party elects not to advance those fees, the AAA will suspend or close the arbitration. AAA Supplementary Rules MC-10(d), (e); *Wallrich*, 106 F.4th at 613 (summarizing AAA rules). The remedy for refusal to pay fees is not sanctions or an order to pay fees, but waiver of the right to arbitrate. *See Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1011-13 (9th Cir. 2004) (court lacked authority to compel arbitration and order a party to pay fees after the AAA suspended proceedings for failure to pay); *see also Wallrich*, 106 F.4th at 620 ("[T]he district court

OPPOSITION TO PLAINTIFF RYAN LALLY'S
MOTION FOR SANCTIONS – 10
(No. 2:21-CV-00563-JNW)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

exceeded its authority and the scope of the arbitration agreement by ordering Samsung to pay the AAA filing fees.").

Only two of the cases Lally cites even mention sanctions at all, and neither helps him. In *Lopez v. Thermo Tech Mech. Inc.*, 2023 WL 5571312 (S.D.N.Y. Aug. 29, 2023), the court *denied* sanctions, concluding that a defendant's failure to pay fees that were "greater than the total liability in this case" was not "undertaken for purpose of delay." *Id.* at *3. And in *Serv. Emps. Int'l Union Local 32BJ v. Preeminent Protective Servs., Inc.*, 997 F.3d 1217 (D.C. Cir. 2021), the court did not consider the merits of an appeal from a contempt order based on refusal to arbitrate because the appeal was not timely. Neither supports imposing sanctions here.

**D.     Valve's Update to the Steam Subscriber Agreement Is Not Sanctionable**

Lally argues (Mot. 8) that Valve should be sanctioned for amending the SSA to remove the arbitration provision that **Lally himself** previously argued was unenforceable. (ECF 51 at 1-2, 15-16.) His amended complaint also alleged his class action was "superior to any other method for the fair and efficient adjudication of this legal dispute." (ECF 34 ¶314.) Lally cannot now be heard to contend that Valve acted in bad faith by withdrawing an arbitration provision that he and his counsel argued was unenforceable and giving Lally the federal-court rights he initially sought. Nor does Lally cite any authority where a court sanctioned a company for updating its user agreement.

**E.     Valve Has Not Violated Rule 11**

Lally asserts that two actions Valve brought against other law firms—one against Zaiger LLC and one against Bucher (who, incidentally, are also suing each other)—violated Rule 11. (Mot. 6-7.) He is not a party to either action and has no right to seek sanctions related to them. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002) (no sanctions for conduct in other proceedings); *Westlake N. Prop. Owners Ass'n v. City of Thousand Oaks*, 915 F.2d 1301, 1307

OPPOSITION TO PLAINTIFF RYAN LALLY'S
MOTION FOR SANCTIONS – 11
(No. 2:21-CV-00563-JNW)

(9th Cir. 1990) (a non-party to a case cannot seek sanctions).[5] Nor did either suit violate Rule 11. Lally claims that the "obvious inference" is that Valve brought the suits to "dissuade other counsel and subscribers from pursuing their arbitration claims against Valve." (Mot 8.) If so, that effort failed: Mason, Zaiger, and Bucher are continuing to pursue "hundreds of thousands" of arbitrations against Valve. (*Id.*) Moreover, Zaiger and Bucher made that same contention to the courts hearing the suits, and neither court agreed. (Marks-Dias Declaration ¶¶42-45, Exs. 21 at 1; 22 at 15 n.3; 23 at 1; 24 at 1.)

Lally also suggests that the Petition to Enjoin Arbitrations that Valve filed in this Court against other arbitration claimants violated Rule 11. That petition, too, is a separate action to which neither Lally nor the 14,910 others are parties. That action is firmly grounded in law and fact and was filed for the proper purpose of resolving whether Valve must arbitrate with claimants who have agreed to withdrawal of the arbitration provision. (*Id.* ¶21, Ex. 8.) It does not violate Rule 11.

### F.    Valve Has Not Committed Criminal Contempt

Lally references 18 U.S.C. § 401, the criminal contempt statute (Mot. 10), which permits a court to "punish by fine or imprisonment, or both, at its discretion," "contempt of its authority." *Id.* Lally seeks neither a fine nor imprisonment against Valve, so § 401 is inapplicable on its face. Nor has Valve has committed any contempt of this Court's authority.

### IV.    CONCLUSION

The Court should deny the Motion in its entirety.

---

[5] Rule 11(c)(2) also places "stringent notice and filing requirements on parties seeking sanctions." *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005). Lally has not complied with those requirements.  Indeed, Lally did not even meet and confer with Valve before filing the Motion.

OPPOSITION TO PLAINTIFF RYAN LALLY'S
MOTION FOR SANCTIONS – 12
(No. 2:21-CV-00563-JNW)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

DATED: June 26, 2025.

I certify that this memorandum contains 4,185 words, in compliance with the Court's Order.

CORR CRONIN LLP

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Defendant Valve Corporation*

OPPOSITION TO PLAINTIFF RYAN LALLY'S
MOTION FOR SANCTIONS – 13
(No. 2:21-CV-00563-JNW)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# EXHIBIT 3



**MASON LLP**
— ATTORNEYS AT LAW —

5335 Wisconsin Ave. NW
Suite 640
Washington D.C. 20015-2052
202.429.2290 | masonllp.com

Gary E. Mason
*t.* 202.640.1160
gmason@masonllp.com

Danielle L. Perry
*t.* 202.640.1168
dperry@masonllp.com

**VORYS**

Vorys, Sater, Seymour and Pease LLP

52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
614.464.6400 | vorys.com

Founded 1909

| Kenneth J. Rubin | Timothy B. McGranor |
|---|---|
| *t.* 614.464.5692 | *t.* 614.464.8205 |
| kjrubin@vorys.com | tbmcgranor@vorys.com |

October 1, 2024

**VIA E-MAIL**

Michael McTigue
Skadden Arps LLP
One Manhattan West
New York, NY 10001
Michael.Mctigue@skadden.com

    Re:  *Individual Claimants v. Valve Corporation*, Case No. 01-23-0005-8758

Dear Michael:

    We have reviewed your letter to Danielle Perry, Douglas Matthews, Tim McGranor and me, dated September 27, 2024, the Status Report filed September 27, 2024, and my email to AAA dated August 20, 2024, wherein, we agreed to put the above-captioned matter (the "AAA Arbitration") on an administrative hold.

    First, it remains our understanding that the AAA Arbitration remains on administrative hold and we are still scheduled for mediation on January 14, 2025, before Robert Meyers.

    Second, consistent with our prior requests for reimbursement of claimants' AAA filing fees, as provided by Steam's arbitration provision, you have offered to reimburse the filing fees paid in connection with these arbitrations.  We will send you the applicable AAA filing fee invoices, payment instructions and a W-9 under separate cover.

                       Sincerely,

                       Gary E. Mason

cc: Danielle Perry
    Douglas Matthews
    Tim McGranor
    Ken Rubin
    Meredith Slaw

# EXHIBIT 4

| | |
|---|---|
| **From:** | Gary Mason <gmason@masonllp.com> |
| **Sent:** | Tuesday, October 15, 2024 11:47 AM |
| **To:** | McTigue Jr., Michael W (NYC); Slawe, Meredith C (NYC) |
| **Cc:** | Danielle Perry; Theo Bell; Mari Gribble |
| **Subject:** | [Ext] Re: Individual Claimants v. Valve Corp., Case No. 01-23-0005-8758 |

Mike,

We are in receipt of payment from Valve, Inc. in the amount of $1,518,325.00 representing full reimbursement of our clients' AAA filing fees to date.  As stated in my letter to you dated October 1, 2024, we consider this payment to be in response to our prior requests for reimbursement pursuant to Section 11(c) of the 2023 Steam Subscriber Agreement ("If you seek $10,000 or less, Valve agrees to promptly reimburse your filing fee and your share if [sic] any of AAA's arbitration costs, including arbitrator compensation, unless the arbitrator determines your claims are frivolous or were filed for harassment.")  Thank you for your attention to this matter.

Gary

**Gary E. Mason**
**d** 202.640.1160  **m** 202.256.8540 | gmason@masonllp.com
*pronouns: he/him/his*

**MASON LLP**
5335 Wisconsin Avenue, NW, Suite 640, Washington, D.C. 20015-2052



masonllp.com | facebook

This email (including any attachments) is intended only for the use of the recipient to whom it is addressed and may contain information that is privileged, confidential, or protected by law.  Any unauthorized review, use, disclosure, or distribution is prohibited.  If you are not the intended recipient, please delete the email and any attachments and notify us immediately.  Thank you.

 Book time to meet with me

# EXHIBIT 5

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK, NY 10001-8602

———

TEL: (212) 735-3000

FAX: (212) 735-2000

WWW.SKADDEN.COM

FIRM/AFFILIATE OFFICES

———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON D.C.
WILMINGTON
———
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
212-735-3529
DIRECT FAX
917-777-3529
EMAIL ADDRESS
MICHAEL.MCTIGUE@SKADDEN.COM

February 13, 2025

**VIA ELECTRONIC MAIL**

Cheryl Florio
Director of ADR Operations
American Arbitration Association
16 Market Square, 1400 16th Street
Suite 400
Denver, CO 80202
CherylFlorio@adr.org

RE:    *Individual Claimants v. Valve*, Case 01-23-0005-8758

Dear Ms. Florio:

We write on behalf of Respondent Valve Corporation ("Valve") to request that the AAA administratively close the above-referenced consumer arbitration proceedings because the AAA no longer has jurisdiction over the matters.

The original basis for AAA jurisdiction was an arbitration agreement in a now-superseded version of Valve's Steam Subscriber Agreement ("SSA"). But that arbitration agreement was deemed unenforceable in four AAA arbitrations that involved similar underlying claims. Based on those rulings, a class action was filed, which seeks to certify a class that would include all of the claimants in these proceedings ("Claimants").[1] As a result, Valve removed the arbitration agreement from the SSA. The controlling SAA ("Controlling SSA," attached hereto as Ex. 2) now requires that these disputes be resolved exclusively in state or federal court in King County, Washington.

Specifically, the Controlling SSA provides that all disputes and claims between Valve and its customers, including accrued and pending claims, must proceed in court:

---

[1]    *See* Ex. 1 (Complaint, *Elliott v. Valve Corp.*, No. 2:24-cv-01218 (W.D. Wash., filed Aug. 9, 2024)). Plaintiffs allege they could pursue the class action in court because they "won binding decisions from arbitrators rendering Valve's arbitration provision unenforceable." (*Id.* ¶ 13.)

