THE HON. JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

                        Plaintiff,

            v.

JASON IRIAS,

                        Defendant.

Case No. **2:26-cv-00698-JNW**

**DEFENDANT'S REPLY IN SUPPORT
OF MOTION TO DISMISS**

**NOTE ON MOTION CALENDAR:**
May 6, 2026

**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
 Tel: (929) 220-2759

**TABLE OF CONTENTS**

PAGE

ARGUMENT ............................................................................................................. 1

I.    Valve's Pleading-Stage Shield Does Not Insulate Legally Deficient Claims. .................... 1

II.   A Single, Passive Log-In Does Not Constitute Consent to the Current SSA. .................... 2

    A.    Valve's Opposition Ignores Its Own Terms' Distinction Between Account Access and Subscription Use. ....................................................... 2

    B.    The Cases Valve Cites Are Distinguishable. ............................................. 4

III.  The Survivorship Clause Preserves the Duty to Arbitrate. .............................................. 5

IV.   Valve's Unilateral Removal of the Arbitration Clause Violates the Implied Covenant of Good Faith and Fair Dealing. ........................................... 6

V.    The Current SSA Is Unconscionable as Applied to Mr. Irias. ............................................ 7

VI.   Equitable Estoppel Bars Valve's Claims. .............................................................. 9

VII.  Valve's All-Writs Act Claim Fails. ....................................................................... 9

VIII. The FAA Prohibits Mid-Arbitration Judicial Interference. ............................................. 11

CONCLUSION ......................................................................................................... 11

DEF.'S REPLY IN SUPPORT
OF MOT. TO DISMISS
CASE NO. 2:26-CV-00698-JNW

ii

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

**TABLE OF AUTHORITIES**

PAGE(S)

**CASES**

*Adkins v. Nestle Purina PetCare Co.*,

   779 F.3d 481 (7th Cir. 2015). .............................................................................. 10

*Aerojet-General Corp. v. Am. Arb. Ass'n*,

   478 F.2d 248 (9th Cir. 1973). .............................................................................. 11

*Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*,

   645 F.3d 522 (2d Cir. 2011)................................................................................... 5

*Ashcroft v. Iqbal*,

   556 U.S. 662 (2009)............................................................................................... 1

*Bassett v. Elec. Arts Inc.*,

   No. 13–CV–04208 (MKB)(SMG), 2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015). ..................... 8

*Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*,

   671 F.3d 635 (7th Cir. 2011). .............................................................................. 11

*Cazares v. Pac. Shore Funding*,

   No. CV04-2548DSF(SSX), 2006 WL 149106 (C.D. Cal. Jan. 3, 2006). ................................. 7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,

   207 F.3d 1126 (9th Cir. 2000). ............................................................................ 10

*Cobb v. Ironwood Country Club*,

   233 Cal. App. 4th 960 (2015). ........................................................................... 6, 7

*Dasher v. RBC Bank (USA)*,

   745 F.3d 1111 (11th Cir. 2014). ........................................................................... 5

*Freeze v. McDermott*,

   No. C22-1844JLR, 2023 WL 3599585 (W.D. Wash. May 23, 2023). ...................................... 3

*Goggins v. Amazon.com Inc.*,

DEF.'S REPLY IN SUPPORT
OF MOT. TO DISMISS
CASE NO. 2:26-CV-00698-JNW

iii

**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

No. 2:24-cv-00257, 2025 WL 2782872 (W.D. Wash. Sept. 30, 2025). ................................... 4

*Grant v. T-Mobile USA, Inc.*,

No. 2:23-cv-01946-MJP, 2024 WL 3510937 (W.D. Wash. July 23, 2024). ............................ 5

*Heckman v. Live Nation Ent., Inc.*,

120 F.4th 670 (9th Cir. 2024). ........................................................................................ 8

*Ireland-Gordy v. Tile, Inc.*,

No. 25-403, 2026 WL 594859 (9th Cir. Mar. 3, 2026)........................................................... 4

