THE HON. JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

                        Plaintiff,

           v.

JASON IRIAS,

                        Defendant.

**Case No. 2:26-cv-00698-JNW**

**DEFENDANT'S OPPOSITION TO VALVE'S MOTION FOR PRELIMINARY INJUNCTION**

**NOTE ON MOTION CALENDAR:**
May 27, 2026

DEF.'S OPP. TO VALVE'S
MOT. FOR PRELIM. INJ.
CASE NO. 2:26-CV-00698-JNW

**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

**TABLE OF CONTENTS**

PAGE

TABLE OF CONTENTS ......................................................................................................... ii

TABLE OF AUTHORITIES .................................................................................................. iv

I.  INTRODUCTION ...................................................................................................... 1

    A.  Factual Background ......................................................................................... 1

    B.  Legal Standard ............................................................................................... 3

II.  ARGUMENT .............................................................................................................. 4

    A.  Valve Cannot Establish a Substantial Likelihood of Success on the Merits. ................... 5

        1.  A Single, Passive Log-In Does Not Constitute Consent to the Current SSA. ........ 5

        2.  Valve's Opposition Ignores Its Own Terms' Distinction Between Account Access and Subscription Use. ................................................. 6

        3.  The Cases Valve Cites Are Distinguishable. ............................................. 7

        4.  The Survivorship Clause Preserves the Duty to Arbitrate. ................................. 8

        5.  Presumption of Survival ....................................................................... 9

        6.  Valve's Unilateral Removal of the Arbitration Clause Violates the Implied Covenant of Good Faith and Fair Dealing. ......................... 10

        7.  The Current SSA Is Unconscionable as Applied to Mr. Irias. .............................. 11

        8.  Equitable Estoppel Bars Valve's Claims. ................................................. 13

        9.  The FAA Prohibits Mid-Arbitration Judicial Interference. ................................. 14

    B.  Valve Cannot Show a Likelihood of Irreparable Harm. ................................................. 15

        1.  The Injury Valve Identifies Is Not Irreparable as a Matter of Ninth Circuit Law. ...............................................**Error! Bookmark not defined.**

    C.  The Balance of Equities Favors Mr. Irias. .................................................... 16

    D.  The Public Interest Favors Enforcing Actual Bargains and Discouraging Opportunistic Revocation. .......................................................... 18

DEF.'S OPP. TO VALVE'S
MOT. FOR PRELIM. INJ.
CASE NO. 2:26-CV-00698-JNW

ii

**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

E.    If the Court Grants any Injunctive Relief, it Should Require a Bond. ........................... 18

III.    CONCLUSION ................................................................................................. 19

DEF.'S OPP. TO VALVE'S
MOT. FOR PRELIM. INJ.                                iii
CASE NO. 2:26-CV-00698-JNW

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

**TABLE OF AUTHORITIES**

PAGE(S)

**CASES**

*Aerojet-General Corp. v. Am. Arb. Ass'n,*
478 F.2d 248 (9th Cir. 1973). ................................................................................. 15

*Anderson v. United States,*
612 F.2d 1112, 612 F.2d 1112, 1114–15 .............................................................. 3, 4

*Arc of Cal. v. Douglas,*
757 F.3d 975 (9th Cir. 2014). ................................................................................. 16

*AT&T Mobility LLC v. Bernardi,*
No. C 11-03992 WHA, 2011 WL 5079549 (N.D. Cal. Oct. 26, 2011). ................... 17

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011). ............................................................................................... 19

*AT&T Mobility LLC v. Smith,*
No. 11-6344, 2011 WL 5924460 (E.D. Pa. Nov. 28, 2011). .............................. 17, 18

*Bassett v. Elec. Arts Inc.,*
No. 13–CV–04208(MKB)(SMG), 2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015). ...... 13

*Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.,*
671 F.3d 635 (7th Cir. 2011). ................................................................................. 15

*Camping Constr. Co. v. Dist. Council of Iron Workers,*
915 F.2d 1333 (9th Cir. 1990). ............................................................................... 16

*Cobb v. Ironwood Country Club,*
233 Cal. App. 4th 960 (2015). ........................................................................... 11, 12

*Dasher v. RBC Bank (USA),*
745 F.3d 1111 (11th Cir. 2014) ................................................................................. 9

DEF.'S OPP. TO VALVE'S
MOT. FOR PRELIM. INJ.
CASE NO. 2:26-CV-00698-JNW

iv

**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

*East West Bank v. Bingham,*

    992 F. Supp. 2d 1130 (W.D. Wash. 2014). ................................................................. 14

*Flynt Distrib. Co. v. Harvey,*

    734 F.2d 1389 (9th Cir. 1984). ................................................................................. 6

*Garcia v. Google, Inc.,*

    786 F.3d 733 (9th Cir. 2015). ................................................................................ 16

*Goggins v. Amazon.com Inc.,*

    No. 2:24-cv-00257, 2025 WL 2782872 (W.D. Wash. Sept. 30, 2025). ...................................... 8

*Grant v. T-Mobile USA, Inc.,*

    No. 2:23-cv-01946-MJP, 2024 WL 3510937 (W.D. Wash. July 23, 2024). ............................... 8

*Heckman v. Live Nation Ent., Inc.,*

    120 F.4th 670 (9th Cir. 2024). .......................................................................... 12, 13

*Huffman v. Hilltop Cos., LLC,*

    747 F.3d 391 (6th Cir. 2014). ............................................................................... 10

*In re Sussex,*

    776 F.3d 1092 (9th Cir. 2015). .............................................................................. 15

*Ireland-Gordy v. Tile, Inc.,*

    No. 25-403, 2026 WL 594859 (9th Cir. Mar. 3, 2026) ...................................................... 8

*Litton Fin. Printing Div. v. NLRB,*

    501 U.S. 190 (1991). ..................................................................................... 10, 11

*Luna v. Household Fin. Corp. III,*

    236 F. Supp. 2d 1166 (W.D. Wash. 2002). ................................................................. 12

*Majidi-Ahy v. ClassPass, Inc.,*

    No. 2:25-cv-05003-KS, 2026 WL 585465 (C.D. Cal. Feb. 11, 2026). .................................. 9, 10

