THE HON. JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

Plaintiff,

v.

JASON IRIAS,

Defendant.

**Case No. 2:26-cv-00698-JNW**

**DECLARATION OF GARY E. MASON IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**NOTE ON MOTION CALENDAR:**
May 27, 2026

Decl. of Gary E. Mason in Opp.
to Valve's Mot. for Prelim. Inj.
Case No. 2:26-cv-00698-JNW

1

**Siri & Glimstad LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

I, Gary E. Mason, declare as follows:

## I.    Valve Built the Arbitration System It Now Seeks to Escape.

1.    I am a founding partner of Mason LLP. Mason LLP represents Jason Irias and approximately 14,910 other individual consumers who, in December of 2023, submitted arbitration demands against Valve Corporation ("Valve") to the American Arbitration Association -- the forum Valve insisted upon for years in its Steam Subscriber Agreement ("SSA") and successfully defended twice in this District, including before this Court in 2021. I make this declaration in support of Mr. Irias's opposition to Valve's Motion for a Preliminary Injunction. I have personal knowledge of the matters set forth herein and could and would testify competently to these facts.

2.    In July 2012, Valve changed the SSA to add a new Section 11, which required individual arbitration of claims and a class action waiver. On July 31, 2012, Valve announced this change to millions of Steam users in a post published on its website, attached hereto as **Exhibit 1**. In that post, Valve told subscribers that the new dispute resolution process would "benefit you and Valve" and that arbitration was "faster and better for you and Valve while avoiding unnecessary costs." Valve described class actions as: (1) not providing "any real benefit to users;" (2) imposing "unnecessary expense and delay;" (3) being "often designed to benefit the class action lawyers who craft and litigate these claims;" and (4) not benefiting Valve's users or communities.

3.    On October 28, 2012, Mr. Irias became a Steam subscriber and accepted all terms of the SSA, including the mandatory arbitration and class action waiver clauses set forth in Section 11.

DECL. OF GARY E. MASON IN OPP.
TO VALVE'S MOT. FOR PRELIM. INJ.                    2
CASE NO. 2:26-CV-00698-JNW

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

4. Three months later, in a November 13, 2012, PCGames article, Valve's co-founder and president Gabe Newell was quoted as stating that the true purpose of the arbitration clause was to protect Valve from class actions. See **Exhibit 2** attached hereto.

5. Valve fought to enforce its arbitration in federal court, twice, in this District. In 2016, Valve moved to compel individual arbitration in *G.G. v. Valve Corp.*, No. 2:16-cv-01941 (W.D. Wash.), claiming that Section 11 has "consumer-friendly provisions," including specifically "[a]greeing Valve will pay all arbitration costs of claims under $10,000." G.G., ECF No. 10 at 6 (attached hereto as **Exhibit 3**). In its supporting reply memorandum, Valve relied upon the reimbursement obligation specifically to claim that "Valve's agreement to pay arbitration fees renders the provision not substantively unconscionable under Washington law." *G.G.*, ECF No. 29 at 10–11 (attached hereto as **Exhibit 4**). The Court compelled arbitration in that case, and the Ninth Circuit affirmed. *G.G. v. Valve Corp.*, 2017 WL 1210220 (W.D. Wash. Apr. 3, 2017), aff'd, 799 F. App'x 557 (9th Cir. 2020).

6. In 2021, Valve moved to compel individual arbitration again in *Wolfire Games, LLC v. Valve Corp.*, No. 2:21-cv-00563-JCC (W.D. Wash.). Once again, Valve argued that the reimbursement obligation made the clause fair and enforceable. Attached hereto as **Exhibit 5** is a true and correct copy of Valve's Motion to Compel Arbitration in Wolfire, Dkt. No. 35. On October 25, 2021, this Court granted Valve's motion and ordered that all consumer antitrust claims be arbitrated individually, and that "any objections with respect to the existence, scope or validity of the arbitration agreement" be resolved by each arbitrator in their respective cases. Wolfire, 2021 WL 4952220, at *3.