Cheryl Florio, Director of ADR Operations
February 13, 2025
Page 2

> All disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction.   You and Valve hereby consent to the exclusive jurisdiction of such courts and waive any objections as to personal jurisdiction or venue in such courts.

(Ex. 2 § 10.)  All of the Claimants have agreed to the  Controlling SSA, which requires that these arbitrations be closed.

Claimants will have a full and fair opportunity to have their claims resolved in court.  Currently there are four consumer putative class actions pending against Valve in the Western District of Washington, that have now been consolidated, that seek the same or substantially similar relief sought in these arbitrations.[2]

Notably, Vorys Sater Seymour and Pease LLP ("Vorys"), which until very recently was co-counsel for Claimants in these proceedings, is one of the plaintiffs' firms pursuing the class actions and is seeking to be appointed interim class counsel. In fact, on October 4, 2024, while still acting as co-counsel for Claimants in these arbitrations, Vorys filed a motion to lift the stay of the consumer claims in one of the pending class actions, based on the Controlling SSA.  In its motion, Vorys represented that the Controlling SSA "now require[s] all disputes and claims . . . to be 'commenced and maintained exclusively in [court],'" including "'any dispute or claim that arose before the existence of this or any prior agreement.'"  (Ex. 3 at 2 (Consumer Plaintiffs' Motion to Lift Stay, *In re Valve Antitrust Litig.*, No. 21-cv-00563-JNW (W.D. Wash.), ECF No. 370) (quoting Controlling SSA § 10).)  That same day, October 4, 2024, Vorys filed a motion to consolidate the class actions and to be appointed as interim lead counsel for the putative consumer class.  (Ex. 4 (Consumer Plaintiffs' Motion to Consolidate and Appoint Vorys, Sater, Seymour and Pease LLP as Interim Lead Class Counsel, *In re Valve Antitrust Litig.*, No. 21-cv-00563-JNW (W.D. Wash.), ECF No. 373).)[3]  Vorys did not withdraw from these arbitrations until October 23, 2024. (Ex. 5.)

---

[2]   *See In re Valve Antitrust Litig.*, No. 21-cv-00563-JNW (W.D. Wash., filed April 27, 2021) ("*Wolfire*"); *Elliott v. Valve Corp.*, No. 2:24-cv-01218 (W.D. Wash., filed Aug. 9, 2024) ("*Elliott*"); *Hepler v. Valve Corp.*, No. 2:24-cv-01735 (W.D. Wash., filed Oct. 23, 2024) ("*Hepler*"); *Drake v. Valve Corp.*, 2:24-cv-01743 (W.D. Wash., filed Oct. 24, 2024) ("*Drake*"). On December 6, 2024, the Western District of Washington consolidated the four pending putative class actions under the caption *In re Valve Antitrust Litig.*, No. 21-cv-00563-JNW (W.D. Wash.).

[3]   That filing noted that Vorys had also "filed a motion to lift the litigation stay due to recent changes to Valve's SSA—notably, the SSA no longer contains a mandatory arbitration clause or class action waiver."  (Ex. 4 at 6.)

Cheryl Florio, Director of ADR Operations
February 13, 2025
Page 3

Current counsel for Claimants has no legitimate basis to argue that these proceedings should not be closed as they previously requested the appointment of a Process Arbitrator "to address whether the arbitration clause in the Steam Subscriber Agreement is enforceable," asserting that "**a decision on this issue will affect each individual Claimant's obligation to arbitrate their disputes with Valve**." (Ex. 6 at 1-2 (emphasis added).)  That issue has now been resolved and as a result Valve has removed the arbitration agreement from the SSA.

To the extent there is any dispute over which version of the SSA applies to Claimants' underlying claims, that is for a court—and not an arbitrator—to decide under the Supreme Court's controlling decision in *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024).

Please be advised that because there is no arbitration agreement between Valve and Claimants, Valve will not pay any additional fees in connection with these arbitrations.

Valve reserves all rights.

Sincerely,

/s/ Michael W. McTigue Jr.

Michael W. McTigue Jr.

cc:    Victoria Chandler
       All counsel of record

(w/encls.)

# EXHIBITS

# INTENTIONALLY OMITTED

# EXHIBIT 6

| | |
|---|---|
| **From:** | AAA Cheryl Florio <CherylFlorio@adr.org> |
| **Sent:** | Monday, March 24, 2025 4:17 PM |
| **To:** | 'Gary Mason'; Theo Bell; Danielle Perry; Mari Gribble; McInerney, Colm P (NYC); McTigue Jr., Michael W (NYC); Slawe, Meredith C (NYC); AAAFiling@valvesoftware.com; Jacob Eisenberg |
| **Cc:** | AAA Cheryl Florio |
| **Subject:** | [Ext] Individual Claimants v. Valve Corporation - Case 01-23-0005-8758 |
| **Attachments:** | 2025 03 24   AAA Request for Case Management Fees   Valve 14,911 filed by Mason LLP.xlsx; Invoice - 2025-03-24 - Individual Claimants v Valve Corporation.pdf |

Dear Counsel,

This will confirm an Administrative Conference was held on March 20, 2025. Gary Mason and Theodore Bell were present for the Individual Claimants, Michael McTigue and Colm McInerney were present for Respondent Valve Corporation.

We understand Respondents have requested AAA to close these cases, and that Claimants have opposed that request. Inasmuch as AAA has determined the filing requirements for these cases have been met, any requests to close these matters are properly directed to arbitrators.

Regarding the 14,911 cases listed on the attached spreadsheet, at this time we are requesting Respondent's AAA Case Management Fees totaling **$20,875,400.00** (or $1,400 per case). Respondent's invoice is attached here. Please refer to the attached spreadsheet for the individual cases and corresponding locale states.

- As some of these arbitrations are subject to California Code of Civil Procedure ("CCCP") Section 1281.98, we are providing the attached invoice in accordance with that statute. Payment is due upon receipt and must be paid by 30 days from the Due Date provided on the attached invoice or the AAA will close the parties' case. If the payment deadline falls on a weekend or holiday, payment must be paid by the following business day under CCCP Section 12a. Pursuant to CCCP Section 1281.98, the AAA cannot extend this payment deadline.

As discussed during the call with regards to the remaining 5,000 cases, Claimants will submit a statement of issues to be raised to a Process Arbitrator on or before **March 28, 2025** and Respondent will submit a response on or before **April 4, 2025.**

Sincerely,

 **AAA Cheryl Florio**
**Director of ADR Operations**

1

# EXHIBIT 7



| Invoice Date |
|---|
| 24-Mar-2025 |
| **Invoice Balance** |
| $20,875,400.00 |
| **Case #** |
| 01-23-0005-8758-2-CF |

Case Manager: Cheryl A Florio
CherylFlorio@adr.org
**Pay PIN**: 12064994
Unless instructed otherwise, invoice balance due upon receipt.

# Invoice

Michael W. McTigue Jr., Jr., Esq.
Skadden, Arps, Slate, Meagher & Form,
LLP
One Manhattan West
New York, NY 10001

**Representing:** **Valve Corporation**

Re: Individual Claimants
Vs.
Valve Corporation

| Bill Line Date | Bill Line # | Description | Due Date | Amount |
|---|---|---|---|---|
| 24-Mar-2025 | 14237774 | Case Management Fees | 24-Mar-2025 | $20,875,400.00 |
| | | **Net Due Amount** | | **$20,875,400.00** |

**Corporate Address and Tax ID**: American Arbitration Association, 120 Broadway, 21st Floor, New York, NY 10271, EIN: 13-0429745

# EXHIBIT 8

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK, NY 10001-8602

TEL: (212) 735-3000

FAX: (212) 735-2000

WWW.SKADDEN.COM

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON D.C.
WILMINGTON
————
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
212-735-3529
DIRECT FAX
917-777-3529
EMAIL ADDRESS
MICHAEL.MCTIGUE@SKADDEN.COM

April 23, 2025

**VIA ELECTRONIC MAIL**

Cheryl Florio
Director of ADR Operations
American Arbitration Association
16 Market Square, 1400 16th Street
Suite 400
Denver, CO 80202
CherylFlorio@adr.org

RE:       *Individual Claimants v. Valve*, Case 01-23-0005-8758

Dear Ms. Florio:

We write on behalf of Valve regarding the AAA's March 24, 2025 invoice and e-mail regarding the above-referenced arbitrations (attached hereto as Ex. 1).

Claimants' counsel Mason LLP's ("Claimants' Counsel") mass arbitration is divided into two tranches: (a) three mass submissions made in December 2023, totaling 14,911 Claimants (the "December 2023 Submitted Claims"); and (b) another mass submission in April 2024, totaling 5,000 Claimants (the "April 2024 Submitted Claims"). The March 24, 2025 invoice, seeking a payment of $20,875,400 in Case Management Fees, relates to the December 2023 Submitted Claims. For the reasons set forth below, Valve declines to pay the fees and again requests that the AAA close the arbitrations. Furthermore, as explained below, none of these arbitrations are subject to California Code of Civil Procedure ("CCCP") § 1281.98.

**I.       The AAA Has No Jurisdiction Over These Matters Because There Is No Arbitration Agreement**

As Valve has explained, the sole basis for AAA jurisdiction was an arbitration agreement in a now-superseded version of Valve's Steam Subscriber Agreement ("SSA"). But that arbitration agreement was deemed unenforceable in four AAA arbitrations that involved similar underlying claims. Based on those rulings, a class action was filed, which seeks to certify a class that would include all of the claimants

Cheryl Florio, Director of ADR Operations
April 23, 2025
Page 2

in these proceedings ("Claimants").[1] As a result, Valve removed the arbitration agreement from the SSA. The controlling SAA ("Controlling SSA," attached hereto as Ex. 3) now requires that these disputes be resolved exclusively in state or federal court in King County, Washington. (Ex. 3 § 10.)

All of the Claimants have agreed to the Controlling SSA, which does not provide any basis for AAA jurisdiction and instead requires that these arbitrations be closed. To the extent there is any dispute over which version of the SSA applies to Claimants' underlying claims, that is for a court—and not an arbitrator—to decide under the Supreme Court's controlling decision in *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024).

Claimants will have a full and fair opportunity to have their claims resolved in court. Currently there are four consumer putative class actions pending against Valve in the Western District of Washington that have now been consolidated and seek the same or substantially similar relief sought in these arbitrations.[2]

Valve discussed these points at length in its prior letters to the AAA. (*See* Valve's February 13, 2025 letter to the AAA (Ex. 4); Valve's February 19, 2025 letter to the AAA (Ex. 5).) Those prior letters also noted that Vorys Sater Seymour and Pease LLP ("Vorys"), which until recently was co-counsel for Claimants in these proceedings, is one of the plaintiffs' firms pursuing the class actions and is seeking to be appointed interim class counsel. While still counsel for Claimants, Vorys took the position that the Controlling SSA requires all disputes and claims, including accrued claims, to be resolved exclusively in court. (*See* Ex. 4 at 2.)