*Luna v. Household Fin. Corp. III*,

236 F. Supp. 2d 1166 (W.D. Wash. 2002)............................................................................. 7

*Mundi v. Union Sec. Life Ins. Co.*,

555 F.3d 1042 (9th Cir. 2009). ........................................................................................ 9

*Negrete v. Allianz Life Ins. Co.*,

523 F.3d 1091 (9th Cir. 2008). ..................................................................................... 10

*Pilon v. Discovery Commc'ns, LLC*,

769 F. Supp. 3d 273 (S.D.N.Y. 2025).................................................................................. 4

*Ramos v. Citimortgage, Inc.*,

No. CIV. 08–02250 WBS KJM, 2009 WL 86744 (E.D. Cal. Jan. 8, 2009). ............................. 7

*Resnick v. Hyundai Motor Am., Inc.*,

No. CV 16–00593–BRO (PJWx), 2017 WL 1531192 (C.D. Cal. Apr. 13, 2017). .................... 3

*Sadlock v. Walt Disney Co.*,

No. 22-cv-09155-EMC, 2023 WL 4869245 (N.D. Cal. July 31, 2023). ................................... 4

*Smith v. Valve Corp.*,

No. 2:25-cv-01478-JNW (W.D. Wash.). ................................................................................ 9

*Sussex v. U.S. Dist. Ct. for the Dist. of Nev.*,

781 F.3d 1065 (9th Cir. 2015). ................................................................................... 10, 11

DEF.'S REPLY IN SUPPORT
OF MOT. TO DISMISS
CASE NO. 2:26-CV-00698-JNW

iv

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

*Teed v. Chen*,

No. 22-cv-02862-CRB, 2022 WL 16839496 (N.D. Cal. Nov. 9, 2022)..................................... 7

*Valve Corp. v. Bucher Law PLLC*,

34 Wash. App. 2d 727 (Wash. App. Div. 1 2025)................................................................ 9

*Welty v. Valve Corp.*,

No. 2:25-cv-02450-JNW (W.D. Wash.). ............................................................................. 9

*Wolfire Games, LLC v. Valve Corp.*,

No. 2:21-cv-00563-JCC, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021). ..................... passim

**STATUTES**

The All-Writs Act, 28 U.S.C. § 1651(a). ............................................................... 9, 10, 12

The Anti-Injunction Act, 28 U.S.C. § 2283. ................................................................. 10

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 9–11. .............................................. 10, 11, 12

**OTHER AUTHORITIES**

SUPERSEDE, Black's Law Dictionary (12th ed. 2024)................................................. 5

**RULES**

Fed. R. Civ. P. 12(b)(6).................................................................................... 1

DEF.'S REPLY IN SUPPORT
OF MOT. TO DISMISS
CASE NO. 2:26-CV-00698-JNW

v

**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

Valve's Opposition confirms what Defendant's opening brief established: Valve asks this Court to bless a corporate bait-and-switch of extraordinary proportions. Having spent years compelling consumers into binding arbitration—and prevailing on that very issue in *Wolfire*— Valve now seeks to strip Mr. Irias of his arbitration rights mid-proceeding by rewriting its form contract and deeming a single, passive log-in to be "consent."

Valve's Opposition does not and cannot change several dispositive facts. First, Mr. Irias's single log-in on December 11, 2025, more than year after Valve revised its Steam Subscriber Agreement (creating the "Current SSA"), involved no game play, no purchases, no wallet funding, and no engagement with Steam's Content and Services. Second, Valve's own notification email defined acceptance by reference to affirmative commercial conduct, not by mere log-in. Third, Mr. Irias had a two-year-old pending arbitration claim against Valve when Valve unilaterally attempted to strip his arbitration rights.

## ARGUMENT

### I.    Valve's Pleading-Stage Shield Does Not Insulate Legally Deficient Claims.

Valve's Opposition relies heavily on the proposition that all well-pleaded allegations must be accepted as true at the motion-to-dismiss stage. But this familiar refrain misses the point of Mr. Irias's motion. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even accepting every factual allegation in the Complaint as true, Valve's claims fail because the legal conclusions Valve draws from those facts are untenable. *Id*. ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

While Valve alleges that it sent an email that defines acceptance by reference to purchases and wallet funding (Compl., Dkt. No. 1 ¶¶ 34, 38), Valve also only alleges that Mr. Irias logged in once, without any purchase, gameplay, or other substantive activity. Dkt. No. 1 ¶ 44. Yet, Valve pleads that this single log-in stripped arbitration rights from a consumer with a pending two-year-

old arbitration. Dkt. No. 1 ¶¶ 4, 15, 24. These are the alleged facts. The question is whether they state a plausible claim. They do not.