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*

    571 F.3d 873, 571 F.3d 873, 879 ............................................................................ 3

DEF.'S OPP. TO VALVE'S
MOT. FOR PRELIM. INJ.
CASE NO. 2:26-CV-00698-JNW

v

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

*Mundi v. Union Sec. Life Ins. Co.*,

555 F.3d 1042 (9th Cir. 2009). ..................................................................................... 14, 15

*Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*,

430 U.S. 243 (1977). ............................................................................................... 10

*Numbers Licensing, LLC v. bVisual USA, Inc.*,

643 F. Supp. 2d 1245 (E.D. Wash. 2009). ................................................................. 6

*Pilon v. Discovery Commc'ns, LLC*,

769 F. Supp. 3d 273 (S.D.N.Y. 2025) ........................................................................ 8

*Postmates Inc. v. 10,356 Individuals*,

No. CV 20-2783 PSG (JEMx), 2020 WL 1908302 (C.D. Cal. Apr. 15, 2020).................... 16, 17

*Rekhter v. State, Dep't of Soc. & Health Servs.*,

180 Wash. 2d 102 (2014). ............................................................................................11

*Sadlock v. Walt Disney Co.*,

No. 22-cv-09155-EMC, 2023 WL 4869245 (N.D. Cal. July 31, 2023)..................................... 8

*Scribner v. WorldCom, Inc.*,

249 F.3d 902 (9th Cir. 2001). ......................................................................................11

*Shivkov v. Artex Risk Sols., Inc.*,

974 F.3d 1051 (9th Cir. 2020). ................................................................................... 10

*Smartwings, a.s. v. Boeing Co.*,

No. C21-918 RSM, 2022 U.S. Dist. LEXIS 33640 (W.D. Wash. Feb. 25, 2022). ...................11

*Stanley v. Univ. of S. Cal.*,

13 F.3d 1313, 1320.......................................................................................................... 3

*Tadych v. Noble Ridge Constr., Inc.*,

519 P.3d 199 (Wash. 2022). ......................................................................................... 13

*Valve Corp. v. Bucher Law PLLC*,

571 P.3d 312 (Wash. Ct. App. 2025). ........................................................................ 18, 19

DEF.'S OPP. TO VALVE'S
MOT. FOR PRELIM. INJ.                    vi
CASE NO. 2:26-CV-00698-JNW

**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

*Winter v. Nat. Res. Def. Council, Inc.*,

   555 U.S. 7 (2008)............................................................................................. 3, 4, 16, 17

*Wolfire Games, LLC v. Valve Corp.*,

   No. 2:21-cv-00563-JCC, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021). ............. 1, 16, 17, 18

**STATUTES**

Cal. Civ. Proc. Code § 1281.98.................................................................................................. 2

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 9–11. .................................................... 10, 15, 19

**RULES**

AAA Consumer Rule R-2. ....................................................................................................... 3, 17

Fed. R. Civ. P. 65(c). ................................................................................................................ 19

Def.'s Opp. To Valve's
Mot. for Prelim. Inj.
Case No. 2:26-cv-00698-JNW

vii

**Siri & Glimstad LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

## I.    INTRODUCTION

Defendant Jason Irias has been attempting to arbitrate his antitrust claims against Valve since December of 2023, only to be blocked by Valve every step of the way. Valve has employed numerous tactics to prevent Mr. Irias and thousands of other consumers from arbitrating their antitrust claims against Valve in arbitration. Arbitration is supposed to be a fast, efficient, and inexpensive forum for consumers to adjudicate their disputes when necessary to resolve a consumer dispute. Not so with Valve. As shown below, Valve cannot meet its burden for a preliminary injunction against Defendant Jason Irias.

### A.  Factual Background

Valve first added a mandatory individual arbitration agreement to its Steam Subscriber Agreement ("SSA") in July 2012. Lynch Decl., Dkt. 26 ¶ 2. Mr. Irias opened an Account on the Steam platform a few months later, on October 28, 2012.

In late 2021, Valve successfully moved this Court to compel the *Wolfire* consumer antitrust class plaintiffs to arbitration. *Wolfire Games, LLC v. Valve Corp.*, No. 2:21-cv-00563-JCC, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021).

By December 2023, Mr. Irias had made purchases on Steam worth over $1,000. Mason Decl., ¶ 7. On December 15, 2023, Mr. Irias did exactly what this Court required: he filed his individual antitrust arbitration with the American Arbitration Association ("AAA"). Thousands of other Valve subscribers did the same. Marks-Diaz Decl., Dkt. 27 ¶¶ 3, 4.

Faced with thousands of individual arbitrations, Valve scrambled to find an off-ramp.

On September 26, 2024, Valve removed the arbitration agreement and issued a superseding SSA that purports to require that all disputes be brought in court. Claiming there is no longer an arbitration agreement between the parties, Valve now demands that all arbitrations against the company be closed and refuses to pay AAA invoices for billed case administration services. Mason Decl., ¶¶ 19, 20. Lynch Decl., Dkt. 26 ¶ 6.

After Valve defaulted on its obligation to pay the AAA's $20,875,400 invoice for case administration fees relating to the claims of Mr. Irias and 14,910 other Mason & Perry LLP ("M&P") claimants, on April 25, 2025, the AAA informed the parties that Cal. Civ. Proc. Code § 1281.98 applied and requested that the claimants advise how they wished to proceed under the statute.

M&P responded to the AAA's inquiry by electing to proceed under Cal. Civ. Proc. Code Section 1281.98(b)(3)—seeking court orders compelling Valve to pay the outstanding fees—and under Section 1281.98(b)(4)—allowing a subset of claimants willing to advance Valve's unpaid fees to proceed with their individual arbitrations. Valve responded by reiterating its demand for immediate closure of all pending arbitrations against the company.