## II.    The Arbitrations Valve Demanded Became Expensive, So Valve Stopped Paying.

DECL. OF GARY E. MASON IN OPP.
TO VALVE'S MOT. FOR PRELIM. INJ.                    3
CASE NO. 2:26-CV-00698-JNW

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

7.     On December 15, 2023, in accordance with these rulings, Mason LLP filed arbitration demands with the AAA on behalf of 14,911 individual claimants. See Marks-Dias Decl. ¶ 3 (Dkt. 27). One of these claimants is Mr. Irias, the defendant in this action. Mr. Irias's demand was assigned AAA Case No. 01-23-0005-8758. Like the other claimants, Mr. Irias sought individual monetary damages under the Sherman Act for antitrust injuries arising from Valve's anticompetitive conduct in operating its Steam platform. No claimant, including Mr. Irias, asserted California UCL claims or otherwise sought public injunctive relief. Attached hereto as **Exhibit 6** is a true and correct copy of Mr. Irias's individual AAA demand. Each claimant provided my firm with their unique Steam ID, which my firm plugged into an online tool called the Steam Calculator (https://steamdb.info/calculator) to determine how much each spent on games on Steam, forming the basis of their individual demands. The Steam Calculator showed that Mr. Irias' Steam Account had Subscriptions to games with a combined purchase value of $1,192.48 at the time my firm prepared his demand for arbitration.

8.     On July 29, 2024, the AAA held an administrative conference at which it made clear that with no outstanding process issues, the 14,911 cases were ready for merits arbitrators. The next step was invoicing Valve $1,400 per case for case management fees—$20,875,400 in total.

9.     On September 26, 2024, Valve removed its arbitration clause entirely.

10.    That same day, Valve filed a Status Report with this Court in *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JNW ("In re Valve"), describing the SSA change. Attached hereto as **Exhibit 7** is a true and correct copy of that Status Report, Dkt. No. 362. In the Status Report, Valve represented that Arbitrator Jeffrey H. Dasteel "was the first and only arbitrator to squarely address the overall enforceability of the arbitration agreement in that SSA" and that he had "ruled

DECL. OF GARY E. MASON IN OPP.
TO VALVE'S MOT. FOR PRELIM. INJ.                    4
CASE NO. 2:26-CV-00698-JNW

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

that the arbitration agreement in the prior SSA was unenforceable." Status Report at 2. Despite its reliance on the *Dastell* rulings, Valve did not attach the Dasteel rulings to the Status Report.

11. On March 24, 2025, the AAA invoiced Valve $20,875,400 for its share of Case Management Fees for the 14,911 claims submitted in December of 2023. See Marks-Dias Decl. ¶ 16 (Dkt. 27). On April 23, 2025, Valve refused to pay its share of the fees. See Marks-Dias Decl. ¶ 17 (Dkt. 27); Marks-Dias Decl. Ex. 8 (Dkt. 27-1).

**III.    The Dasteel Rulings Do Not Apply to Mr. Irias.**

12. Attached hereto as **Exhibits 8, 9, 10, and 11** are true and correct copies of the four arbitral rulings issued by Arbitrator Dasteel between July and September 2024 in individual arbitrations brought by four claimants represented by Bucher Law PLLC—a separate law firm representing a different group of claimants in a separate tranche of arbitration proceedings.

13. Three of the four Dasteel rulings rested on California's "McGill Rule," established in *McGill v. Citibank, N.A.* (2017), which holds that contractual provisions waiving a consumer's right to seek public injunctive relief are invalid under California law. Because three Bucher Law claimants asserted Unfair Competition Law ("UCL") claims seeking public injunctive relief under California law—triggering *McGill*—the arbitrator determined the entire arbitration agreement was not enforceable as to these claimants pursuant to a "poison pill" provision of the agreement that rendered the entire agreement void if any part of the agreement that precluded class proceedings was found unlawful.

14. The fourth Dasteel ruling rested on a different claimant-specific ground. In that proceeding, it was determined that the claimant had opened their Steam account before 2012, *i.e.,* before Valve added the arbitration clause. Because Valve did not to show it provided

DECL. OF GARY E. MASON IN OPP.
TO VALVE'S MOT. FOR PRELIM. INJ.
CASE NO. 2:26-CV-00698-JNW

5

**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

adequate notice to this claimant of the new Section 11, Arbitrator Dasteel held that the arbitration clause was unenforceable against that claimant.