Accordingly, the AAA has no jurisdiction over these arbitrations, and they should be closed. For the same reasons, Valve, while reserving all rights, declines to pay the Case Management Fees.[3]

---

[1]  See Ex. 2 (Complaint, *Elliott v. Valve Corp.*, No. 2:24-cv-01218 (W.D. Wash., filed Aug. 9, 2024)). Plaintiffs allege they could pursue the class action in court because they "won binding decisions from arbitrators rendering Valve's arbitration provision unenforceable." (*Id.* ¶ 13.)

[2]  *See In re Valve Antitrust Litig.*, No. 21-cv-00563-JNW (W.D. Wash., filed April 27, 2021) ("*Wolfire*"); *Elliott v. Valve Corp.*, No. 2:24-cv-01218 (W.D. Wash., filed Aug. 9, 2024) ("*Elliott*"); *Hepler v. Valve Corp.*, No. 2:24-cv-01735 (W.D. Wash., filed Oct. 23, 2024) ("*Hepler*"); *Drake v. Valve Corp.*, 2:24-cv-01743 (W.D. Wash., filed Oct. 24, 2024) ("*Drake*"). On December 6, 2024, the Western District of Washington consolidated the four pending putative class actions under the caption *In re Valve Antitrust Litig.*, No. 21-cv-00563-JNW (W.D. Wash.).

[3]  Valve previously explained that the AAA should not issue any further invoices in these arbitrations because it did not have jurisdiction. (*See* Ex. 4 at 3; Ex. 5 at 6.)

Cheryl Florio, Director of ADR Operations
April 23, 2025
Page 3

## II.     None Of These Arbitrations Are Subject To California Arbitration Law

The AAA's March 24, 2025 e-mail accompanying its invoice states: "As some of these arbitrations are subject to California Code of Civil Procedure ('CCCP') Section 1281.98, we are providing the attached invoice in accordance with that statute." The AAA's statement that "some of these arbitrations" are subject to CCCP § 1281.98 is incorrect.

*First*, the Current SSA, which all Claimants have accepted, does not contain an arbitration agreement.

*Second*, if the prior version of the SSA (the "Superseded SSA," attached hereto as Ex. 6) applied, which it does not, that agreement's arbitration clause provides that "[t]he U.S. Federal Arbitration Act applies to this Section 11 as far as your country's laws permit." (Ex. 6 § 11(C).) Where, as in the Superseded SSA, the Federal Arbitration Act (the "FAA") provides the applicable procedural law then CCCP §§ 1281.97-99 do not apply. *See Morales v. Midland Credit Mgmt., Inc.*, No. H050950, 2024 WL 4211151, at *1 (Cal. Ct. App. Sept. 16, 2024) ("The trial court . . . correctly determined that section 1281.98 is inapplicable here, as the arbitration agreement is 'governed by, and enforceable under,' the Federal Arbitration Act"); *Hernandez v. Sohnen Enterprises, Inc.*, No. 21-ST-CV-26283, 102 Cal. App. 5th 222, 242 (Cal. App. May 22, 2024) (holding that CCCP § 1281.97 does not apply where an arbitration provision "refers to procedures contained in the FAA" and does not include any "provision explicitly referring to California law"); *accord Solis v. Sohnen Ents, Inc.*, No. B323296, 2024 WL 2345367, at *8 (Cal. Ct. App. May 23, 2024) ("[I]f parties agree to apply the FAA's procedural provisions, rather than the procedures of the CAA, then the state arbitration procedures do not apply and there is no preemption issue.").

*Third*, even assuming *arguendo* that CCCP §§ 1281.97-99 otherwise applied (which they do not), that law is preempted by the FAA because it purports to impose penalties specific to arbitration agreements.[4] *See Martinez v. Refinitiv, Ltd.*, No. 2:24-CV-05481-JLS-JPR, 2024 WL 5424373, at *3 (C.D. Cal. Nov. 14, 2024) (finding CCCP § 1281.97 preempted because it "makes arbitration agreements unenforceable

---

[4]   As the Supreme Court reiterated in *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022), the FAA embodies an "equal treatment" principle, which requires courts to treat arbitration agreements in the same manner as they would treat other contracts. CCCP §§ 1281.97 and 1281.98 violate this principle because the "30-day requirement, under sections 1281.97 and 1281.98, is a substantive modification of California contract law with respect to waiver and material breach." *Belyea v. GreenSky, Inc.*, 637 F. Supp. 3d 745, 756 (N.D. Cal. 2022). Accordingly, CCCP § 1281.98 "violates the equal-treatment principle under 9 U.S.C. § 2 because it makes arbitration provisions unenforceable on arbitration-specific grounds." *Id*. S*ee also Ding v. Structure Therapeutics, Inc.*, 755 F. Supp. 3d 1200, 1211 (N.D. Cal. 2024) (holding that CCCP § 1281.98 violates the equal-treatment principle because "Section 1281.98's 30-day requirement modifies California contract law as to waiver and material breach—but only for arbitration agreements.").

Cheryl Florio, Director of ADR Operations
April 23, 2025
Page 4

on grounds that exist in the arbitration context only"); *Ding*, 755 F. Supp. 3d at 1211 ("California Code of Civil Procedure § 1281.98 violates the equal treatment principle under 9 U.S.C. § 2 because it makes arbitration provisions unenforceable on arbitration-specific grounds."); *Burgos v. Citibank, N.A.*, No. 23-CV-01907-AMO, 2024 WL 3875775, at *5 (N.D. Cal. Aug. 16, 2024) ("[I]n line with other courts in this district, this Court finds that Section 1281.98 is preempted."); *Lee v. Citigroup Corp. Holdings, Inc.*, No. 22-cv-02718-SK, 2023 WL 6132959, at *2 (N.D. Cal. Aug. 29, 2023) (noting that the "reasoning of *Belyea* is correct" with respect to the FAA's preemption of Section CCCP § 1281.97); *Belyea*, 637 F. Supp. 3d at 756 (holding that the FAA preempts CCCP § 1281.97); *see also Solis*, 2024 WL 2345367, at *10; *Hernandez*, 102 Cal. App. 5th at 243.

The AAA should close all arbitrations. Valve reserves all rights against all appropriate parties.

Sincerely,

*/s/ Michael W. McTigue Jr.*

Michael W. McTigue Jr.

cc:    All counsel of record

(w/encls.)

# EXHIBITS

# INTENTIONALLY OMITTED

# EXHIBIT 9

**From:** AAA Cheryl Florio <CherylFlorio@adr.org>
**Sent:** Thursday, May 15, 2025 5:41 PM
**To:** 'Gary Mason' <gmason@masonllp.com>; Jacob Eisenberg <jeisenberg@masonllp.com>; Theo Bell <tbell@masonllp.com>; Danielle Perry <dperry@masonllp.com>; Mari Gribble <mgribble@masonllp.com>; McTigue Jr., Michael W (NYC) <Michael.McTigue@skadden.com>; McInerney, Colm P (NYC) <Colm.McInerney@skadden.com>; Slawe, Meredith C (NYC) <Meredith.Slawe@skadden.com>; AAAFiling@valvesoftware.com
**Cc:** AAA Cheryl Florio <CherylFlorio@adr.org>
**Subject:** [Ext] Individual Claimants v. Valve Corporation - Case 01-23-0005-8758

Dear Counsel,

The AAA is in receipt of Claimants' letter dated April 30, 2025 and Respondent's letter dated May 1, 2025.

Regarding the 14,911 cases for which Respondent did not remit the AAA Case Management fees, the AAA will place these cases in abeyance pending a Court's Ruling in accordance with Claimants' request.

The AAA will proceed with case administration of a subset of cases as referenced in Claimants' letter upon receipt of Claimants' identification of the subset, and Claimants' corresponding advanced payment of Respondent's Case Management Fees for the subset.

Thank you,



**AAA Cheryl Florio**
**Director of ADR Operations**

American Arbitration Association
T: 401 431 4779 F: 866 644 0234 E: CherylFlorio@adr.org
16 Market Square 1400 16th Street, Suite 400, Denver, CO 80202
adr.org | icdr.org | aaaicdrfoundation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, discl distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immedia reply email and destroy all copies of the transmittal. Thank you.

# EXHIBIT 10

**From:** Gary Mason <gmason@masonllp.com>
**Sent:** Wednesday, December 17, 2025 5:51 PM
**To:** CherylFlorio@adr.org
**Cc:** Slawe, Meredith C (NYC) <Meredith.Slawe@skadden.com>; McInerney, Colm P (NYC) <Colm.McInerney@skadden.com>; Theo Bell <tbell@masonllp.com>; Danielle Perry <dperry@masonllp.com>; AAAFiling@valvesoftware.com; Mari Gribble <mgribble@masonllp.com>; Jacob Eisenberg <jeisenberg@masonllp.com>; McTigue Jr., Michael W (NYC) <Michael.McTigue@skadden.com>; Kent Williams <kent.williams@sirillp.com>; Mason Barney <mbarney@sirillp.com>
**Subject:** [Ext] Re: Individual Claimants v. Valve Corporation - Case 01-23-0005-8758

Dear Ms. Florio:

In accordance with the AAA correspondence dated May 15, 2025, our client, Claimant Jason Irias, has elected to move forward with his arbitration claim against Valve. Please send us an invoice for Respondent's share of the applicable Case Management Fees for this matter so we can proceed with the arbitration.

Also, please add Mason Barney and Kent Williams (both copied) of the law firm Siri & Glimstad LLP as co-counsel for the Claimant.

Thank you for your attention and continued assistance.

Sincerely,

Gary Mason


**Gary E. Mason**
**Partner**
**Mason LLP**
**d** 202.640.1160  **m** 202.256.8540 | gmason@masonllp.com

# EXHIBIT 11



AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

Northeast Case Management Center
Jonathan Weed
Assistant Vice President
1301 Atwood Avenue
Johnston, RI 02919
Telephone: (866)293-4053

January 28, 2026

Gary E. Mason, Esq.
Mason, LLP
5335 Wisconsin Avenue NorthWest, Suite 640
Washington, DC 20016
Via Email to: Gmason@masonllp.com

Michael W. McTigue, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Manhattan West
New York, NY 10001
Via Email to: michael.mctigue@skadden.com

Case Number: 01-24-0001-4404

Jason Irias -vs- Valve Corporation

Dear Parties:

The American Arbitration Association (AAA) acknowledges receipt of a Demand for Arbitration and an arbitration clause providing for administration by the AAA. We trust a copy has been sent to the Respondent per the Rules. The AAA further acknowledges that the filing requirements have been met.