## II.     A Single, Passive Log-In Does Not Constitute Consent to the Current SSA.

Valve argues that Mr. Irias's single log-in constitutes acceptance of the Current SSA and that there is nothing "'passive' about logging into a service." Opp. Br., Dkt. No. 24, pp. 11–13. This argument ignores both Valve's own contractual language and the law. The facts of a single log-in as alleged by Valve without more, show Mr. Irias has rejected the Current SSA.

### A.     Valve's Opposition Ignores Its Own Terms' Distinction Between Account Access and Subscription Use.

While Valve argues that "users manifest assent if they use a service after receiving notice of the updated terms," both the Current and Superseded SSA say otherwise.[1] The SSA dictates different requirements for accepting (or rejecting) mutual amendments to the agreement, Section 8.A, versus unilateral agreements, Section 8.B. Where Valve's Opposition discusses Mr. Irias's purported assent, Valve invokes Section 8.B's unilateral amendment framework. Dkt. No. 24, p. 13. Yet, in defense of its good faith and fair dealing, Valve argues strenuously that its revocation of the arbitration agreement was "mutual, not unilateral." Dkt. No. 24, pp. 15–16. Valve does not plausibly allege that Mr. Irias agreed to the Revised SSA under either section.

Section 8.A of Valve's SSA provides that the agreement may only be mutually amended if a user provides "explicit consent to changes proposed by Valve." Valve's only specific factual allegation of acceptance, that Irias logged into his Account once (Dkt. No. 1 ¶ 44), is far from an explicit expression of consent.

Section 8.B of Valve's SSA provides that "Valve may amend this Agreement . . . unilaterally at any time in its sole discretion. . . . If you don't agree to the amendments or to any of the terms in this Agreement, your only remedy is to cancel your Account *or to cease use of the*

---

[1] Any section numbers and language concerning Subscriptions, Content and Services, Accounts, and Unilateral Amendments cited herein are consistent between the Superseded SSA and Current SSA unless noted otherwise.

DEF.'S REPLY IN SUPPORT
OF MOT. TO DISMISS
CASE NO. 2:26-CV-00698-JNW

2

**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

*affected Subscription(s).*" (Emphasis added). Under Section 1.B of the SSA, "Subscriptions" are defined as "the rights to access and/or use any Content and Services accessible through Steam," where Content and Services include games, in-game content, and software. Section 1.C of the SSA indicates in multiple ways that a user's Account is a broader construct that encompasses their Subscriptions. For instance, "Your Account, including any information pertaining to it (e.g.: contact information…Account history and Subscriptions, etc.,), is strictly personal." The SSA thus contemplates that a user can maintain and access an Account without actively "using" their Subscriptions. Mr. Irias's single log-in, without playing any games or engaging in any transactions, represents mere access to his Account, not use of any Subscription or Content and Services. Valve's silence on this point is telling.

Nowhere in the Complaint does Valve even remotely allege that Mr. Irias continued to use any affected Subscription. Nor does Valve's Opposition even attempt to address that the plain terms of its SSA provide Subscribers with that option of rejecting its unilateral amendment by ceasing use of the affected subscription.[2] By failing to do so, Valve—fatally—concedes this point. *See Freeze v. McDermott*, 2023 WL 3599585, at *5 (W.D. Wash. May 23, 2023) (collecting cases and dismissing claims where defendant failed to substantively respond to arguments raised in a motion to dismiss); *Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 1531192, at *22 (C.D. Cal. Apr. 13, 2017) ("Failure to oppose an argument raised in a motion to dismiss constitutes waiver of that argument."). Because Valve does not plead any facts showing that Mr. Irias explicitly accepted the new SSA or continued use of his affected Steam Subscriptions, its claims fail as a matter of law. This deficiency independently requires dismissal of Counts I, II, and III.