On May 15, 2025, the AAA placed the 14,911 M&P claims "in abeyance" while the claimants seek judicial relief for Valve's refusal to pay the required arbitration fees. Critically however, the AAA allowed for a subset of claimants willing to advance Valve's unpaid Case Management Fees to proceed with their individual arbitrations. The AAA's letter states: "[T]he AAA will proceed with case administration of a subset of cases… upon receipt of Claimants' identification of the subset, and Claimants' corresponding advanced payment of Respondent's Case Management Fees for the subset." Marks-Diaz Decl., Dkt. 27 ¶ 18; Ex. 9, Dkt. 27-1 at 40.

On December 17, 2025, Defendant Irias elected to advance Valve's unpaid fees and proceed with his arbitration case pursuant to the subset structure as allowed by the AAA.

On January 28, 2026, the AAA commenced administration of Mr. Irias's individual arbitration, confirming that all administrative requirements were met. *See* Marks-Dias Decl., Dkt. 27 ¶ 20.

On February 3, 2026, Valve objected to the AAA's administration on the ground that the Current SSA purportedly eliminates arbitration. *See* Marks-Dias Decl., Dkt. 27 ¶ 21.

DEF.'S OPP. TO VALVE'S
MOT. FOR PRELIM. INJ.                           2
CASE NO. 2:26-CV-00698-JNW

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

On February 6, 2026, the AAA overruled Valve's objections and confirmed it would proceed with the appointment of a merits arbitrator for Mr. Irias's arbitration. *See* Marks-Dias Decl., Dkt. 27 ¶ 22.

On February 27, 2026, Valve filed this action against Mr. Irias to enjoin him from proceeding in arbitration. This automatically stayed Mr. Irias's arbitration for 90 days under AAA rules. *See* Marks-Dias Decl., Dkt. 27 ¶ 22.

On April 8, 2026, Mr. Irias filed a motion to dismiss Valve's action against him. This motion has been fully briefed. On April 29, 2026, Valve filed its Motion for Preliminary Injunction.

AAA's stay of Mr. Irias' arbitration is still in place and can be extended by AAA indefinitely.

**B.    Legal Standard**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is *likely* to succeed on the merits, that he is *likely* to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 21 (emphasis added).

Valve seeks a mandatory preliminary injunction, not a prohibitory one. A prohibitory injunction preserves the status quo; a mandatory injunction compels a change in it. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). The relevant status quo is "the last, uncontested status which preceded the pending controversy." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citations omitted). Mandatory injunctions are "particularly disfavored" and are "not issued in doubtful cases." *Anderson v. United States*, 612 F.2d 1112, 1114–15 (9th Cir. 1979) (citations omitted). To obtain the mandatory injunction it seeks, Valve must show that "the facts and law clearly favor" relief. *Stanley*, 13 F.3d at 1320. Valve cannot satisfy the heightened standard under *Anderson*, nor the ordinary standard under *Winter*.

**Siri & Glimstad LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

In this matter, at the time Valve filed suit, Mr. Irias was actively pursuing arbitration of his claims before the AAA. Enjoining Mr. Irias from continuing would not preserve the status quo; it would alter it. Valve's motion is especially disfavored under federal law.

## II.    ARGUMENT

As an initial matter, this Court should accord no weight to any statement in the Lynch Declaration that Mr. Lynch admits he made without "personal knowledge," Lynch Decl., Dkt. 26, ¶ 12, including assumption-based statements "based on Valve's business records" that are not specifically identified, not included with his Declaration, and/or the basis for which is not clear. *Id.* at ¶¶ 13-17. This includes his statement that Irias purportedly, in some unspecified way, "interacted with Steam through the Steam mobile app on March 2, 2026." *Id.* at ¶ 17.

A district court in deciding whether to grant a preliminary injunction "may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984). But where exigent circumstances do not exist, a declaration made without personal knowledge of the matters raised should be stricken. *Numbers Licensing, LLC v. bVisual USA, Inc.*, 643 F. Supp. 2d 1245, 1248-49 (E.D. Wash. 2009) (striking paragraphs from declaration of declarant who lacked personal knowledge to make statements regarding the matters raised where there were "no exigent circumstances" because the offering party had "several months to obtain declarations from the proper people after learning of bVisual's infringing activities").

As discussed in the Factual Background section above, Valve has been on notice of Irias's pursuit of claims in arbitration since at least December of 2023. Certainly, by December 17, 2025, it should have been clear to Valve that Irias was moving forward with his arbitration (the administration of which the AAA commenced on January 28, 2026). Valve finally filed its Complaint against Irias in this Court on February 27, 2026. It then waited more than eight weeks to file its motion for preliminary injunction on April 29, 2026. Thus, minimally, from December 17, 2025, to April 29, 2026, Valve had over four months to gather declarations by declarants whose

DEF.'S OPP. TO VALVE'S
MOT. FOR PRELIM. INJ.                                4
CASE NO. 2:26-CV-00698-JNW

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

statements would be based on personal knowledge for a motion for preliminary injunction. Because there were no "exigent circumstances," any statements in the Lynch Declaration that are not based on personal knowledge and any assumption-based statements "based on [unspecified] Valve business records" should be given no weight.

### A.    Valve Cannot Establish a Substantial Likelihood of Success on the Merits.

To show a substantial likelihood of success on the merits, Valve must prove the existence of a valid agreement between Valve and Mr. Irias entered into after September 26, 2024, when Valve removed the arbitration clause from its SSA. Thus, Valve must prove that Mr. Irias consented to Valve's unilateral change to the SSA, and that the change holds up despite Mr. Irias's numerous defenses. As demonstrated below, Valve cannot.

### 1.    A Single, Passive Log-In Does Not Constitute Consent to the Current SSA.

Valve argues that "users manifest assent if they use a service after receiving notice of the updated terms." Dkt. 25 at 19. But Valve completely fails to demonstrate that Mr. Irias used its services. In fact, far from showing acceptance, merely logging in, without more, only shows that Mr. Irias *rejected* the Current SSA.