15.    Neither of these grounds applies to Mr. Irias (or any other of Mason LLP's 14,910 claimants). Mr. Irias is not a California resident. He asserts no UCL claims and seeks no public injunctive relief. See **Exhibit 6** (Mr. Irias's individual demand). Furthermore, it is undisputed that Mr. Irias opened his Steam account on of about October 28, 2012—several months *after* Valve added the arbitration clause in July 2012. See Marks-Dias Decl. ¶ 3; Lynch Decl. ¶ 13 (Dkts. 27, 26).

## IV.    <u>Valve ReimbursedClaimants' Fees Pursuant to Its Contractual Obligations under Section 11 of the SSA.</u>

16.    Valve implies that it offered to reimburse claimants' AAA filing due to Valve's withdrawal of arbitration agreement and that claimants' counsel accepted.  This is not entirely accurate. Section 11.C of the Superseded SSA expressly requires Valve to "promptly reimburse [the consumer's] filing fee and [the consumer's] share of any of AAA's arbitration costs, including arbitrator compensation" for claims seeking $10,000 or less. —See Lynch Decl. Ex. A § 11.C (Dkt. 26). —Mason LLP made numerous requests to Valve for that reimbursement under that SSA provision. Therefore, although Valve implies that the reimbursement was related to its withdrawal of the arbitration agreement, the reimbursement was already required by the terms of the arbitration agreement and was long overdue.

17.    On October 1, 2024, Mason LLP and Vorys, Sater, Seymour and Pease LLP confirmed receipt of the required reimbursement. See Marks-Dias Decl. Ex. 3 (Dkt. 27-1). In so doing, counsel made clear that it accepted the reimbursement "consistent with our prior requests

DECL. OF GARY E. MASON IN OPP.
TO VALVE'S MOT. FOR PRELIM. INJ.                    6
CASE NO. 2:26-CV-00698-JNW

**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

for reimbursement of claimants' AAA filing fees, *as provided by Steam's arbitration provision*." (emphasis added).

### V. The AAA Acted Independently Under Section 1281.98—It Was Not Responding to a Request from Mason LLP.

18. Valve's motion implies that the AAA placed the 14,911 cases in abeyance because Mason LLP requested it. See Marks-Dias Decl. ¶ 18 (Dkt. 27). That characterization is not entirely accurate.

19. On April 25, 2025, the AAA—acting on its own, in response to Valve's April 23, 2025 refusal to pay, cited California Code of Civil Procedure § 1281.98 and asked counsel for Mr. Irias and the other 14, 910 claimants how they wished to proceed under that statute. The AAA's email stated: "Pursuant to CA CCP 1281.98, AAA requests Claimants review the relevant section of the statute and provide a response on how they wish to proceed." See **Exhibit 12** attached hereto.

20. On April 30, 2025, Mason LLP responded to the AAA's inquiry by electing to proceed under both Cal. CCP § 1281.98(b)(3) (which allows a claimant to seek a court order compelling a recalcitrant company to pay outstanding arbitration fees) and § 1281.98(b)(4) (which allows a claimant to advance said fees and proceed with arbitration). Attached hereto as **Exhibit 13** is a true and correct copy of Mason LLP's April 30, 2025, letter to the AAA. In response, Valve demanded that all arbitrations against the company be closed immediately. Attached hereto as **Exhibit 14** is a true and correct copy of Valve's May 1, 2025, letter to the AAA.

20. On May 15, 2025, the AAA placed the 14,911 December 2023 Submitted Claims "in abeyance" pending a court ruling on Valve's fee obligation. See **Exhibit 15** attached hereto.