Your case is assigned to me for administration. I will be your primary contact for this matter and will serve as a resource to you throughout the administration of your case. Occasionally, a staff member may reach out to you on my behalf. However, please contact me with any questions, issues, or concerns.

The Consumer Arbitration Rules amended and effective May 1, 2025, and the Consumer Fee Schedule, amended and effective January 15, 2024, apply to this matter.

## Answer
- The Respondent has 14 calendar days from the date of this letter to file an answer to the claim. Answers received after the due date will still be provided to the arbitrator.
- Per Consumer Rule R-5, "If no answer is filed within 14 calendar days, the AAA will assume that the respondent does not agree with the claim filed by the claimant."
- Please reference the Rules if filing a counterclaim.

## Checklist for Conflicts Form
- Please complete and return the enclosed Checklist for Conflicts Form within 14 calendar days from the date of this letter. Instructions are provided on the form.
- You may complete this form online through your AAA WebFile® account.

## AAA WebFile®
- If you have an AAA WebFile account, you should see this case listed when you log in. Please contact me if

you do not see the case number when you log in.
- If you do not have an AAA WebFile account, please navigate to our website and register by entering your email.

### AAA WebFile® Electronic Case Filing Guidelines
- The AAA WebFile® Electronic Case Filing Guidelines apply to this dispute. The AAA requires the parties to use AAA WebFile® to file online their pleadings, including claims, counterclaims, answers, motion briefings, pre- and post-hearing briefs, and other substantive filings. To e-file or view documents on AAA WebFile, case participants must have an active AAA WebFile account and must have previously filed a notice of appearance or otherwise appeared in the case.
- If you have any questions, please refer to the AAA WebFile® Electronic Case Filing ("ECF") Guidelines FAQ or contact me.

### Hearing Type and Locale of In-Person Hearing
- If an in-person hearing is to be held, the requested hearing locale is Ohio.
- Please refer to the Consumer Arbitration Rules for information regarding the Fixing of Locale (the city, county, state, territory, and/or country where the arbitration will take place).
- If no disclosed claim or counterclaim exceeds $25,000, this matter shall be resolved by the Procedures for the Resolution of Disputes through Document Submission contained in the Consumer Arbitration Rules unless a party asks for a hearing or the arbitrator decides a hearing is necessary.

### Initial Administrative Fee
- The Consumer has met the filing requirements regarding their filing fee.
- The Business has paid its share of the initial administrative fee.

### Consumer Arbitration Awards
- Per Consumer Rule R-42(c), please be advised that the AAA may choose to publish an award rendered under these Rules. The names of the parties and witnesses will be removed from awards that are published.

### Next Administrative Step
- The next administrative step is appointing an arbitrator.

Please review the enclosed *AAA-ICDR® Best Practices Guide for Maintaining Cybersecurity and Privacy, AAA-ICDR® Cybersecurity Checklist*, and Consumer Arbitration Reference Sheet. For more information, please view our website.

The AAA appreciates the opportunity to assist you with your dispute resolution needs.

Sincerely,
/s/
Yesenia Franquiz
Manager of ADR Services
Direct Dial: (401)414-5403
Email: YeseniaGaviria@adr.org

Supervisor Information: Jared Flores, Floresj@adr.org, 972-383-4408

Enclosures
cc: Mason A. Barney, Esq.; Theodore B. Bell, Esq.; Jacob Eisenberg, Esq.; Kent M. Williams, Esq.; Mari Gribble;
Meredith Slawe, Esq.; Christopher Schenck, Esq.; Gavin Skok; Colm P. McInerney, Esq.; Danielle L. Perry, Esq.; Jessica Painley

# EXHIBIT 12

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK, NY 10001-8602

———

TEL: (212) 735-3000

FAX: (212) 735-2000

WWW.SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON D.C.
WILMINGTON
———
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
212-735-3529
DIRECT FAX
917-777-3529
EMAIL ADDRESS
MICHAEL.MCTIGUE@SKADDEN.COM

February 3, 2026

**VIA ELECTRONIC MAIL**

Yesenia Franquiz
Manager of ADR Services
American Arbitration Association
120 Broadway, 21st Floor
New York, New York 10271
YseniaGaviria@adr.org

RE:    *Jason Irias v. Valve*, Case No. 01-24-0001-4404

Dear Ms. Franquiz:

We write on behalf of Valve in response to Claimants' Counsel's January 26 and January 28, 2026, *ex parte* e-mails to the AAA regarding the above-captioned case and the AAA's January 28, 2026, letter indicating that it will proceed with administration of this case.

As an initial matter, Valve objects to Claimants' Counsel's improper *ex parte* communications with the AAA and their request to schedule a call with the AAA regarding an arbitration adverse to Valve without the presence of Valve's counsel. That is a clear violation of the AAA's rules and policies. *See* Consumer Arbitration Rules (Amended and Effective September 1, 2014) ("2014 Consumer Rules"), R-52(c) ("[A]ny documents and all written communications submitted by any party to the AAA or to the arbitrator also shall be sent at the same time to all parties to the arbitration."). We request that the AAA direct Claimants' Counsel to refrain from any further *ex parte* communications.

Valve also objects to Claimants' Counsel's request to advance the Case Management Fees for a single Claimant, Jason Irias, out of the thousands of claimants ("Claimants") that Claimants' Counsel purports to represent in their mass arbitration against Valve (that mass arbitration has the case number 01-23-0005-8758) while simultaneously seeking relief in court for Mr. Irias in connection with this arbitration.

Yesenia Franquiz, Manager of ADR Operations
February 3, 2026
Page 2

Lastly, while this case should not proceed at all because there is no arbitration agreement between the parties, Valve would respectfully point out that the statement in the AAA's letter that "[t]he Consumer Arbitration Rules amended and effective May 1, 2025" apply to this case is erroneous. As noted, this case is one of thousands of arbitrations that Claimants' Counsel commenced in December 2023—therefore, the 2014 Consumer Rules that were in effect in December 2023 would apply if there were an arbitration agreement.

## Background

**1.    Claimants' Counsel's Pursuit of These Mass Arbitrations**

In 2023 and 2024, Claimants' Counsel Mason LLP, together with its former co-counsel Vorys, Sater, Seymour and Pease LLP, submitted demands for arbitration for nearly 20,000 Claimants in two tranches: 14,992 demands—including for Mr. Irias—submitted in December 2023 (the "December 2023 Arbitrations")[1] and an additional 5,000 demands submitted in April 2024 (the "April 2024 Arbitrations"). The demands were all short (three pages) with identical substantive allegations, set forth in a single paragraph, that Valve engaged in "anticompetitive conduct" relating to its Steam platform.

These mass filings are designed to impose procedural and financial burdens on Valve and thereby extort a settlement rather than to pursue legitimate individual claims. The Ninth Circuit has raised concerns with this litigation tactic.[2]

In any event, these arbitrations should be closed because there is no longer any arbitration agreement between Valve and these Claimants. In September 2024, Valve updated its Steam Subscriber Agreement. Under that updated agreement (the "Controlling SSA"), disputes between Valve and Steam users are no longer sent to arbitration: rather, those disputes must be resolved exclusively in state or federal court in King County, Washington. (*See* Ex. 1; *see also* Ex. 2.)

Thus, after Claimants' Counsel requested that the AAA lift the stay of the arbitrations following an unsuccessful mediation, Valve exercised its right under the AAA rules to decline to pay the $20.875 million invoice for the Case Management Fees for the December 2023 Arbitrations, and requested that the AAA close the cases. Valve also explained why none of these arbitrations are subject to the California Code

---

[1]    Claimants' Counsel later withdrew 81 Claimants from the December 2023 Arbitrations without explanation, reducing that pool to 14,911 Claimants.

[2]    *See Jones v. Starz Ent. LLC*, 129 F.4th 1176, 1183 (9th Cir. 2025) (noting "serious doubt over the true motivation underlying the mass-arbitration tactic deployed here, which appears to be geared more toward racking up procedural costs to the point of forcing [defendant] to capitulate to a settlement than proving the allegations . . . to seek appropriate redress on the merits").

Yesenia Franquiz, Manager of ADR Operations
February 3, 2026
Page 3

of Civil Procedure ("CCCP"). (*See* Ex. 3.)[3] Valve further noted that Claimants' Counsel's request to proceed with arbitration contradicted the efforts made by its then arbitration co-counsel—Vorys—to proceed with a putative class action against Valve on the basis that the Controlling SSA "require[d]" these disputes to proceed in court. (*See id.* at 2; *see also* Ex. 1 at 2; Ex. 2 at 6.)

## 2.    Claimants' Counsel Request These Arbitrations Be Placed on Hold

Claimants' Counsel opposed Valve's request to close the December 2023 Arbitrations, requesting that the AAA instead "should place [them] on administrative hold" so that Claimants' Counsel could bring a court action to compel Valve to pay arbitration fees and also identify a subset of Claimants that might proceed notwithstanding Valve declining to pay the fees. (Ex. 4 at 1-2.)

Over Valve's objection (*see* Ex. 5), the AAA placed the cases "in abeyance pending a Court's Ruling in accordance with Claimants' request," while stating that "[t]he AAA will proceed with case administration of a subset of cases as referenced in Claimants' letter upon receipt of Claimants' identification of the subset, and Claimants' corresponding advanced payment of Respondent's Case Management Fees for the subset." (Ex. 6.)

Thereafter, Claimants' Counsel commenced not one but three court proceedings, all of which encompass all of the Claimants from the December 2023 Arbitrations.[4] Valve has opposed these various actions, explaining that the requested relief is baseless.

In April 2025, when Claimants' Counsel requested a stay of the arbitrations, they represented that they were "in the process of identifying a subset" of Claimants who wished to proceed in arbitration. (Ex. 4 at 1 (emphasis added).) Almost eight months later, Claimants' Counsel had failed to identify *any* such Claimants, as Valve pointed out in a December 12, 2025, brief that it submitted to the Process Arbitrator

---

[3]    Valve also requested that the AAA close the April 2024 Arbitrations. The AAA has appointed a Process Arbitrator for those arbitrations.