Instead of acknowledging the actual terms of its contract, the SSA, Valve's Complaint and Opposition attempt to make the language of its email and banner notices appear binding. *See* Dkt.

---

[2] While Valve's Opposition does reference users' rights under the SSA to reject unilateral amendments, it does so only in support of its argument on the sufficiency of notice. Opp. at 10. Notably, Valve's Opposition cuts short a long block quote to omit the sentence that provides users the right to reject Valve's amendments by ceasing use of Subscriptions. The Opposition then goes on to summarize that sentence, but in a manner that conflates use of Subscriptions and Accounts.

DEF.'S REPLY IN SUPPORT
OF MOT. TO DISMISS
CASE NO. 2:26-CV-00698-JNW                    3                    **SIRI & GLIMSTAD LLP**
                                                                   400 S. 4th Street, Ste. 401
                                                                   Minneapolis, MN 55415
                                                                   Tel: (929) 220-2759

No. 24, pp. 9–11. But even if that were true, Valve's claim would fail. For example, Valve's own September 26, 2024, email notification specified that acceptance of the Current SSA would become effective when a user "make[s] most purchases, fund[s] [their] Steam wallet, or otherwise accept[s] it." Dkt. No. 1 ¶¶ 34, 38. The phrase "otherwise accept it" implies affirmative conduct analogous to making purchases or funding the Steam Wallet—a mere log-in to check one's account is none of these things. Valve cannot now expand the meaning of "use" beyond what its own notifications contemplated.

### B.   The Cases Valve Cites Are Distinguishable.

Every case Valve cites for the proposition that "continued use" constitutes assent involved substantive engagement with the service—not a mere log-in.

In *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *4 (9th Cir. Mar. 3, 2026), the Ninth Circuit held that plaintiffs "unambiguously manifested assent" through their "continued use of the Tile App." But the plaintiffs in *Tile* were actively using the app—not simply logging in once without engaging in any activity. In *Goggins v. Amazon.com Inc.*, 2025 WL 2782872, at *3, *6, *7 (W.D. Wash. Sept. 30, 2025), this Court enforced updated terms where the plaintiff accessed the Advantage homepage 138 times and continued to actively perform under the Advantage Program showing sustained engagement, not a single passive log-in. In *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 289–90 (S.D.N.Y. 2025), the court found assent where the user "continued to subscribe to and use" the service—again, substantive engagement, not a bare log-in. And in *Sadlock v. Walt Disney Co.*, 2023 WL 4869245 (N.D. Cal. July 31, 2023), the court noted that "emails plus continued use" could establish assent, *id*. at *11, but the "use" contemplated there involved actual consumption of the service's benefits. Not so, here, where the only alleged fact is that Mr. Irias logged in once to the platform.

None of the authorities relied upon by Valve supports the novel proposition that a single log-in—involving no game play, no purchases, no wallet funding, and no engagement whatsoever—constitutes the kind of "unambiguous" assent that Washington law requires. *See*

DEF.'S REPLY IN SUPPORT
OF MOT. TO DISMISS
CASE NO. 2:26-CV-00698-JNW

4

**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

*Grant v. T-Mobile USA, Inc.*, 2024 WL 3510937, at \*4 (W.D. Wash. July 23, 2024) (requiring "some action . . . that unambiguously manifests his or her assent"). Nor do any of Valve's opinions hold that a company may upend a pending arbitration by unilaterally eliminating the duty to arbitrate from its terms of service.