Although Valve alleges it sent an email to Mr. Irias's email address from 2012, it presents no competent proof of this. Moreover, the email Valve cites defines acceptance as purchases and wallet funding. Compl., Dkt. 1 ¶¶ 34, 38. Valve also alleges that Mr. Irias logged in once, without making any purchase, engaging in any gameplay, or conducting any other substantive activity. Dkt. 1 ¶ 44; Br. 15, Dkt. 25; Lynch Decl., Dkt. 26 ¶¶ 16, 17. Valve insists this single log-in stripped arbitration rights from Mr. Irias, a consumer who has not played or purchased anything on Steam since Valve eliminated arbitration from its SSA. Dkt. 25 at 15. Valve further asserts for the first time (without alleging it in its Complaint), again without evidence, that there was a purported single "interaction" with Irias's account on a mobile app, again with no contention of any purchase, gameplay, or other substantive activity. *Id.*; *see also* Lynch Decl., Dkt. 26 ¶ 16, 17. Indeed, none

DEF.'S OPP. TO VALVE'S
MOT. FOR PRELIM. INJ.                                    5
CASE NO. 2:26-CV-00698-JNW

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

of this alleged activity establishes Mr. Irias's purported abandonment of a pending two-year old arbitration, nor his acceptance of Valve's new SSA. Dkt. 1 ¶¶ 4, 15, 24.

### 2. Valve's Opposition Ignores Its Own Terms' Distinction Between Account Access and Subscription Use.

The SSA dictates different requirements for accepting (or rejecting) mutual amendments to the agreement, Section 8.A, versus unilateral agreements, Section 8.B.[1] Valve does not plausibly allege that Mr. Irias agreed to the Current SSA under either section.

Section 8.A of Valve's SSA provides that the agreement may only be mutually amended if a user provides "explicit consent to changes proposed by Valve." Valve's only specific factual allegation of Irias's acceptance—a one-time log-in (Dkt. 1 ¶ 44)—is far from an "explicit expression of consent." Removing the arbitration dispute mechanism was not mutual.

This means the change was unilateral. Section 8.B of Valve's SSA provides that "Valve may amend this Agreement . . . unilaterally at any time in its sole discretion. . . . If you don't agree to the amendments or to any of the terms in this Agreement, your only remedy is to cancel your Account *or to cease use of the affected Subscription(s)*." (Emphasis added.) The distinction between "Account" and "Subscription" is an important one. Under Section 1.B of the SSA, "Subscriptions" are defined as "the rights to access and/or use any Content and Services accessible through Steam," where Content and Services include games, in-game content, and software. Section 1.C, however, indicates that a user's "Account" is different from a "Subscription," stating for example: "Your Account, including any information pertaining to it (e.g.: contact information . . . Account history and Subscriptions, etc.,), is strictly personal." The SSA thus contemplates that a Subscriber can maintain and access an "Account" without actively "using" their "Subscriptions."

The notion that a mere "log-in" constitutes consent is further contradicted by Valve's emails and banner notices, which Valve contends are binding. *See* Dkt. 25 at 6. Valve's September 26,

---

[1] Any section numbers and language concerning Subscriptions, Content and Services, Accounts, and Unilateral Amendments cited herein are consistent between the Superseded SSA and Current SSA unless noted otherwise.

DEF.'S OPP. TO VALVE'S
MOT. FOR PRELIM. INJ.                    6
CASE NO. 2:26-CV-00698-JNW

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

2024, email notification specified that acceptance of the Current SSA would become effective when a user "make[s] most purchases, fund[s] [their] Steam wallet, or otherwise accept[s] it." Dkt. 1 ¶¶ 34, 38. The vague "otherwise accept it" implies substantive conduct analogous to making purchases or funding the Steam Wallet—and a mere log-in to check one's Account is none of these things. The Court should reject Valve's attempt to expand the concept of "consent" beyond what Valve told consumers.

### 3. The Cases Valve Cites Are Distinguishable.

Valve relies upon case law for the proposition that Irias expressed his consent through the "continued use" of his Steam Account. Yet, every case Valve cites for the proposition that "continued use" constitutes assent involved substantive, substantial engagement with the service—not a mere log-in.

In *Ireland-Gordy v. Tile, Inc.*, No. 25-403, 2026 WL 594859, at *4 (9th Cir. Mar. 3, 2026), the Ninth Circuit held that plaintiffs "unambiguously manifested assent" through their "continued use of the Tile App." But the plaintiffs in *Tile* were actively using the app—not simply logging in once without engaging in any activity. In *Goggins v. Amazon.com Inc.*, No. 2:24-cv-00257, 2025 WL 2782872, at *3, *6, *7 (W.D. Wash. Sept. 30, 2025), this Court enforced updated terms where the plaintiff accessed the Advantage homepage 138 times and continued to actively perform under the Advantage Program showing sustained engagement, not a single passive log-in. In *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 289–90 (S.D.N.Y. 2025), the court found assent where the user "continued to subscribe to and use" the service—again, substantive engagement, not a bare log-in. And in *Sadlock v. Walt Disney Co.*, No. 22-cv-09155-EMC, 2023 WL 4869245 (N.D. Cal. July 31, 2023), the court noted that "emails plus continued use" could establish assent, *id.* at *11, but the "use" contemplated there involved actual consumption of the service's benefits. Not so, here, where the allegation is only that Mr. Irias logged in once to the Steam platform, and that his mobile app "interacted" with the platform on another occasion in some unidentified way.

None of the authorities relied upon by Valve supports the novel proposition that a single log-in—involving no game play, no purchases, no wallet funding, no substantive engagement whatsoever—constitutes the kind of "unambiguous" assent that Washington law requires. *See Grant v. T-Mobile USA, Inc.*, No. 2:23-cv-01946-MJP, 2024 WL 3510937, at *4 (W.D. Wash. July 23, 2024) (requiring "some action . . . that unambiguously manifests his or her assent"). Nor do any of Valve's opinions hold that a company may upend a pending arbitration by unilaterally eliminating the duty to arbitrate from its terms of service.