DECL. OF GARY E. MASON IN OPP.
TO VALVE'S MOT. FOR PRELIM. INJ.                    7
CASE NO. 2:26-CV-00698-JNW

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

21.     In addition, the AAA's May 15, 2025, directive also specifically authorized individual claimants to advance Valve's unpaid Case Management Fees and proceed with their individual arbitrations. As the AAA's letter states: "[T]he AAA will proceed with case administration of a subset of cases… upon receipt of Claimants' identification of the subset, and Claimants' corresponding advanced payment of Respondent's Case Management Fees for the subset." Dkt. 27-1 at 40.

**VI.     Mr. Irias Followed the AAA's Directive.**

22.     On December 17, 2025, Mason LLP notified the AAA that Mr. Irias had elected to move forward with his arbitration and that Mason LLP would advance Valve's Case Management Fees on his behalf. See Marks-Dias Decl. ¶ 19 (Dkt. 27). Mason LLP has advanced those fees. Mr. Irias did nothing beyond what the AAA's own directive specifically authorized.

23.     On January 28, 2026, the AAA commenced administration of Mr. Irias's individual arbitration, confirming that all administrative requirements were met. See Marks-Dias Decl. ¶ 20 (Dkt. 27). On February 3, 2026, Valve objected on the ground that the Current SSA eliminates arbitration and Mr. Irias is bound by it. See Marks-Dias Decl. ¶ 21 (Dkt. 27). On February 6, 2026, the AAA overruled Valve's objections and confirmed it would proceed with the appointment of a merits arbitrator, who would resolve any arbitration challenges Valve wished to make. See Marks-Dias Decl. ¶ 22 (Dkt. 27).

24.     On February 27, 2026, Valve filed this action and asked AAA to enter a stay of Mr. Irias's arbitration. AAA entered a renewable 90-day stay pursuant to AAA Consumer Rule R-2 and Mr. Irias's arbitration is presently stayed.

**VII.     VII. The Process Arbitrator's February 2026 Ruling Does Not Apply to Mr. Irias.**

DECL. OF GARY E. MASON IN OPP.
TO VALVE'S MOT. FOR PRELIM. INJ.                    8
CASE NO. 2:26-CV-00698-JNW

SIRI & GLIMSTAD LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759

25. Valve references a Process Arbitrator's Order staying approximately 5,000 Mason LLP cases from the April 2024 tranche under *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024). Mr. Irias is not subject to that Order, for three independent reasons.

26. First, the Process Arbitrator was appointed solely for the April 2024 tranche of of 5,000 arbitration demands. Mr. Irias filed his demand in December 2023—four months before the April 2024 tranche—in a separate tranche of proceedings. The Process Arbitrator had no authority over, nor does his Order purport to cover, any claimants in the December 2023 tranche to which Mr. Irias belongs.

27. Second, on May 14, 2024, the AAA specifically determined that no Process Arbitrator would be appointed for the December 2023 tranche and that the next administrative step for those cases was selection of merits arbitrators. *See* **Exhibit 16** attached hereto. That determination was never reversed and continues to govern the AAA's administration of Mr. Irias's arbitration.

28. Third, the Process Arbitrator held that the question of which SSA applies is "a substantive, threshold question of contract law" outside his authority to decide. Process Arbitrator Order at 8–9, Marks-Dias Decl. Ex. 16, Dkt. 27. In other words, the Process Arbitrator refused to rule on the same question Valve asks this Court to decide. As such, the Process Arbitrator's Order has no bearing on this matter and does not pertain to Irias.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of May, 2026, in Bethesda, Maryland.

Respectfully submitted,

DECL. OF GARY E. MASON IN OPP.
TO VALVE'S MOT. FOR PRELIM. INJ.                    9
CASE NO. 2:26-CV-00698-JNW

MSTAD **LLP**
reet, Ste. 401
, MN 55415
220-2759

Gary E. Mason (*pro hac vice*)
**Mason & Perry LLP**
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015
Tel.: (202) 429-2290
Email: gmason@masonllp.com

*Counsel for Defendant Jason Irias*

Decl. of Gary E. Mason in Opp.
to Valve's Mot. for Prelim. Inj.          10
Case No. 2:26-cv-00698-JNW

Siri & Glimstad LLP
400 S. 4th Street, Ste. 401
Minneapolis, MN 55415
Tel: (929) 220-2759