[4]    *See Welty v. Valve Corporation*, 2:25-cv-02450-JNW (W.D. Wash.), ECF 1-1 (Ex. 7) ¶ 50, p. 13 (putative class action on behalf of all California-resident Claimants (including the subset of December 2023 Arbitrations Claimants who are California residents) seeking "an order rendering a default judgment against Valve"); *In re Valve Antitrust Litigation,* No. 2:21-cv-00563-JNW (W.D. Wash) ("*Wolfire*"), ECF 467 (Ex. 8) at 9-11 (motion for sanctions on behalf of Plaintiff Ryan Lally—one of the Claimants in the December 2023 Arbitrations—seeking an order compelling Valve to pay arbitration fees for Plaintiff Lally and all the December 2023 Arbitration Claimants' arbitrations and "[a]n order that if Valve fails to pay by the deadline, default or adverse inference sanctions will be entered as liability in any subsequent proceedings"); *Smith v. Valve Corporation*, No. 2:25-cv-01478-JNW (W.D. Wash.), ECF 1 (Ex. 9) ¶¶ 52, 89 (another putative class action on behalf of the December 2023 Arbitration Claimants, seeking an order requiring Valve to pay arbitration fees and "[a]n Order of default against Valve on the underlying arbitration claims of Plaintiff and the Class Members.").

Yesenia Franquiz, Manager of ADR Operations
February 3, 2026
Page 4

in the April 2024 Arbitrations. (Ex. 10 at 12-13.) Then, and only then, did Claimants'
Counsel write to the AAA and state that *one* Claimant from the December 2023
Arbitrations, Mr. Irias, "elected to move forward with his arbitration claim against
Valve." (Ex. 11.) Claimants' Counsel provided no explanation for their delay, nor did
they inform the AAA about their court filings.

### Claimants' Counsel's Belated Request To Proceed With A Single Claimant's Arbitration Should Be Denied

The AAA should reject Claimants' Counsel's improper request to proceed with
Mr. Irias's arbitration for the following reasons:

*First*, none of these arbitrations can proceed because the Controlling SSA
requires that all disputes be resolved in a state or federal court in King County,
Washington. (*See* Ex. 1.) Claimants' Counsel seek to apply the prior version of the
SSA (the "Superseded SSA"), but under the Supreme Court's binding unanimous
precedent in *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024) only a court can resolve
which SSA applies. That question is squarely before the court in the pending actions.[5]
With respect to Mr. Irias specifically, Valve's business records indicate that Mr. Irias
logged onto the Steam platform since the Controlling SSA went into effect—on
December 11, 2025—thus consenting to that updated agreement.

*Second*, Mr. Irias's arbitration cannot proceed while his counsel is
simultaneously pursuing several court actions in which they request that Mr. Irias be
granted the same relief he seeks in his arbitration. For example, Mr. Irias is a member
of the putative class that his counsel seeks to certify in the *Smith* action, in which his
counsel seeks to resolve the "underlying arbitration claims" with "an Order of default
against Valve." *Smith*, ECF 1 (Ex. 9) ¶ 89 *see also Wolfire*, ECF 467 (Ex. 8) at 9-11
(seeking, purportedly on behalf of all December 2023 Arbitration Claimants, including
Mr. Irias, "[a]n order that if Valve fails to pay by the deadline, default or adverse
inference sanctions will be entered as liability in any subsequent proceedings").

*Third*, the request to proceed with Mr. Irias's arbitration is also made in bad
faith. Claimants' Counsel sought to stay the December 2023 Arbitrations so that they
could commence a court action against Valve *under the CCCP* and identify certain
Claimants for whom they would advance fees and proceed with arbitration. (Ex. 4 at
1.) Yet Claimants' Counsel have initiated not one but three baseless, duplicative, and
vexatious court actions against Valve, only one of which even invokes the CCCP.

---

[5]    *See e.g.*, *Smith*, ECF 13 (Ex. 12) at 9 (explaining that "Plaintiff's claims, which rely on the existence
of the Superseded SSA (and conspicuously fail to mention the Current SSA), are [] fatally
flawed."); *Wolfire*, ECF 470 (Ex. 13) at 10 (explaining that "[Plaintiff] Lally has not shown that
the 14,910 [other December 2023 Arbitration] Claimants are not bound by the Current SSA, which
has been in effect for nine months"); *Welty*, ECF 30 (Ex. 14) at 9 ("The Complaint intentionally
omits facts about the Current SSA because that agreement has no arbitration provision.").

Yesenia Franquiz, Manager of ADR Operations
February 3, 2026
Page 5

Claimants' Counsel's request is also inconsistent with their strenuous objections to Valve's offer to proceed with the arbitration of another Claimant, Ryan Lally. In response to the motion for sanctions that Claimants' Counsel brought on behalf of Mr. Lally, Valve searched its records and confirmed that Mr. Lally had not accepted the Controlling SSA. Valve thus offered to arbitrate Mr. Lally's individual claim and requested that the AAA issue an invoice for the Case Management Fees for that case. (Exs. 15 and 16; *see also* Ex. 17.)[6] But Claimants' Counsel *opposed* Valve's request. (Ex. 18.)[7] The AAA declined to issue an invoice for Mr. Lally's arbitration, instead stating that the arbitration would "remain stayed." (Ex. 19); *see also Wolfire*, ECF 470 (Ex. 13) at 7 (noting that "Lally opposed" Valve's request that the AAA issue an invoice for his arbitration, "making it clear that the point of [Lally's sanction] Motion is not to pursue his own arbitration, but to force Valve to pay $20.8 million in fees for other claimants.").

*Fourth*, the AAA should not condone Claimants' Counsel's attempts to misuse the AAA process with its continued pursuit of this mass arbitration. For example:

- Valve's sampling analysis of the claimant pool identified substantial deficiencies, including dead claimants, claimants who appear to be minors, and claimants who are represented by other firms that are threatening or pursuing substantially similar antitrust claims against Valve (including claimants represented by *two other separate sets of firms* advancing such claims). Claimants' Counsel have taken no steps to address those issues. (*See e.g.*, Ex. 10 at 7.) This is because Claimants' Counsel's underlying goal is to use the threat of aggregate arbitration fees to try and coerce a settlement, not to legitimately pursue the underlying claims.

- Claimants' Counsel have requested that the AAA add Mason Barney and Kent Williams of the law firm Siri & Glimstad LLP as co-counsel for Mr. Irias. Notably, these attorneys are also co-counsel to Bucher Law PLLC in its separate mass arbitration against Valve on the same underlying claims.

---

[6]    This is consistent with Valve's position that while the vast majority of claimants in the various mass arbitrations brought against Valve have accepted the Controlling SSA, to the extent there are any claimants that (i) have not affirmatively accepted the Controlling SSA and have not logged on to Steam any time from November 1, 2024, onwards and (ii) still wish to proceed with arbitration, Valve is prepared to go forward with those arbitrations.

[7]    Mr. Lally's request to arbitrate under the Superseded SSA was a reversal of his prior court action, commenced by Vorys on his behalf in 2021, where in response to Valve's motion to compel arbitration of his and six other named plaintiffs' claims, he argued that the Superseded SSA was unconscionable and unenforceable and "would deny" him "the ability to seek and obtain the statutory relief available to [him]." *Wolfire*, ECF 470 (Ex. 13) at 3. The court granted Valve's motion (and stayed the litigation), but ruled that the arguments on enforceability could only be decided in arbitration. But after the Superseded SSA was found to be unenforceable in several arbitrations, and Valve updated the SSA by removing the arbitration agreement, Mr. Lally—in contrast to the other six plaintiffs—did not seek to lift the stay of the litigation but instead apparently decided that he now wanted to proceed in arbitration. *Id.* at 3-4.

Yesenia Franquiz, Manager of ADR Operations
February 3, 2026
Page 6

Both Claimants' Counsel and Bucher Law's mass arbitrations against Valve are being funded and controlled by the same litigation funder, Benchwalk 22m, L.P., who holds as collateral all "right, title, or interest" in the underlying claims, making that firm the real party of interest in these proceedings. (Exs. 20 and 21; *see also* Ex. 10 at 12-13 (explaining that "Claimants' Counsel's UCC financing statements confirm that they have obtained third-party litigation funding from Benchwalk 22m, L.P.".)[8] This indicates that these mass arbitrations are being driven by an undisclosed litigation funder rather than the individual Claimants (who may be unaware that the claims are being funded by a third party).

*        *        *

For the foregoing reasons, the AAA should direct Claimants' Counsel to refrain from any further *ex parte* communications and decline Claimants' Counsel's request to advance the fees for Mr. Irias's arbitration.

Valve submits this letter under a full reservation of rights, as the arbitrations should be closed because there is no arbitration agreement and therefore the AAA does not have jurisdiction over these matters.

Sincerely,

*/s/* Michael W. McTigue Jr.

Michael W. McTigue Jr.

cc:    All counsel of record

(w/encls.)

---

[8]    Claimants' Counsel's pursuit of arbitrations on behalf of a substantial number of individuals also purportedly represented by Bucher Law is particularly egregious considering that Siri & Glimstad is co-counsel in both mass arbitrations (and thus there is no reason for them not to have investigated these issues).

# EXHIBITS

# INTENTIONALLY OMITTED

# EXHIBIT 13

**From:** AAA Yesenia Franquiz <YeseniaGaviria@adr.org>
**Sent:** Friday, February 6, 2026 2:03 PM
**To:** McInerney, Colm P (NYC) <Colm.McInerney@skadden.com>; AAA Yesenia Franquiz <YeseniaGaviria@adr.org>; Gmason@masonllp.com
**Cc:** Gloria Martinez <gmartinez@sirillp.com>; mgribble@masonllp.com; mbarney@sirillp.com; kent.williams@sirillp.com; jeisenberg@masonllp.com; tbell@masonllp.com; dperry@masonllp.com; McTigue Jr., Michael W (NYC) <Michael.McTigue@skadden.com>; Slawe, Meredith C (NYC) <Meredith.Slawe@skadden.com>; aaafiling@valvesoftware.com; aaafiling@valvesoftware.com; AAAFiling@valvesoftware.com
**Subject:** [Ext] RE: Jason Irias v. Valve Corporation - Case 01-24-0001-4404
**Importance:** High

Good Afternoon Parties,

We are in receipt of Respondent's attached correspondence and will make same a part of the case file.

Please be advised that the determination that this matter be administered under the Consumer Division still stands.

Any contentions with respect to the attached should be raised to the arbitrator once one has been appointed to the file.

Furthermore, we remind the parties that any correspondence to the AAA should include a copy to opposing counsel.

Respectfully,




**AAA Yesenia Franquiz**
Manager of ADR Services

American Arbitration Association
120 Broadway, 21st Floor, New York, NY 10271
**T:** 212 484 4162 **E:** YeseniaGaviria@adr.org
adr.org | icdr.org | aaaicdrfoundation.org
**Explore 100 Years of AAA**

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, discl distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immedia reply email and destroy all copies of the transmittal. Thank you.