**III.    The Survivorship Clause Preserves the Duty to Arbitrate.**

Valve argues that the survivorship clause in Section 9.D of the Superseded SSA does not apply because the SSA was "amended" rather than terminated. Dkt. No. 24, pp. 13–15. But Valve's own language refutes this characterization. Section 11 of the Current SSA expressly states: "If you were a Subscriber before [September 26, 2024], [this Agreement] replaces and supersedes your existing agreement with Valve," and further that it "supersedes any prior oral or written agreements." Dkt. No. 1 ¶ 48. As *Black's Law Dictionary* confirms, "supersede" means to "annul, make void, or repeal by taking the place of." SUPERSEDE, Black's Law Dictionary (12th ed. 2024). By "replacing and superseding" the Superseded SSA, Valve did not merely "amend" it—Valve terminated it. This triggered the survivorship clause, which provides *inter alia* that the duty to arbitrate at § 11 of the prior SSA "will survive any expiration or termination of this Agreement." Superseded SSA § 9.D (Mason Decl. Ex. 1, Dkt. No. 28-1).

Valve's reliance on *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014), and *Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522 (2d Cir. 2011), is misplaced. Dkt. No. 24, pp. 14–15. In *Dasher*, the parties "expressed their clear and definite intent to execute" a new agreement. 745 F.3d at 1117. Here, the question is whether Mr. Irias expressed any such intent at all—and a single passive log-in without more does not qualify. In *Applied Energetics*, the Second Circuit dealt with sophisticated corporate parties who negotiated and executed a subsequent written agreement. 645 F.3d at 524–26. That is a far cry from a consumer whose sole alleged act of "assent" was logging into a platform once without engaging in any activity. Moreover, neither *Dasher* nor *Applied Energetics* involved a survivorship clause with the explicit

DEF.'S REPLY IN SUPPORT
OF MOT. TO DISMISS
CASE NO. 2:26-CV-00698-JNW

5

**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

breadth of Section 9(D), which preserves the arbitration obligation through "*any* expiration or termination" (emphasis added).

Valve's argument is also fundamentally circular. Valve contends that the survivorship clause does not apply because the Current SSA "replaces prior agreements in full." Dkt. No. 24, p. 1. But the enforceability of the Current SSA—and whether Mr. Irias agreed to it—is the very issue in dispute. One cannot rely on the enforceability of the successor agreement to defeat the survivorship clause when the enforceability of the successor agreement is itself contested. If the Current SSA is not enforceable against Mr. Irias (because a single passive log-in did not constitute assent), then the Superseded SSA—including its survivorship clause—remains operative.

**IV.   Valve's Unilateral Removal of the Arbitration Clause Violates the Implied Covenant of Good Faith and Fair Dealing.**

Valve contends that because the Complaint pleads a "mutual" amendment, the implied covenant is not implicated. Dkt. No. 24, pp. 15–17. But as demonstrated above, the instant motion challenges whether the alleged facts, without more, are a sufficient basis to establish "mutuality" as a matter of law. A single, passive log-in does not transform a unilateral corporate decision into a bilateral agreement.

Valve's attempt to distinguish *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015), by labeling the amendment here "mutual" is also circular. Dkt. No. 24, p. 17. Valve asserts the amendment was mutual because Mr. Irias agreed to it by logging in. Mr. Irias, however, contends that the log-in did not constitute assent pursuant to Section 8.B of the SSA. As noted above, Valve has failed to plead any non-conclusory facts showing any mutual agreement, and as such it cannot be assumed to avoid the implied covenant of good faith and fair dealing.

The questionable timing of this "amendment" raises serious good-faith concerns. As the *Cobb* court recognized, a party cannot in good faith change the rules of the game mid-proceeding to retroactively strip the opposing party of its chosen dispute resolution mechanism. *See* 233 Cal. App. 4th at 964–65. Valve amended the SSA only after (i) a single arbitrator (out of dozens) found

Def.'s Reply in Support
of Mot. to Dismiss
Case No. 2:26-cv-00698-JNW

6

**Siri & Glimstad LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

Valve's arbitration provision unenforceable solely as to four claimants in other arbitration cases (Dkt. No. 1 ¶¶ 11–12) and (ii) Valve faced pending mass arbitration claims from tens of thousands of consumers, all of whom are represented by legal counsel. Dkt. No. 1 ¶ 26. This was not a good-faith exercise of contractual discretion—it was a strategic ploy to avoid the consequences of Valve's previous legal maneuvering. Just as the *Cobb* defendant could not compel arbitration of claims already pending in court, Valve cannot compel litigation of claims already pending in arbitration.