### 4.    The Survivorship Clause Preserves the Duty to Arbitrate.

Valve contends that the survivorship clause does not apply because the Current SSA "replaces prior agreements in full." Dkt. 24 at p. 1. The Current SSA expressly states: "If you were a Subscriber before [September 26, 2024], [this Agreement] replaces and supersedes your existing agreement with Valve," and further that it "supersedes any prior oral or written agreements." Dkt. 26-2 at p. 9. This general language is insufficient to defeat the explicit language of the Superseded SSA's survivorship clause, which included Section 11 among the specific sections that survive "any" termination of the SSA. Superseded SSA § 9.D, Dkt. 26-1 (stating that the duty to arbitrate under § 11 "will survive any expiration or termination of this Agreement."). This provision continues to preserve the right to arbitrate absent an explicit agreement to eliminate it.

Valve's reliance on *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014), is misplaced. Dkt. 25 at 16. In *Dasher*, the parties "expressed their clear and definite intent to execute" a new agreement. 745 F.3d at 1117. That is a far cry from a consumer whose sole alleged act of "assent" was logging into a platform once without engaging in any activity. Here, the question is whether Mr. Irias expressed any such intent at all—and a single passive log-in without more does not qualify. Moreover, *Dasher* did not involve a survivorship clause with the explicit breadth of Section 9(D), which preserves the arbitration obligation through "*any* expiration or termination" (emphasis added).

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

Valve's use of *Majidi-Ahy v. ClassPass, Inc.*, No. 2:25-cv-05003-KS, 2026 WL 585465 (C.D. Cal. Feb. 11, 2026), is likewise inapposite. Dkt. 25 at pp. 16–17. Valve states that the court found the updated terms were not unilaterally modified, but rather, as Valve explains it, "adopted by bilateral agreement of the parties where the plaintiff (i) received notice of the update through an in-platform pop-up and email notice and (ii) affirmatively assented to the terms by clicking the I accept button on the pop-up and her continued use of the defendants' services." *Id* (quoting *Majidi-Ahy*, at *6–8)*. In contrast, Valve does not allege that Mr. Irias clicked on any "I accept" button, and Valve has not demonstrated that Mr. Irias saw or even received the email Valve claims it sent.

### 5.  Presumption of Survival

Even absent an express survival clause, federal arbitration law supplies the same result. The Supreme Court has long held that an agreement to arbitrate is presumed to survive expiration of the underlying contract unless the parties clearly indicate otherwise. *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 252–55 (1977). The Court reaffirmed that principle in *Litton Fin. Printing Div. v. NLRB*, holding that post-expiration, arbitration remains required where the dispute "arises under" the expired agreement, including when it concerns rights that accrued or vested under that agreement. 501 U.S. 190, 205–06 (1991). The Ninth Circuit has applied the same presumption in the FAA context. As the court explained,

> We are persuaded that the presumption also applies here. As the Sixth Circuit has explained, "the need for an arbitration provision to have post-expiration effect is intuitive, because if 'the duty to arbitrate automatically terminated upon expiration of the contract, a party could avoid his contractual duty to arbitrate by simply waiting until the day after the contract expired to bring an action regarding a dispute that arose while the contract was in effect.'" *Huffman*, 747 F.3d at 395 (citation omitted). Thus, we also apply the *Litton* framework here.

*Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1061 (9th Cir. 2020) (collecting cases and citing *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 395–96 (6th Cir. 2014)).

Def.'s Opp. To Valve's
Mot. for Prelim. Inj.
Case No. 2:26-cv-00698-JNW

9

**Siri & Glimstad LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

If anything, the case against Valve is stronger than *Shivkov*. There, the Ninth Circuit found post-expiration survival based on the governing federal presumption and the contract's structure. Here, by contrast, the prior SSA expressly identifies the arbitration section as one of the provisions that survives termination. Lynch Decl. Ex. A § 9.D, Dkt. 26. Valve thus must confront not only the federal presumption favoring survival of the arbitration agreement, but the parties' explicit contractual language providing for survival.

Moreover, by the time Valve revised the SSA, Mr. Irias's arbitration right had already been invoked and the arbitral process had already begun. Under *Litton*, 501 U.S at 205–06, disputes involving rights that accrued or vested under the prior agreement remain subject to arbitration after contract expiration. Mr. Irias's right to pursue arbitration is not some future expectancy, it is an existing, invoked contractual right and his arbitration was actively proceeding in front of the AAA when Valve filed this action.

### 6. Valve's Unilateral Removal of the Arbitration Clause Violates the Implied Covenant of Good Faith and Fair Dealing.

Under Washington law, which governs the SSA, a duty of good faith and fair dealing is implied in every contract. *Smartwings, a.s. v. Boeing Co.*, No. C21-918 RSM, 2022 U.S. Dist. LEXIS 33640, at *6 (W.D. Wash. Feb. 25, 2022). This duty prohibits a party from using discretionary contract terms to deny the other party the benefit of its bargain. *Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041-42, 180 Wash. 2d 102, 113–14 (2014). *See also Scribner v. WorldCom, Inc.*, 249 F.3d 902, 910 (9th Cir. 2001) ("[g]ood faith limits the authority of a party retaining discretion to interpret contract terms; it does not provide a blank check for that party to define terms however it chooses.").

Valve's sudden removal of the arbitration clause during pending arbitration proceedings violates this duty. Courts have consistently held that the implied covenant of good faith and fair dealing prohibits a party from unilaterally changing an agreement to apply retroactively to known or accrued claims because doing so would interfere unreasonably with the other party's

Def.'s Opp. To Valve's
Mot. for Prelim. Inj.
Case No. 2:26-cv-00698-JNW

10

**Siri & Glimstad LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

expectations of how the parties would resolve their dispute. Valve's attempt to retroactively apply the Current SSA based solely on a single log-in—without any evidence that Mr. Irias played games, made purchases, or meaningfully engaged with Steam—is an exercise of discretion that is inconsistent with the reasonable expectations of the parties and the spirit of the contract.