# EXHIBIT 14

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK, NY 10001

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
————
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
212-735-3529
DIRECT FAX
917-777-3529
EMAIL ADDRESS
MICHAEL.MCTIGUE@SKADDEN.COM

February 27, 2026

**<u>VIA ELECTRONIC MAIL</u>**

Yesenia Franquiz
Manager of ADR Services
American Arbitration Association
120 Broadway, 21st Floor
New York, New York 10271
YeseniaGaviria@adr.org

RE:         *Jason Irias v. Valve*, Case No. 01-24-0001-4404

Dear Ms. Franquiz:

We write on behalf of Respondent Valve Corporation ("Valve") to request that the AAA, in accordance with its rules, suspend administration of the above-referenced matter because Valve has filed an action in federal court to enjoin the arbitration.

On January 28, 2026, the AAA sent the Initiation Letter for this arbitration to the parties, stating that "the filing requirements have been met" and indicating that it would proceed with administration.

For the reasons set forth in Valve's February 3, 2026, letter (attached as Ex. 1), the AAA should not proceed with Claimant's arbitration, including because (i) there is no arbitration agreement between the parties and (ii) Claimant's counsel, Mason LLP, is simultaneously pursuing relief purportedly on behalf of Claimant in several court actions against Valve—a motion for sanctions brought by another of Mason's mass arbitration claimants purportedly on behalf of Claimant and 14,910 other claimants and (ii) a putative class action purportedly on behalf of a nationwide class that would include Claimant, although Valve contends that no class could be certified. However, the AAA declined to cease administration. (Ex. 2.)

Accordingly, on February 27, 2026, Valve commenced a court action in the United States District Court for the Western District of Washington against Claimant, captioned as *Valve Corporation v. Irias*, No. 2:26-cv-00698 (W.D. Wash. filed Feb. 27, 2026), to enjoin him from

Yesenia Franquiz, Manager of ADR Operations
February 27, 2026
Page 2

continuing to pursue his arbitration because there is no agreement to arbitrate between the parties. Valve's Complaint is attached hereto as Exhibit 3.

Pursuant to the AAA's Consumer Arbitration Rules ("Consumer Rules") and procedures, the AAA is required to suspend administration because Valve has provided the AAA with documentation that it has sought judicial intervention to enjoin this arbitration within 30 days of the AAA's commencement of administration.

*        *        *

Valve submits this letter under a full reservation of rights, as the arbitrations brought by Claimant's counsel—including the present case—should be closed because there is no arbitration agreement and therefore the AAA does not have jurisdiction over these matters.

Sincerely,

/s/ *Michael W. McTigue Jr.*

Michael W. McTigue Jr.

cc:      All counsel of record

(w/encls.)

2

# EXHIBITS
# INTENTIONALLY OMITTED

# EXHIBIT 15

| | |
|---|---|
| **From:** | AAA Yesenia Franquiz <YeseniaGaviria@adr.org> |
| **Sent:** | Tuesday, March 10, 2026 12:45 PM |
| **To:** | McInerney, Colm P (NYC); AAA Yesenia Franquiz; Gmason@masonllp.com |
| **Cc:** | tbell@masonllp.com; dperry@masonllp.com; jeisenberg@masonllp.com; 'jsuhr@masonllp.com'; 'theath@masonllp.com'; kent.williams@sirillp.com; mbarney@sirillp.com; 'gmartinez@sirillp.com'; McTigue Jr., Michael W (NYC); Slawe, Meredith C (NYC); Tavakoli, Shaud G (NYC); Fuchs, Andrew J (HOU); AAAFiling@valvesoftware.com |
| **Subject:** | [Ext] RE: Jason Irias v. Valve, Case No. 01-24-0001-4404 |
| **Attachments:** | (02.27.2026) Letter from M. McTigue to the AAA.pdf |

Good Afternoon Parties,

In light of the attached and in accordance with R-2 of the Consumer Rules, this file will be placed in abeyance for 90 days.

We will issue a formal notice to the parties shortly.

Respectfully,




**AAA Yesenia Franquiz**
Manager of ADR Services

American Arbitration Association
120 Broadway, 21st Floor, New York, NY 10271
**T:** 212 484 4162 **E:** YeseniaGaviria@adr.org
adr.org | icdr.org | aaaicdrfoundation.org
**Explore 100 Years of AAA**

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disc[l] distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immedia[te] reply email and destroy all copies of the transmittal. Thank you.

**From:** McInerney, Colm P <Colm.McInerney@skadden.com>
**Sent:** Friday, February 27, 2026 5:56 PM
**To:** AAA Yesenia Franquiz <YeseniaGaviria@adr.org>
**Cc:** Gmason@masonllp.com; tbell@masonllp.com; dperry@masonllp.com; jeisenberg@masonllp.com; 'jsuhr@masonllp.com' <jsuhr@masonllp.com>; 'theath@masonllp.com' <theath@masonllp.com>; kent.williams@sirillp.com; mbarney@sirillp.com; 'gmartinez@sirillp.com' <gmartinez@sirillp.com>; McTigue Jr., Michael W <Michael.McTigue@skadden.com>; Slawe, Meredith C <Meredith.Slawe@skadden.com>; Tavakoli, Shaud G <Shaud.Tavakoli@skadden.com>; Fuchs, Andrew J <Andrew.Fuchs@skadden.com>; AAAFiling@valvesoftware.com
**Subject:** Jason Irias v. Valve, Case No. 01-24-0001-4404

**\*\*\* External E-Mail – Use Caution \*\*\***

Ms. Franquiz,

Please see the attached letter sent on behalf of Valve regarding the above-referenced matter.

1



Northeast Case Management Center
Jonathan Weed
Assistant Vice President
1301 Atwood Avenue
Johnston, RI 02919
Telephone: (866)293-4053

March 10, 2026

Gary E. Mason, Esq.
Mason, LLP
5335 Wisconsin Avenue NorthWest
Suite 640
Washington, DC 20016
Via Email to: Gmason@masonllp.com

Michael W. McTigue, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
One Manhattan West
New York, NY 10001
Via Email to: michael.mctigue@skadden.com

Case Number: 01-24-0001-4404

Jason Irias
-vs-
Valve Corporation

Dear Parties:

The American Arbitration Association (AAA) has placed this matter in abeyance.

Please be advised that the AAA's policy is to hold cases in abeyance for one year. This case may be kept in abeyance beyond that period, provided that an abeyance fee payment of $500 is remitted to AAA to cover the administrative expense of continued tracking such cases. The AAA will request this fee after this case has been inactive for eleven (11) months.

Sincerely,
/s/
Yesenia Franquiz
Manager of ADR Services
Direct Dial: (401)414-5403
Email: YeseniaGaviria@adr.org

cc:
Mason A. Barney, Esq.
Taylor L. Heath
Theodore B. Bell, Esq.
Jenni Suhr
Jacob Eisenberg, Esq.
Kent M. Williams, Esq.
Gloria Martinez
Meredith Slawe, Esq.
Christopher Schenck, Esq.
Gavin Skok
Colm P. McInerney, Esq.
Danielle L. Perry, Esq.
Jessica Painley

# EXHIBIT 16

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| Individual Claimants,<br><br>     Claimants,<br><br>  v.<br><br>Valve Corporation,<br><br>     Respondent. | Case No. 01-23-0005-8578 |

<u>ORDER OF PROCESS ARBITRATOR</u>

  The arbitrations that are subject to this Order were commenced by Claimants in April 2024. The Process Arbitrator has been appointed by the parties pursuant to Respondent's Steam Subscriber Agreements that the parties entered into and the Mass Arbitration Supplementary Rules of the American Arbitration Association ("AAA"). Having been duly sworn; and having duly heard the proofs and allegations of Claimants, represented by Mason LLP and Siri & Glimstad LLP, and Respondent, represented by Skadden, Arps, Slate, Meagher & Flom LLP; do hereby Order as follows:

1

Procedural Background

Claimants' counsel made four mass AAA arbitration filings against Respondent, totaling 19,911 claimants – three in December 2023 and one in April 2024.

The Process Arbitrator was appointed by the AAA on or about October 23, 2025. The appointment is solely with respect to the fourth mass arbitration filing in April 2024 on behalf of 5,000 Claimants (the "April 2024 Arbitrations"). The Process Arbitrator has been asked to rule on the following administrative issues:

1. Respondent has asked the Process Arbitrator to determine whether the April 2024 Arbitrations should be closed or stayed pending a determination by a court regarding which of two separate Steam Subscriber Agreements applies to the April 2024 Arbitrations.

2. Claimants have asked the Process Arbitrator to determine whether the AAA 2023 Mass Arbitration Supplementary Rules ("2023 MA Rules") or AAA 2024 Mass Arbitration Supplementary Rules ("2024 MA Rules") apply to the April 2024 Arbitrations.

The Emergency Arbitrator conducted a preliminary video conference with counsel for the parties on November 11, 2025, during which a briefing schedule was agreed upon. Thereafter, Claimants filed with the AAA Claimants' Brief on the Applicable AAA Mass Arbitration Supplementary Rules, dated December 12, 2025; Claimants' Opposition to Respondent Valve Corporation's Request to Close or Stay the Arbitrations, dated January 9, 2026; and Claimants' Reply Brief on the Applicable AAA Mass Arbitration Supplementary Rules, dated January 26, 2026.

Respondent filed with the AAA Respondent Valve Corporation's Memorandum of Law in support of its Request that the Arbitrations be Closed or Stayed, dated December 12, 2025; Respondent Valve Corporation's Response to Claimants' Brief on the applicable AAA Mass Arbitration Supplementary Rules, dated  January 9, 2024; and Respondent Valve Corporation's Reply Memorandum of Law in further support of its Request that the Arbitrations be Closed or Stayed, dated January 26, 2026.

Factual Summary

The Parties

Respondent Valve Corporation is, among other things, a developer and owner of Steam, a digital video game distribution platform. In 2003, Respondent launched Steam to distribute and update its own video games. By 2005, Respondent expanded Steam's capabilities to allow third parties to market and distribute their video games through Steam. Steam currently has tens of thousands of game developers and publishers using the platform to distribute more than 100,000 games and engage with millions of players worldwide. Gamers rely on Steam to purchase and play video games from Respondent and other publishers and to connect with fellow players and game developers. Claimants are 5,000 individuals who are Steam users.

The Steam Subscriber Agreement

To become a Steam user, one must first create a Steam account and agree to Respondent's Steam Subscriber Agreement ("SSA"). Therefore, as Steam users, Claimants were required to agree to an SSA.