**V.      The Current SSA Is Unconscionable as Applied to Mr. Irias.**

Under Washington law, either procedural or substantive unconscionability is independently sufficient to invalidate a contract. *Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1174 (W.D. Wash. 2002). Although Valve argues that unconscionability "generally cannot be raised as a proper argument on a motion to dismiss," (Dkt. No. 24, p. 18) the cases Valve cites for this proposition—*Cazares*, *Teed*, and *Ramos*—involved situations where a *plaintiff* asserted unconscionability as part of his own claim, requiring factual development. Here, Mr. Irias raises unconscionability as a *defense* to the enforceability of a contract that Valve seeks to impose.

Moreover, these cases are not pertinent because they involved financial transactions (commercial loans; investment management) analyzed under California statutory law providing that when a contract is alleged to be unconscionable, parties are afforded the "opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making its determination." *Ramos v. Citimortgage, Inc.*, 2009 WL 86744, at *7 (E.D. Cal. Jan. 8, 2009); *Cazares v. Pac. Shore Funding*, 2006 WL 149106, at *6 n.4 (C.D. Cal. Jan. 3, 2006); *see Teed v. Chen*, 2022 WL 16839496 (N.D. Cal. Nov. 9, 2022) (relying on *Cazares*).

Accordingly, this Court, applying Washington law, can and should consider unconscionability where, as here, the unconscionability appears on the face of the Complaint and its exhibits, and where the defendant contends it would be unconscionable *not* to arbitrate.

DEF.'S REPLY IN SUPPORT
OF MOT. TO DISMISS
CASE NO. 2:26-CV-00698-JNW

7

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

**Procedural Unconscionability.** Valve's Opposition ignores *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670 (9th Cir. 2024), which held that retroactive modification of dispute resolution terms was procedurally unconscionable where consumers "often revisit the site in order to use previously purchased digital tickets" and "it is thus nearly impossible to avoid retroactive application of any changes." Here, Steam users are in the identical position—they must revisit their Steam Account for various reasons including, for example, checking their prior purchases, messaging with connects on Steam's network, or confirming facts about their arbitration claims. Valve's silence on *Heckman* is deafening.

Valve argues that unconscionability does not apply in this case because gaming is a "non-essential activity" and Mr. Irias had a "genuine choice" to forgo accessing his Steam account. Dkt. No. 24, pp. 2, 19. But this ignores that Mr. Irias, a Steam subscriber since 2013, has invested real money in games, add-ons, accumulated progress, and social connections tied to his Steam account. Valve does not refund consumers for any of this value upon account cancellation. The only "choice" Valve offered was a Hobson's choice: abandon your investment of time and money or give up your pending arbitration. That is the essence of procedural unconscionability.

Valve's reliance on *Bassett v. Elec. Arts Inc.*, 2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015), for the proposition that video games are "nonessential recreational activities" that cannot possibly give rise to unconscionability, is inapposite. First, *Bassett* applied California law, not Washington law. Second, it did not involve a consumer with a pending arbitration who was forced to choose between losing years of investment in digital property or surrendering vested dispute resolution rights. The unconscionability here arises not from the nature of gaming, but from the coercive nature of the choice Valve imposed on a consumer mid-arbitration.

**Substantive Unconscionability.** Valve asserts that it "did not file any motion to compel Defendant to arbitrate." Dkt. No. 24, p. 20. This is a distinction without a difference. Relying upon the same arbitration clause, Valve successfully moved to compel arbitration of consumer antitrust claims in *Wolfire*, and Mr. Irias's arbitration was filed pursuant to the same arbitration framework

DEF.'S REPLY IN SUPPORT
OF MOT. TO DISMISS
CASE NO. 2:26-CV-00698-JNW

8

**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

that Valve insisted all consumers follow in bringing claims against Valve. That Valve's motion was directed at the *Wolfire* consumer plaintiffs rather than Mr. Irias individually does not change the fact that Valve's litigation strategy funneled Mr. Irias into arbitration—and now Valve seeks to yank him out of it. *See Valve Corp. v. Bucher Law PLLC*, 34 Wash. App. 2d 727, 743 (Wash. App. Div. 1 2025) ("The conduct Valve complains of . . . is a direct result of its own agreement barring class actions and prohibiting collective or representative arbitration.").