*In Cobb v. Ironwood Country Club*, 233 Cal.App.4th 960, 183 Cal.Rptr.3d 282 (2015), four months after the plaintiffs filed their complaint in court, the defendant added an arbitration provision to its bylaws and sought to compel arbitration of the pending lawsuit. The court held that the defendant violated the implied covenant of good faith and fair dealing by attempting to retroactively apply the new arbitration requirement to a pending dispute. The court explained that the subsequent amendment "did not reflect any agreement by these plaintiffs to arbitrate the already pending lawsuit." *Id*. at 964–65.

The questionable timing of this revised SSA raises serious good-faith concerns. As the *Cobb* court recognized, a party cannot in good faith change the rules of the game mid-proceeding to retroactively strip the opposing party of its chosen dispute resolution mechanism. *See* 233 Cal. App. 4th at 964–65. Valve amended the SSA only after (i) a single arbitrator (out of dozens) found Valve's arbitration provision unenforceable solely as to four claimants in other arbitration cases and (ii) Valve faced pending mass arbitration claims from tens of thousands of consumers, all of whom are represented by legal counsel. Marks-Diaz Decl., Dkt. 27 ¶¶ 3, 4. This was not a good-faith exercise of contractual discretion—it was a strategic ploy to avoid the consequences of Valve's previous legal maneuvering. Just as the *Cobb* defendant could not compel arbitration of claims already pending in court, Valve cannot compel litigation of claims already pending in arbitration.

## 7.   The Current SSA Is Unconscionable as Applied to Mr. Irias.

Under Washington law, either procedural or substantive unconscionability is independently sufficient to invalidate a contract. *Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1174 (W.D. Wash. 2002). Accordingly, this Court, applying Washington law, can and should consider

DEF.'S OPP. TO VALVE'S
MOT. FOR PRELIM. INJ.                           11
CASE NO. 2:26-CV-00698-JNW

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

unconscionability where, as here, the unconscionability appears on the face of the Complaint and its exhibits, and where the defendant contends it would be unconscionable *not* to arbitrate.

**Procedural Unconscionability.** The Current SSA is procedurally unconscionable because it purports to be effective for any subscriber who continues using their Steam account after November 1, 2024. In *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670 (9th Cir. 2024), the court held that retroactive modification of dispute resolution terms was procedurally unconscionable where consumers "often revisit the site in order to use previously purchased digital tickets" and "it is thus nearly impossible to avoid retroactive application of any changes." Here, Steam users are in the identical position—they must revisit their Steam Account for various reasons including, for example, checking their prior purchases, messaging with connects on Steam's network, or confirming facts about their arbitration claims. The *Heckman* court emphasized that "[a]mending a contract unilaterally with a provision that applies retroactively amid ongoing litigation 'evinces an extreme amount of procedural unconscionability.'" *Id.* at *20 (citation omitted). That principle applies with full force here.

Valve argues that unconscionability does not apply in this case because gaming is a "non-essential activity" and Mr. Irias had a "genuine choice" to forgo accessing his Steam account. Dkt. 24 at pp. 2, 19. But this ignores that Mr. Irias, a Steam subscriber since 2013, invested real money in games and add-ons that were valued in excess of $1,000, as well as the accumulated progress and social connections tied to his Steam account. Valve does not refund consumers for any of this value upon account cancellation. The only "choice" Valve offered was a Hobson's choice: abandon your investment of time and money or give up your pending arbitration. Pressuring one's litigation opponent into dropping their claim by holding their investment hostage is the epitome of procedural unconscionability,

Valve's reliance on *Bassett v. Elec. Arts Inc.*, No. 13–CV–04208(MKB)(SMG), 2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015), for the proposition that video games are "nonessential recreational activities" that cannot possibly give rise to unconscionability, is inapposite. Dkt. 25 at

DEF.'S OPP. TO VALVE'S
MOT. FOR PRELIM. INJ.                    12
CASE NO. 2:26-CV-00698-JNW

**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

21. First, *Bassett* applied California law, not Washington law. Second, it did not involve a consumer with a pending arbitration who was forced to choose between losing years of investment in digital property or surrendering vested dispute resolution rights. The unconscionability here arises not from the nature of gaming, but from the coercive nature of the choice Valve imposed on a consumer mid-arbitration.

**Substantive Unconscionablility.** A contract provision is substantively unconscionable if it is "one-sided or overly harsh, shocking to the conscience, monstrously harsh, or exceedingly calloused." *Tadych v. Noble Ridge Constr., Inc.*, 200 Wash.2d 635, 641, 519 P.3d 199, 202 (Wash. 2022) (quotations and citations omitted). The provision of the Superseded SSA that enabled Valve to retract the arbitration provision during litigation—more than three years after the Court granted Valve's motion to compel arbitration—is one-sided, overly harsh, and fundamentally unfair. According to Valve, the unilateral modification provision gives users the right to reject the new forum selection clause if they are willing to sacrifice their entire investment of time and money in purchased games, add-ons, game progress, access to social networks, and anything else built around his hobby. This is an especially unsavory choice for Mr. Irias, who must now abandon arbitration claims he brought two years ago, after Valve demanded and won its (then) choice of forum. If that is the sort of Hobson's choice that confronts consumers like Mr. Irias, the Current SSA is substantively unconscionable.

### 8.    Equitable Estoppel Bars Valve's Claims.

Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) (quotations and citations omitted); *see also East West Bank v. Bingham*, 992 F. Supp. 2d 1130, 1132–33 (W.D. Wash., 2014) (finding that Washington courts have adopted the *Mundi* standard for applying equitable estoppel in the arbitration context). Valve cannot equitably claim the benefits of the SSA—including the right to bind consumers to its

Def.'s Opp. To Valve's
Mot. for Prelim. Inj.
Case No. 2:26-cv-00698-JNW

13

**Siri & Glimstad LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

terms through continued use—while simultaneously avoiding the burden of the arbitration agreement it drafted and enforced.