In arbitrations that preceded the filing of the April 2024 Arbitrations, in which claims were asserted that are the same or similar to the claims asserted in the April 2024 Arbitrations,

3

rulings were made by merits arbitrators that the agreement to arbitrate that was in the SSA and in effect in 2023 (the "2023 SSA") was unenforceable.

Thereafter, on or about September 26, 2024, Respondent amended the 2023 SSA (the "2024 SSA"). In the 2024 SSA, Valve removed the arbitration agreement and class action waiver. Instead, the 2024 SSA requires that all disputes arising out of the 2024 SSA be resolved exclusively in courts in King County, Washington State.

It is not contested that Respondent provided notice that the 2023 SSA was amended and replaced by the 2024 SSA -- in an email to Steam users, an in-app pop-up notification, and a notice on Respondent's website ("This updated Steam Subscriber Agreement will become effective immediately when you agree to it, including when you make more purchases, fund your Steam wallet, or otherwise accept it. Otherwise, the updated Steam Subscriber Agreement will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then.") [Valve Ex. 13] Steam users accepted the 2024 SSA by checking a box labeled "I agree to the Updated Steam Subscriber Agreement" and clicking "Accept Updated SSA" when prompted, making purchases, or funding their Steam wallet.

Accordingly, Claimants have accepted the 2024 SSA either by affirmatively accepting the 2024 SSA or continuing to use their Steam accounts on or after November 1, 2024. Regarding any Claimant who has not logged on to Steam since November 1, 2024, Respondent has represented that it is prepared to continue with the April 2024 Arbitrations.

Analysis and Discussion

Applicable Law and Rules

Section 10 of the 2023 SSA and 2024 SSA provide that they shall be governed by the laws of the State of Washington.

4

Section 11 of the 2023 SSA provides, in relevant part: "YOU AND VALVE AGREE TO RESOLVE ALL DISPUTES AND CLAIMS BETWEEN US IN INDIVIDUAL BINDING ARBITRATION."

Section 8B of the 2023 SSA provides for its unilateral amendment:

Valve may amend this Agreement . . . unilaterally at any time in its sole discretion. In this case, you will be notified by e-mail of any amendment to this Agreement made by Valve at least 30 (30) before the effective date of the amendment. . .. Your failure to cancel your Account prior to the effective date of the amendment will constitute your acceptance of the amended terms. If you don't agree to the amendments or to any of the terms in this Agreement, your only remedy is to cancel your Account or to cease use of the affected Subscription(s).

Section 10 of the 2024 SSA provides, in relevant part: "You and Valve agree that all disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction." Section 11 of the 2024 SSA includes a merger clause, which states: "This Agreement . . . constitutes and contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior oral or written agreements."

The 2023 MA Rules state, in relevant part: "Only administrative issues may be submitted to the Process Arbitrator for determination. Administrative issues include . . . iii. determining the applicable AAA rules that will govern the individual disputes . . . v. any other administrative issue arising out of the nature of the Mass Arbitration." 2023 MA Rules 6(d)(iii), (v).

The 2024 MA Rules state, in relevant part: "The Process Arbitrator shall have the authority to determine the following issues: . . . vi. Determining the applicable AAA-ICDR Rules that will govern the individual disputes; . . . ix. Whether subsequently filed cases are part of the

5

same mass arbitration. . . . xi. Any other non-merits issues affecting case administration arising out of the nature of the mass arbitration that the Process Arbitrator determines is appropriate for determination[.]" 2024 MA Rules 6(c)(vi), (ix), (xi).

Does the 2023 SSA or 2024 SSA apply to the April 2024 Arbitrations

On the issue of whether the 2023 SSA or 2024 SSA applies to the April 2024 Arbitrations, Claimants argue that the 2023 SSA applies and that the determination of such issue is for the arbitrator.

In contrast, Respondent argues that the issue of whether the 2023 SSA or 2024 SSA applies is for a court to decide, not an arbitrator. Respondent relies upon the United States Supreme Court case, *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024). The issue before the Court in *Coinbase* was "the question of who -- a judge or an arbitrator -- should decide whether a subsequent contract supersedes an earlier arbitration agreement that contains a delegation clause." *Coinbase*, 602 U.S. at 147.

The Court stated in *Coinbase* that, where there are two competing agreements, one with an arbitration clause and one without such clause, "a court must decide which contract governs. To hold otherwise would be to impermissibly "'elevate a [delegation provision] over other forms of contract.'"" 602 U.S. at 152 (citations omitted). Thus, the Court reached this conclusion even though the arbitration clause at issue contained a delegation clause broadly delegating questions of arbitrability to the arbitrator. The Court found that delegation cannot override a court's authority to determine which contract controls. The Court's rationale is rooted in the foundational principle that arbitration is a matter of contract and consent, and parties are bound to arbitrate only if they have agreed to do so. "[B]efore either the delegation provision or the

6

forum selection clause can be enforced, a court needs to decide what the parties have agreed to - i.e., which contract controls." 602 U.S. at 145.

In approximately two years since *Coinbase* was decided, lower federal courts have adopted its holding. In *Pilon v. Discovery Communications, LLC*, 769 F. Supp. 3d 273, 291 (S.D.N.Y. 2025), the court held that "where . . . parties have agreed to two contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs." (quoting *Coinbase*, 602 U.S. at 152); *Tachi-S Eng'g U.S.A., Inc. v. Canoo Techs. Inc.*, No. 24-1291, 2025 WL 253046, at *5 (6th Cir. Jan. 21, 2025) (applying *Coinbase* in affirming denial of motion to compel arbitration; removal of an arbitration provision in a subsequent contract applied retroactively to an action under the first contract); *Williams v. Experian Info. Sols. Inc.*, No. CV-23-01076-PHX-DWL, 2024 WL 3876171, at *16 (D. Ariz. Aug. 20, 2024) ("[T]he delegation clause in the April 2016 Arbitration Agreement does not preclude the Court from determining whether that version of the arbitration agreement was later superseded by the February 2023 Arbitration Agreement."). Respondent asserts that these decisions confirm that the court's authority to decide whether the parties agreed to arbitrate is not displaced by an arbitration or delegation clause in a prior agreement.

Claimants assert that, in contrast to *Coinbase*, where separate competing agreements were at issue, this case presents different versions of the same agreement. However, the Court in *Coinbase* held without qualification that "a court, not an arbitrator, must decide whether the parties' first agreement was superseded by their second." *Coinbase*, 602 U.S. at 152. A court "has the authority to enjoin arbitration proceedings where there is no valid, enforceable arbitration agreement between the parties." *Morgan Stanley & Co. v. Couch*, 134 F. Supp. 3d 1215, 1234

7

(E.D. Cal. 2015), *aff'd*, 659 F. App'x 402 (9th Cir. 2016). The fact that the parties dispute

whether an amendment to an arbitration provision is applicable to claims does not affect the

court's exclusive authority to determine which agreement controls. In *Pilon v. Discovery*

*Communications, LLC*, the Court found that the relevant petitioner's assent to Discovery's

updated terms by clicking through a pop-up and continuing to use the Discovery service

"extinguishes any right he once had under the delegation clause" of the prior agreement, even

though his claims had already accrued. 769 F. Supp. 3d at 292. That was so even though

petitioner's claims had been noticed and already accrued prior to the amendment:

> Though the parties dispute whether a modification applicable to accrued contract claims is enforceable, that dispute does not extend to a subsequent forum-selection clause that supersedes a delegation clause. That is because the arbitrability decision is not a *claim* that *accrues*, but merely a forum-selection determination based on the scope of an agreement to arbitrate.

769 F. Supp. 3d 273 at 292 n.4.

Claimants argue that, if Respondent's approach is accepted, any company could compel

arbitration, wait for claims to accrue, see how the arbitration proceeds, and then delete arbitration

clauses in the operative agreement to escape liability and force a claimant to start over again in

another forum. In this regard, Claimants argue that Respondent regards *Coinbase* as an open

ticket to derail arbitrations at any stage, even after an arbitrator has rendered a decision on the

merits, thereby making arbitration agreements illusory and upsetting mass arbitration

administration nationwide. However, Claimants' argument does not account for the fact that

Claimants (with limited exceptions) accepted the 2024 SSA through their acts described above.

The question of which agreement governs is not an administrative or case management

issue, but rather a substantive, threshold question of contract law. *Bassidji v. Goe*, 413 F.3d 928,

936 (9th Cir. 2005) ("The question whether a particular agreement is enforceable is one of

substance, not procedure.").

The Process Arbitrator's role is expressly limited to resolving administrative, i.e., non-merits, issues enumerated in AAA MA Rule 6. In this matter, the AAA has confirmed that the Process Arbitrator's function is confined to addressing administrative issues. Accordingly, determining whether the 2023 SSA or 2024 SSA governs is a question outside the Process Arbitrator's authority under the 2023 MA Rules and 2024 MA Rules.

However, the Process Arbitrator does have authority under the AAA MA Rules to direct that the AAA stay the April 2024 Arbitrations until a court determines which SSA applies. In this case, the Process Arbitrator finds that a court must rule on whether the 2023 SSA or 2024 SSA governs the April 2024 Arbitrations and stays the April 2024 Arbitrations until such ruling is made.

<u>Which AAA Rules apply to the April 2024 Arbitrations</u>

In a letter, dated May 7, 2024, the AAA confirmed:

Upon review of the documents submitted in the above-referenced matters, the AAA has determined that these disputes [the April 2024 Arbitrations] will be administered in accordance with the AAA's Mass Arbitration Supplementary Rules, as effective April 1, 2024, in conjunction with the Consume Arbitration Rules. The Consumer Mass Arbitration and Mediation Fee Schedule, as effective January 15, 2023, will also apply to these matters. We note that this is the result of AAA's initial review, and is subject to review by a Process Arbitrator.

Claimants request that the Process Arbitrator review this AAA determination.

Claimants assert that the April 2024 Arbitrations are part of the mass arbitration started in 2023, even though they were not filed simultaneously, because they involve the same claims against Respondent as the claims brought by the same counsel in 2023. Claimants point out that MA Rule 1(c) states: "These Supplementary Rules apply whenever 25 or more similar Demands for Arbitration are filed, whether or not such cases are filed simultaneously." Thus, Claimants

9

argue that any group of cases that satisfies the standard set by MA Rule 1(b) is a mass arbitration, even when cases are not all filed at the same time. Since the April 2024 Arbitrations are part of the same mass arbitration started in 2023, they should all be governed by the 2023 MA Rules.