**VI.   Equitable Estoppel Bars Valve's Claims.**

Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009). Valve asserts that it has not taken any "inconsistent position" because it moved to compel arbitration "before an arbitrator ruled that the Superseded SSA was unenforceable." This argument proves too much. Valve successfully compelled arbitration, thousands of consumers like Mr. Irias complied and filed arbitration claims, and then suddenly—when Valve realized that its gambit to avoid accountability to its customers had failed—Valve changed course and tried to eliminate arbitration altogether. That is the very definition of an inconsistent position.

Valve reaped the benefit of the arbitration clause when it served Valve's interests and now seeks to discard arbitration when it does not. Valve should be equitably estopped from doing so in this court.

**VII.   Valve's All-Writs Act Claim Fails.**

Valve argues that Defendant's arbitration would "threaten" this Court's jurisdiction in *Wolfire*, *Smith*, and *Welty*. Dkt. No. 24, pp. 21–23. But as the opening brief demonstrated, Mr. Irias is not a party to *Wolfire*, or these other cases, and there is no certified consumer class that covers him. Valve's Opposition fails to address this fundamental point. Courts cannot enjoin non-parties from pursuing their own proceedings based on the mere possibility that their claims might overlap with a pending class action.

DEF.'S REPLY IN SUPPORT
OF MOT. TO DISMISS
CASE NO. 2:26-CV-00698-JNW

9

**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

The authority conferred upon federal courts by the All-Writs Act is restricted by the Anti-Injunction Act, which is designed to preclude unseemly interference with state court proceedings. *Negrete v. Allianz Life Ins. Co.*, 523 F.3d 1091, 1100 (9th Cir. 2008). Valve's attempt to skirt these restrictions[3] fails to grapple with the holding in *Adkins v. Nestle Purina PetCare Co.*, 779 F.3d 481 (7th Cir. 2015) that an injunction was inappropriate where "no one contends that trial or judgment in the Missouri litigation could imperil the district court's ability and authority to adjudicate the federal suit." 779 F.3d at 484. That same reasoning applies here: Mr. Irias's individual arbitration does not imperil this Court's ability to adjudicate *Wolfire* or any other proceeding.

Indeed, under controlling Ninth Circuit authority, this Court lacks the power to grant the relief Valve seeks. In *Sussex v. U.S. Dist. Ct. for the Dist. of Nev.*, 781 F.3d 1065 (9th Cir. 2015), the Ninth Circuit held that "a district court's authority is generally limited to decisions that bookend the arbitration itself." *Id.* at 1071. Before arbitration begins, a court may determine whether a valid arbitration agreement exists and whether the dispute falls within its scope. *Id.* (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). And, after a final award, the parties may petition to confirm, vacate, or modify it under 9 U.S.C. §§ 9–11. *Id.* at 1099. But the FAA "does not suggest that a court could otherwise intervene before a final award is made." *Id.* at 1098.

Mr. Irias's arbitration is not a hypothetical future proceeding—it has been pending for over two years. He filed his claim with the AAA in December 2023. Dkt. No. 1 ¶ 10. The AAA is

---

[3] Valve distinguishes *Adkins v. Nestle Purina PetCare Co.*, 779 F.3d 481 (7th Cir. 2015) because it analyzed the Anti-Injunction Act rather than the All-Writs Act. The All-Writs Act states that a district court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Anti-Injunction Act prohibits a district court from enjoining state proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The similar standards imposed by the two Acts prompted the *Negrete* court to opine: "… while the cited cases apply to the Anti Injunction Act, the principle is perfectly general. It applies to the All Writs Act as well, for it is the restraint on other court proceedings that is problematic." 523 F.3d at 1098.

DEF.'S REPLY IN SUPPORT
OF MOT. TO DISMISS
CASE NO. 2:26-CV-00698-JNW

10

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

actively administering it. Dkt. No. 1 ¶ 55. Valve's Complaint seeks to enjoin this ongoing arbitration. But *Sussex* makes clear that this Court's role ended when it ordered consumers into arbitration in *Wolfire* in 2021 and does not resume until an award is rendered.