Mr. Irias's arbitration has been pending for over two years. If this Court were to dismiss his arbitration now, he will be forced to wait for many more months if not years before he has the opportunity to opt out of a certified class and resume pursuing his claims on an individual basis. Witnesses and documents will be lost, memories will fade, and much of the evidence upon which Mr. Irias's claim is based will evaporate -- an unfair and inefficient outcome that equity forbids. Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009). Valve asserts that it has not taken any "inconsistent position" because it moved to compel arbitration "before an arbitrator ruled that the Superseded SSA was unenforceable." This argument proves too much. Valve successfully compelled arbitration, thousands of consumers like Mr. Irias complied and filed arbitration claims, and then suddenly— when Valve realized that its gambit to avoid accountability to its customers had failed—Valve changed course and tried to eliminate arbitration altogether. That is the very definition of an inconsistent position.

Valve reaped the benefit of the arbitration clause when it served Valve's interests and now seeks to discard arbitration when it does not. Valve should be equitably estopped from doing so in this court.

### 9. The FAA Prohibits Mid-Arbitration Judicial Interference.

Valve's effort to enjoin an ongoing arbitration that it previously demanded is precisely the kind of mid-arbitration judicial interference that the FAA prohibits. The Court should decline Valve's invitation to intervene and dismiss the Complaint.

As the Ninth Circuit has long held, "judicial review prior to the rendition of a final arbitration award should be indulged, if at all, only in the most extreme cases." *Aerojet-General Corp. v. Am. Arb. Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973) (quoted in *In re Sussex*, 776 F.3d 1092,

Def.'s Opp. To Valve's
Mot. for Prelim. Inj.                                    14
Case No. 2:26-cv-00698-JNW

Siri & Glimstad LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

1099 (9th Cir. 2015)). The Ninth Circuit's "consistent refusal to identify any 'extreme case' that could warrant intervention in an ongoing arbitration brings [its] case law into harmony with [its] sister circuits, the majority of which expressly preclude any such mid-arbitration intervention." *Sussex*, 776 F.3d at 1099; *see also Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011) ("Review [of an arbitration proceeding] comes at the beginning or the end, but not in the middle.") (quoted in *Sussex*, 776 F.3d at 1099).

The equities here are even more compelling than in *Sussex*. There, the party seeking mid-arbitration intervention was the *respondent* in arbitration—a developer who had never previously endorsed the arbitrator or the process. Here, Valve is the party that *created* the arbitration framework, *drafted* the mandatory arbitration clause, and *successfully moved to compel* consumers into individual arbitration in *Wolfire Games, LLC v. Valve Corp.*, No. 2:21-cv-00563-JCC, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021). Having driven Mr. Irias into arbitration, Valve cannot now invoke this Court's authority to pull him back out mid-proceeding because the arbitration process has become inconvenient.

**B.    Valve Cannot Show a Likelihood of Irreparable Harm As A Matter of Law.**

"[P]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction, not merely that it is possible." *Postmates Inc. v. 10,356 Individuals*, No. CV 20-2783 PSG (JEMx), 2020 WL 1908302, at *7 (C.D. Cal. Apr. 15, 2020) (quoting *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) (quoting *Winter*, 555 U.S. at 22)) (emphasis in original) (internal quotations omitted). By seeking a mandatory injunction, Valve's burden is "doubly demanding: Because [Valve] seeks a mandatory injunction [it] must establish that the law and facts *clearly favor* [its] position, not simply that [it] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis in original.) Even if the *Winter* standard for a prohibitory injunction is applied, Valve cannot meet its burden to show irreparable harm if its motion is not granted.

DEF.'S OPP. TO VALVE'S
MOT. FOR PRELIM. INJ.                    15
CASE NO. 2:26-CV-00698-JNW

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

Valve's principal theory is that it will be harmed by having to participate in an arbitration that should not proceed. But the Ninth Circuit has expressly rejected the proposition that "unnecessarily undergoing arbitration proceedings" is irreparable injury. *See Camping Constr. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990). The reason is straightforward. A party resisting arbitration may suffer no injury at all if it prevails, and the ordinary burdens of participating in an arbitration "scarcely qualify as irreparable injury". *Id.*; *see also Postmates Inc.*, 2020 WL 1908302, at *8 (finding that "being required to arbitrate a dispute that the parties did not agree to" does not constitute irreparable harm.)

### C.    The Balance of Equities Favors Mr. Irias.

The remaining *Winter* factors also defeat relief. Valve seeks extraordinary equitable intervention to halt an individual arbitration that Valve itself required, drafted, imposed, defended, and then abandoned once the costs of its chosen forum came due. The equities do not support that request, and the public interest affirmatively cuts against it.

Equity weighs the practical harms of granting or denying relief. Here, Valve identifies only the burden of participating in the forum it selected. Mr. Irias faces something far more concrete: the loss of a pending individualized proceeding already accepted for administration under the AAA preserved after Valve's fee default.

Mr. Irias filed his arbitration in December 2023 under the SSA Valve then enforced. He paid the required filing fees, proceeded through the AAA process, and later elected to proceed under the AAA-authorized manner by agreeing to advance arbitration fees after Valve refused to pay the administrative fees it owed. An injunction would strand that investment of time and effort, and deprive Mr. Irias of the only active forum in which he has been permitted to pursue his claim.

Valve points to the *Wolfire* litigation as an alternative, but for Mr. Irias, this is not an adequate substitute for individual arbitration. Mr. Irias is not a named plaintiff in *Wolfire* and has no control over that litigation. He is not even a class member. No class has been certified, no class notice has issued, and no judgment is imminent. A speculative possibility of future participation in

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

an uncertified class action is not equivalent to a presently pending individual arbitration. Nor does it overcome the prejudice caused by delay and wasted effort if Mr. Irias is forced out of the only forum currently available to him.