In response, Respondent argues that the 2024 MA Rules apply to the April 2024 Arbitrations because: (1) the 2024 Rules were in effect when Claimants commenced the April 2024 Arbitrations; and (2) Claimants' Counsel confirmed the understanding that the 2024 MA Rules apply to the April 2024 Arbitrations by enclosing an attorney affirmation attesting to the truth and correctness of the information contained in each of the April 2024 Arbitrations, which the 2024 MA Rules require but the 2023 MA Rules do not. More specifically, Respondent points out that an amendment to the 2023 MA Rules was to add a requirement that every mass submission "must include an affirmation that the information provided for each individual case is true and correct to the best of the representative's knowledge." 2024 MA Rules, MA-2.

Neither the 2023 MA Rules nor the 2024 MA Rules require that all arbitrations submitted in a mass arbitration be subject to the same set of rules. Nor is there language in the 2023 MA Rules or 2024 MA Rules that provides for segregating a group of claims that meet the definition of mass arbitration under MA Rule 1(b).

The AAA has confirmed that the 2024 MA Rules were in effect at the time the April 2024 Arbitrations commenced and determined that the 2024 MA Rules apply to the April 2024 Arbitrations. The Process Arbitrator agrees with the determination of the AAA and determines that the 2024 MA Rules apply.

Conclusion

Based on the forgoing, the Process Arbitrator makes the following Order:

1. The April 2024 Arbitrations are stayed pending resolution by a court of the issue of whether the 2023 SSA or 2024 SSA governs the April 2024 Arbitrations.

2. The AAA 2024 Mass Arbitration Supplementary Rules apply to the April 2024 Arbitrations.

February 9, 2026

David C. Singer, Process Arbitrator

I, David C. Singer, do hereby affirm upon my oath as Process Arbitrator that I am the individual described in and who executed this instrument, which is the Order of Process Arbitrator.

February 9, 2026

David C. Singer, Process Arbitrator

11

# EXHIBIT 17

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

**COGENCY GLOBAL INC.**
**115 North Calhoun Street, Suite #4**
**Tallahassee, FL 32301**

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| MASON LLP | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5335 WISCONSIN AVE., N.W., SUITE 640 | WASHINGTON | DC | 20015 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BENCH WALK 22M, L.P. | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 123 JUSTISON ST., 7TH FLOOR | WILMINGTON | DE | 19801 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

COLLATERAL AS DEFINED IN THE AGREEMENT BETWEEN DEBTOR AND SECURED PARTY.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
43915-137363; FILE IN WASHINGTON, D.C.

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

**EXHIBIT 18**

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO:    (Name and Address)

    COGENCY GLOBAL INC.
    115 N. CALHOUN ST, STE 4
    TALLAHASSEE, FL 32301

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
**2023057583 FILED ON 7/10/2023**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Part(y)(ies) authorizing this Termination Statement

3. ☐ ASSIGNMENT:  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9; check ASSIGN Collateral box in Item 8 and describe the affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5.    PARTY INFORMATION CHANGE:

Check one of these two boxes:                    AND  Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8.    COLLATERAL CHANGE:    Check only one box:    ☐ ADD collateral    ☐ DELETE collateral    ☑ RESTATE covered collateral    ☐ ASSIGN* collateral

Indicate collateral:    *Check ASSIGN COLLATERAL only if the assignee's power to amend the record is limited to certain collateral and describe the collateral in Section 8

## SEE EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME **BENCH WALK 22M, L.P.** | | | |
|---|---|---|---|
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**FILE IN WASHINGTON DC - 43915-137363**    Debtor: Mason LLP

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 07/01/23)

**EXHIBIT A**
**TO**
**UNIFORM COMMERCIAL CODE FINANCING STATEMENT**

**Debtor: Mason LLP**

**Secured Party: Bench Walk 22m, L.P.**

The Collateral includes any and all right, title or interest of Debtor in or to any and all of the following assets, rights and properties now owned or at any time hereafter acquired by Debtor or in which Debtor now has or at any time in the future may acquire any right, title or interest:

    (a) the Proceeds;

    (b) any funds in the Debtor's Segregated Account or the Deposit Account; and

    (c) to the extent not otherwise included, all proceeds (as defined in the UCC) of any and all of the foregoing.

The capitalized terms in the foregoing description of the Collateral, and certain capitalized terms used in defining those capitalized terms, have the following meanings:

"Agreement" means that certain Litigation Funding Agreement, dated as of July 8, 2023, between Debtor and Secured Party, together with all schedules thereto, as amended from time to time in accordance with the terms thereof.

"Claims" means any and all claims asserted or to be asserted by Debtor on behalf of the Clients as more specifically described on Schedule 1 of the Agreement, whether such claims are asserted in mass arbitration, litigation or otherwise, including the same if transferred to any other jurisdictions or forums (arbitral, judicial or otherwise), together with (a) any and all claims, suits, causes of action, proceedings, and other rights relating to, or arising therefrom, (b) any and all appellate proceedings, proceedings on remand, and enforcement, ancillary, parallel or alternate dispute resolution proceedings and processes arising out of or related thereto, and (c) any additional cases, lawsuits, arbitration matters or other proceedings filed or initiated by or on behalf of the Clients or any of their affiliates based upon the same or substantially similar claims.

"Clients" means any persons represented by Debtor in the Claims.

"Debtor" means Mason LLP.

"Debtor's Segregated Account" means that certain deposit account described on Schedule 1 of the Agreement as the "Firm's Segregated Account."

"Deposit Account" means a deposit account, or similar account, held with a bank in the United States selected by Debtor and reasonably acceptable to Secured Party, into which the Deposit Account Administrator shall ensure that all Proceeds (including settlements and awards) are deposited and distributed in accordance with the terms and conditions set forth in the Agreement.

"Deposit Account Administrator" means a party selected by Debtor and reasonably acceptable to Secured Party to manage and control the Deposit Account in accordance with the terms and conditions of the Transaction Documents.

LP 24988684.2 \ 43915-137363

"Proceeds" means any receipt of money, financial gain or non-monetary value by Debtor or a related party in connection with the Claims. Proceeds will include, without limitation, any payments for legal fees or the reimbursement of costs and expenses, and any payments to Debtor under an insurance policy in connection with the Claims.

"Secured Party" means Bench Walk 22m, L.P.

"Transaction Documents" means the Agreement, the retainer or other fee agreements between Debtor and the Clients, the Co-Counsel Agreements, and any other ancillary or related document stipulated and agreed to by Secured Party and Debtor from time to time.

"UCC" means the Uniform Commercial Code as in effect on the date of the Agreement in the State of New York.

Any capitalized terms used herein and not otherwise defined shall have the meanings assigned thereto in the Agreement.

2

# EXHIBIT 19

206246

2023 APR -6 PM 4:30

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

> DRAWDOWN - 26

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BUCHER LAW PLLC | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 350 NORTHERN BOULEVARD, SUITE 324-1519 | ALBANY | NY | 12204 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | |
|---|---|---|---|---|
| | | PLLC | NEW YORK | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| BENCH WALK 22M, L.P. | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 123 JUSTISON STREET, 7TH FLOOR | WILMINGTON | DE | 19801 | USA |

4. This FINANCING STATEMENT covers the following collateral:

COLLATERAL AS DESCRIBED ON EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional]   ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

NY SOS

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## FILING NUMBER: 202304060119859

EXHIBIT 6
TO

2023 APR -5  PM 1: 30

# UNIFORM COMMERCIAL CODE FINANCING STATEMENT

**Debtor: Bucher Law PLLC**
**Secured Party: Bench Walk 22m, L.P.**

The Collateral includes any and all right, title or interest of the Debtor in or to any and all of the following assets, rights and properties now owned or at any time hereafter acquired by the Debtor or in which the Debtor now has or at any time in the future may acquire any right, title or interest:

(a)    the Proceeds;

(b)    the Claims;

(c)    all documents of title, chattel paper and instruments pertaining to the Claims, and a true and correct copy of the Debtor's books, Records, files, correspondence, evidentiary materials and records pertaining to the Claims, all of which are stipulated as accurate by the Debtor;

(d)    rights under any appeal bond or similar instrument posted by any of the defendants in the Claims; and

(e)    to the extent not otherwise included, all proceeds (as defined in the UCC) of any and all of the foregoing.

The capitalized terms in the foregoing description of the Collateral, and capitalized terms used in defining those capitalized terms, have the following meanings:

*"Agreement"* means the Litigation Funding Agreement, dated as of April 5, 2023, by and between the Debtor and the Secured Party, together with all schedules and exhibits thereto, as amended from time to time in accordance with the terms thereof.

*"Claims"* means any and all claims asserted or to be asserted by the Debtor on behalf of the Clients against Valve Corporation, any of its respective affiliates or representatives, or any other party in connection with the Steam Subscriber Agreement, and any related antitrust violations alleged to have been committed by Valve Corporation, any of its respective affiliates or representatives, or any other party, whether such claims are asserted in mass arbitration, litigation or otherwise, including the same if transferred to any other jurisdictions or forums (arbitral, judicial or otherwise), together with (a) any and all claims, suits, causes of action, proceedings, and other rights relating to, or arising therefrom, (b) any and all appellate proceedings, proceedings on remand, and enforcement, ancillary, parallel or alternate dispute resolution proceedings and processes arising out of or related thereto, and (c) any additional cases, lawsuits, arbitration matters or other proceedings filed or initiated by or on behalf of the Clients or any of their affiliates based upon the same or substantially similar claims.

*"Clients"* means any persons represented by the Debtor in the Claims.

*"Debtor"* means Bucher Law PLLC.

LP 22335095.1 \ 43915-135894

206245

2023 APR -6 PM 4:30

*"Proceeds"* means any receipt of money, financial gain or non-monetary value by the Debtor or a related party in connection with the Claims. Proceeds will include, without limitation, any payments for legal fees or the reimbursement of costs and expenses, and any payments to the Debtor under an insurance policy in connection with the Claims. Where Proceeds are in a form other than cash, (a) the Secured Party will determine, with reasonable consideration of input from the Debtor, the present value of the non-cash Proceeds in good faith for the purposes of calculating the Profit Share due to the Secured Party, and (b) the Debtor shall take all actions necessary to cause the monetization of all such non-cash Proceeds, to obtain the cash value of such non-cash Proceeds as soon as practicable, and to cause the payment of the cash Proceeds received in accordance with the Agreement.

*"Records"* shall have the meaning assigned to such term in the UCC.

*"Secured Party"* means Bench Walk 22m, L.P.

*"UCC"* means the Uniform Commercial Code as in effect on the date of the Agreement in the State of New York or, in relation to the perfection or priority of a security interest, the Uniform Commercial Code that then governs under the choice of law rules applicable to questions of perfection or priority.

Any capitalized terms used herein and not otherwise defined shall have the meanings assigned thereto in the Agreement.

LP 22335095.1 \ 43915-135894