## VIII.    The FAA Prohibits Mid-Arbitration Judicial Interference.

Valve's effort to enjoin an ongoing arbitration that it previously demanded is precisely the kind of mid-arbitration judicial interference that the FAA prohibits. The Court should decline Valve's invitation to intervene and dismiss the Complaint.

As the Ninth Circuit has long held, "judicial review prior to the rendition of a final arbitration award should be indulged, if at all, only in the most extreme cases." *Aerojet-General Corp. v. Am. Arb. Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973) (quoted in *Sussex*, 776 F.3d at 1099). The Ninth Circuit's "consistent refusal to identify any 'extreme case' that could warrant intervention in an ongoing arbitration brings [its] case law into harmony with [its] sister circuits, the majority of which expressly preclude any such mid-arbitration intervention." *Sussex*, 776 F.3d at 1099; *see also Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011) ("Review [of an arbitration proceeding] comes at the beginning or the end, but not in the middle.") (quoted in *Sussex*, 776 F.3d at 1099).

The equities here are even more compelling than in *Sussex*. There, the party seeking mid-arbitration intervention was the *respondent* in arbitration—a developer who had never previously endorsed the arbitrator or the process. Here, Valve is the party that *created* the arbitration framework, *drafted* the mandatory arbitration clause, and *successfully moved to compel* consumers into individual arbitration in *Wolfire Games, LLC v. Valve Corp.*, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021). Having driven Mr. Irias into arbitration, Valve cannot now invoke this Court's authority to pull him back out mid-proceeding because the arbitration process has become inconvenient.

## CONCLUSION

Def.'s Reply in Support
of Mot. to Dismiss
Case No. 2:26-cv-00698-JNW

11

Siri & Glimstad LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

For all the foregoing reasons, Defendant Jason Irias respectfully requests that this Court grant his Motion and Dismiss Valve Corporation's Complaint in its entirety with prejudice. The Complaint fails to state a claim because (1) a single log-in without any substantive activity does not constitute consent to the Current SSA; (2) the survivorship clause preserves the duty to arbitrate; (3) Valve's modification violates the implied covenant of good faith and fair dealing; (4) the Current SSA is unconscionable as applied to Mr. Irias; (5) Valve is equitably estopped from repudiating the arbitration it demanded; and (6) the All-Writs Act does not provide an independent basis to circumvent the FAA and enjoin a valid arbitration that has already commenced.

DATED: May 6, 2026

I certify that this memorandum contains <u>3847</u> words, in compliance with the Local Civil Rules.

Respectfully submitted,

By: _Kent M. Williams_
Kent M. Williams (admitted *pro hac vice*)
kent.williams@sirillp.com
**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Suite 401
Minneapolis, MN 55415
T: 929-220-2759

Mason A. Barney (admitted *pro hac vice*)
mbarney@sirillp.com
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
T: 772-783-8463
F: 646-417-5967

Gary E. Mason (admitted *pro hac vice*)
gmason@masonllp.com
Theodore B. Bell (admitted *pro hac vice*)
tbell@masonllp.com
Danielle L. Perry (admitted *pro hac vice*)
dperry@masonllp.com

DEF.'S REPLY IN SUPPORT
OF MOT. TO DISMISS
CASE NO. 2:26-CV-00698-JNW

12

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

Jacob Eisenberg (admitted *pro hac vice*)
jeisenberg@masonllp.com
**MASON & PERRY LLP**
5335 Washington Avenue NW, Suite 640
Washington, D.C. 20015
T: 202-429-2290

Michael C. Subit (WSBA No. 29189)
msubit@frankfreed.com
**FRANK FREED SUBIT & THOMAS LLP**
705 2nd Avenue, Suite 1200
Seattle, WA 98104
T: 206-682-6711

*Attorneys for Defendant Jason Irias*

DEF.'S REPLY IN SUPPORT
OF MOT. TO DISMISS
CASE NO. 2:26-CV-00698-JNW

13

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759