Valve's reliance on *AT&T Mobility LLC v. Bernardi*, No. C 11-03992 WHA, 2011 WL 5079549 (N.D. Cal. Oct. 26, 2011), and *AT&T Mobility LLC v. Smith*, No. 11-6344, 2011 WL 5924460 (E.D. Pa. Nov. 28, 2011), for the proposition that Mr. Irias suffers no prejudice from an injunction is misplaced. Both decisions turned on a single dispositive fact absent here: the DOJ had filed a parallel lawsuit seeking identical relief—enjoining the AT&T/T-Mobile merger—and the FCC was simultaneously reviewing that same transaction. Those courts held that government proceedings "may very well result in the precise relief" the private plaintiffs sought, which minimized the hardship from an arbitration injunction. *AT&T Mobility LLC v. Smith*, 2011 WL 5924460, at *9. But in this case there is no DOJ action, FCC review, or other government proceeding that might result in the trebled damages and other relief Mr. Irias seeks. The *Wolfire* class action is not the equivalent: as explained above it is uncertified and Mr. Irias is not a named plaintiff.

Valve's own conduct should also be considered. An injunction is equitable relief, and it is well-accepted that "one who seeks equity must do equity." Valve demanded individual arbitration when it served Valve's purposes to do so, and touted arbitration as "fair" because Valve would pay the costs for small-dollar claims. But once users were compelled to bring their claims in arbitration, Valve eliminated arbitration from its SSA altogether and demanded that the AAA dismiss the thousands of claims Valve faces. When the AAA refused Valve refused to pay its bills, which forced counsel for the claimants to advance the AAA's administrative costs. And when a single claimant—Jason Irias—dared to press forward with arbitration, Valve ran back to the same Court that granted Valve's motion to compel arbitration in the first place. Except now, Valve demands that Irias be enjoined from arbitrating his claim. Equity does not countenance such abusive game-playing by a large corporate defendant at the expense of an ordinary consumer.

DEF.'S OPP. TO VALVE'S
MOT. FOR PRELIM. INJ.
CASE NO. 2:26-CV-00698-JNW

17

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

Incredibly, Valve attempts to justify its actions by claiming it is the victim of an organized campaign to bring thousands of arbitrations against the company. The question of whether Valve was justified by thousands of arbitrations in bringing this action is moot, where this action involves only one arbitration. Nonetheless, Valve's complaint about thousands of arbitration was addressed by the Washington Court of Appeals, who observed in related litigation that "the filing of thousands of individual arbitration requests" was "a direct result of [Valve's] own agreement barring class actions and prohibiting collective or representative arbitration," and Valve was therefore "hoist by its own contractual petard." *Valve Corp. v. Bucher Law PLLC*, 34 Wash.App.2d 727, 742-43 & n.6 571 P.3d 312, 321 & n.6 (Wash. Ct. App. 2025).

### D. The Public Interest Favors Enforcing Actual Bargains and Discouraging Opportunistic Revocation.

The public interest likewise favors denial. The Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*, reflects a policy of enforcing arbitration agreements according to their terms, not according to a drafter's later preference once arbitration becomes costly or inconvenient. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

The public interest does not favor Valve who required the Defendant to arbitrate and then tried to revoke the forum when it became inconvenient or costly. It would encourage forum shopping at will. The public interest does not favor rewarding the kind of midstream reversal. It favors enforcement of real agreements, fair dealing in dispute-resolution design, and respect for adjudicative processes already underway.

### E. If the Court Grants any Injunctive Relief, it Should Require a Bond.

If the Court grants any preliminary injunction, it should require substantial security under Fed. R. Civ. P. 65(c). Rule 65(c) requires security sufficient to cover the costs and damages sustained by a party found to have been wrongfully enjoined. That protection matters here because Valve seeks to halt a pending arbitration in which Mr. Irias has already incurred costs.

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

If Valve is erroneously granted an injunction, Mr. Irias will face compensable harm such as the costs of maintaining his records, reactivating his Subscriptions, and/or refiling the arbitration if necessary. He also loses access to his games while he waits in limbo for an injunction of unlimited duration to be lifted.

Accordingly, if the Court grants any interim relief, it should require Valve to post a substantial bond sufficient to protect Mr. Irias against the foreseeable consequences of a wrongful injunction.

## III.    CONCLUSION

For all the foregoing reasons, Defendant Jason Irias respectfully requests that this Court deny Valve's Motion for Preliminary Injunction. Valve has failed to meet the necessary standards for a Preliminary Injunction. Should the Court grant a Preliminary Injunction, the Court should require a bond to be posted.

DATED: May 21, 2026

I certify that this memorandum contains 5784 words, in compliance with the Local Civil Rules.

Respectfully submitted,


By:    */s/ Kent M. Williams*
Kent M. Williams (admitted *pro hac vice*)
kent.williams@sirillp.com
**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Suite 401
Minneapolis, MN 55415
T: 929-220-2759


Mason A. Barney (admitted *pro hac vice*)
mbarney@sirillp.com
**SIRI & GLIMSTAD LLP**

DEF.'S OPP. TO VALVE'S
MOT. FOR PRELIM. INJ.
CASE NO. 2:26-CV-00698-JNW

19

**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

745 Fifth Avenue, Suite 500
New York, NY 10151
T: 772-783-8463
F: 646-417-5967

Gary E. Mason (admitted *pro hac vice*)
gmason@masonllp.com
Theodore B. Bell (admitted *pro hac vice*)
tbell@masonllp.com
Danielle L. Perry (admitted *pro hac vice*)
dperry@masonllp.com
Jacob Eisenberg (admitted *pro hac vice*)
jeisenberg@masonllp.com
**MASON & PERRY LLP**
5335 Washington Avenue NW, Suite 640
Washington, D.C. 20015
T: 202-429-2290

*Counsel for Defendant*

/s/ *Michael C. Subit*
Michael C. Subit (WSBA No. 29189)
msubit@frankfreed.com
**FRANK FREED SUBIT & THOMAS LLP**
705 2nd Avenue, Suite 1200
Seattle, WA 98104
T: 206-682-6711

*Local Counsel for Defendant*

DEF.'S OPP. TO VALVE'S
MOT. FOR PRELIM. INJ.
CASE NO. 2:26-CV-00698-JNW

20

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759