The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

VALVE CORPORATION,

                    Plaintiff,

          v.

JASON IRIAS,

                    Defendant.

No. 2:26-cv-00698-JNW

**PLAINTIFF VALVE CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

**NOTE ON MOTION CALENDAR: June 3, 2026**

**ORAL ARGUMENT REQUESTED**

PLAINTIFF VALVE
CORPORATION'S REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
(No. 2:26-cv-000698-JNW)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................1

II.   THE MOTION FOR PRELIMINARY INJUNCTION SHOULD BE GRANTED ...........1

    A.    Valve Has Demonstrated a Likelihood of Success on the Merits............................2

        1.    Defendant Consented to the Current SSA ...................................................2

        2.    The Current SSA's Dispute Resolution Provision is Enforceable Notwithstanding the Survivorship Clause in the Superseded SSA..............3

        3.    The Current SSA Does Not Violate the Implied Covenant of Good Faith and Fair Dealing .................................................................................4

        4.    Applying the Forum Selection Clause in the Current SSA to This Defendant Is Not Unconscionable ................................................................6

            (a)    The Forum Selection Clause in the Current SSA Is Not Procedurally Unconscionable ............................6

            (b)    The Forum Selection Clause in the Current SSA Is Not Substantively Unconscionable .........................8

        5.    Equitable Estoppel Is Not Applicable...........................................................8

        6.    Valve Does Not Seek Mid-Arbitration Judicial Interference—It Seeks to Stop Unauthorized Arbitrations......................................................9

    B.    Valve Will Face Irreparable Harm if Forced to Arbitrate.....................................10

    C.    The Relative Interests of The Parties Favor an Injunction ...................................10

    D.    The Public Interest Favors an Injunction.............................................................11

    E.    The Court Should Not Require a Bond..................................................................12

III.  CONCLUSION....................................................................................................12

PLAINTIFF VALVE
CORPORATION'S REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
(No. 2:26-cv-000698-JNW) - ii

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*A.C. ex rel. Carbajal v. Nintendo of America Inc.*,
No. C20-1694 TSZ,
2021 WL 1840835 (W.D. Wash. Apr. 29, 2021)..................................................6

*Aerojet-General Corp. v. American Arbitration Ass'n*,
478 F.2d 248 (9th Cir. 1973) .................................................9

*In re Amazon Prime Video Litigation*,
765 F. Supp. 3d 1165 (W.D. Wash. 2025).................................................5

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538 (1974)..................................................8

*Aniel v. GMAC Mortgage, LLC*,
No. C 12-04201 SBA,
2012 WL 5373388 (N.D. Cal. Oct. 30, 2012)..................................................2

*Applied Energetics, Inc. v. NewOak Capital Markets, LLC*,
645 F.3d 522 (2d Cir. 2011)..................................................3

*Badgett v. Security State Bank*,
116 Wash. 2d 563 (1991)..................................................4

*Bassett v. Electronic Arts Inc.*,
No. 13-CV-04208 (MKB)(SMG),
2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015),
*report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015)....................6 ,7

*Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Insurance Co.*,
671 F.3d 635 (7th Cir. 2011) .................................................9

*Camping Construction Co. v. District Council of Iron Workers*,
915 F.2d 1333 (9th Cir. 1990) .................................................10

*Cobb v. Ironwood Country Club*,
233 Cal. App. 4th 960 (2015) .................................................5

*Cunico Corp. v. Custom Alloy Corp.*,
No. CV 14-1234 PA (AJWx),
2017 WL 8793221 (C.D. Cal. Dec. 15, 2017),
*aff'd*, 772 F. App'x 595 (9th Cir. 2019)..................................................7

PLAINTIFF VALVE
CORPORATION'S REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
(No. 2:26-cv-000698-JNW) - iii

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Dasher v. RBC Bank (USA)*,
    882 F.3d 1017 (11th Cir. 2018) ..........................................................................................7

*Dasher v. RBC Bank (USA)*,
    745 F.3d 1111 (11th Cir. 2014) ..........................................................................................3

*Dlugolecki v. PeopleConnect, Inc.*,
    No. CV 20-3657-GW-GJSx,
    2020 WL 13587803 (C.D. Cal. Nov. 9, 2020)....................................................................4

*Goggins v. Amazon.com Inc.*,
    No. 2:24-cv-00257,
    2025 WL 2782872 (W.D. Wash. Sep. 30, 2025)..........................................................2, 4

*Gray v. Amazon.com, Inc.*,
    653 F. Supp. 3d 847 (W.D. Wash. 2023),
    *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024)...........................................................5, 6

*Haider v. Lyft, Inc.*,
    No. 20-cv-2997 (AJN),
    2021 WL 3475621 (S.D.N.Y. Aug. 6, 2021) .....................................................................7

*Kater v. Churchill Downs Inc.*,
    423 F. Supp. 3d 1055 (W.D. Wash. 2019).......................................................................12

*Majidi-Ahy v. ClassPass, Inc.*,
    No. 2:25-cv-05003-KS,
    2026 WL 585465 (C.D. Cal. Feb. 11, 2026)......................................................................4

*Missing Link, Inc. v. eBay, Inc.*,
    No. C-07-04487 RMW,
    2008 WL 3496865 (N.D. Cal. Aug. 12, 2008) ...............................................................4, 7

*Morgan Stanley & Co. v. Couch*,
    659 F. App'x 402 (9th Cir. 2016) ....................................................................................11

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) ...........................................................................................4

*NYLIFE Securities, LLC v. Duhame*,
    No. 20-cv-07413-JSC,
    2020 WL 7075599 (N.D. Cal. Dec. 3, 2020) ..................................................................11

*Oatway v. Experian Information Solutions, Inc.*,
    No. 2:24-cv-00523-LK,
    2024 WL 4879822 (W.D. Wash. Nov. 25, 2024) ..............................................................2

PLAINTIFF VALVE
CORPORATION'S REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
(No. 2:26-cv-000698-JNW) - iv

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Pilon v. Discovery Communications, LLC*,
   769 F. Supp. 3d 273 (S.D.N.Y. 2025)........................................................................5

*Postmates v. 10,356 Individuals*,
   No. CV 20-2783 PSG (JEMx),
   2020 WL 1908302 (C.D. Cal. Apr. 15, 2020) ..........................................................10

*Russell v. Citigroup, Inc.*,
   748 F.3d 677 (6th Cir. 2014) ....................................................................................7

*Saeedy v. Microsoft Corp.*,
   757 F. Supp. 3d 1172 (W.D. Wash. 2024)................................................................5

*Saucedo v. Experian Information Solutions, Inc.*,
   No. 1:22-cv-01584-ADA-HBK,
   2023 WL 4708015 (E.D. Cal. July 24, 2023) ..........................................................4

*Saunders v. Lloyd's of London*,
   113 Wash. 2d 330 (1989)..........................................................................................9

*SCPS LLC v. Kind Law*,
   No. CV 25-3255-MWF (SSCx),
   2026 WL 96898 (C.D. Cal. Jan. 8, 2026) .............................................................5, 8

*In re Sussex*,
   781 F.3d 1065 (9th Cir. 2015) ..................................................................................9

*Tadych v. Noble Ridge Construction, Inc.*,
   200 Wash. 2d 635 (2022)..........................................................................................8

*Valve Corporation v. Abbruzzese*,
   No. 2:24-cv-1717-JNW,
   2026 WL 1481630 (W.D. Wash. May 27, 2026)............................................. *passim*

*Washington Central Railroad Co. v. National Mediation Board*,
   830 F. Supp. 1343 (E.D. Wash. June 25, 1993)........................................................2

*Zuver v. Airtouch Communications, Inc.*,
   153 Wash. 2d 293 (2004)..........................................................................................8

PLAINTIFF VALVE
CORPORATION'S REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
(No. 2:26-cv-000698-JNW) - v

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I.    <u>INTRODUCTION</u>

Valve's Motion for Preliminary Injunction[1] establishes every predicate for preliminary injunctive relief:

*First*, Valve is likely to succeed on the merits: the Current SSA is valid and enforceable. Although this Court declined to preliminarily enjoin some arbitrations under the Current SSA in *Valve Corporation v. Abbruzzese*, 2026 WL 1481630 (W.D. Wash. May 27, 2026), on unconscionability grounds, Valve respectfully suggests that it will ultimately prevail in that case. *Abbruzzese* is also distinguishable. The Court reasoned that enforcing the Current SSA's forum provision would "fall hard on the Defendants" by "unwind[ing] the work and expense" they incurred and "threaten[] awards[]" they secured or were close to securing. Not so here: Defendant's arbitration has not commenced—indeed, the AAA has not even assigned a merits arbitrator. The Court further concluded that the *Abbruzzese* defendants proffered "evidence" showing that their Steam libraries "average[d] more than $3,000 in purchased content," creating a "forced election" to agree to the Current SSA or forfeit game licenses. Defendant here proffered no such evidence.

*Second*, Valve will suffer irreparable harm if Defendant's arbitration continues.

*Third*, the balance of equities supports an injunction. Defendant conjures a parade of horribles, such as "the loss of a pending individualized proceeding" or paying filing fees, but Defendant can still pursue an "individualized proceeding" in court if he chooses, and Valve already reimbursed his filing fees. Defendant may also participate in the pending putative class action.

*Fourth*, the public interest favors an injunction. Defendant points to a policy under the FAA to enforce agreements according to their terms, but that policy is irrelevant when there is no agreement to arbitrate.

## II.    <u>THE MOTION FOR PRELIMINARY INJUNCTION SHOULD BE GRANTED</u>

Defendant asserts that this Court should not give weight to statements in the Lynch Declaration that are based on "Valve's business records." (Opp'n 4.) This argument fails because

---

[1] Capitalized terms have the meanings ascribed to them in the Motion. Unless noted, internal citations and quotations are omitted and all emphasis is added.

PLAINTIFF VALVE
CORPORATION'S REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
(No. 2:26-cv-000698-JNW) - 1

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Defendant cites no authority. *See Aniel v. GMAC Mortg., LLC*, 2012 WL 5373388, at *6 (N.D. Cal. Oct. 30, 2012) (rejecting same argument where plaintiffs "did not cite any authority"). In any event, a declarant's "personal knowledge can come from the review of the contents of business records." *Oatway v. Experian Info. Sols., Inc.*, 2024 WL 4879822, at *4-5 (W.D. Wash. Nov. 25, 2024); *accord Wash. Cent. R.R. Co. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. June 25, 1993).

### A.     Valve Has Demonstrated a Likelihood of Success on the Merits

#### 1.     Defendant Consented to the Current SSA

Defendant argues that "merely logging in, without more" is insufficient to manifest assent. (Opp'n 5.) That is incorrect. Users manifest assent if they continue to use a service after receiving notice of updated terms. (Mot. 13); *see also Goggins v. Amazon.com Inc.*, 2025 WL 2782872, at *6 (W.D. Wash. Sep. 30, 2025) (enforcing updated terms pursuant to change of terms provision where after plaintiff received notice of modification, he accessed the website and "[a]t no point then—or since—did [the plaintiff] discontinue [his] membership") (Whitehead, J.). And the Court in *Abbruzzese* suggested (without expressly deciding) that continued use was sufficient to manifest assent by analyzing enforceability for individuals who, like Defendant, continued using Steam but did not affirmatively assent. *See Abbruzzese*, 2026 WL 1481630, at *7-10. Defendant cites no case holding that a log in is insufficient to establish continued use of a service for purposes of contract formation.

Defendant continued using Steam after receiving notice of the Current SSA and after it went into effect. (*See* Mot. 10-15.) Valve's email notice informed Defendant, consistent with the terms of the Superseded SSA, that the Current SSA would become effective November 1, 2024, unless he deleted or discontinued use of his account. (Mot. 14.) Defendant did neither: he logged into his account on December 11, 2025; he used the Steam mobile app on March 2, 2026. (*Id.* at 15.) Defendant asserts in an unsworn opposition brief that he logged in only once, "involving no game play, no purchases, [and] no wallet funding," (Opp'n 8), but provides no supporting evidence.

PLAINTIFF VALVE
CORPORATION'S REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
(No. 2:26-cv-000698-JNW) - 2

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

### 2. The Current SSA's Dispute Resolution Provision is Enforceable Notwithstanding the Survivorship Clause in the Superseded SSA

Defendant's contention that the survivorship clause in the Superseded SSA "continues to preserve the right to arbitrate" is wrong. (Opp'n 8.) A dispute resolution provision in an updated agreement is enforceable when the agreement articulates that intent, even if the superseded agreement contained a survivorship clause. *See Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 524-26 (2d Cir. 2011) ("parties are free to revoke an earlier agreement to arbitrate by executing a subsequent agreement the terms of which plainly preclude arbitration").

The survivorship clause in the Superseded SSA applies only where the agreement expires or is terminated. Neither happened here. The Current SSA states that it "replaces and supersedes your existing agreement with Valve." (Opp'n 8.) Defendant offers no support for his contention that "[t]his general language is insufficient to defeat the explicit language of the Superseded SSA's survivorship clause." (*Id.*) On the contrary, in *Abbruzzese*, this Court held that the Current SSA, "on its face, reaches the pending arbitrations." 2026 WL 1481630, at *6.

Defendant seeks to distinguish *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014), because (i) in *Dasher*, the parties intended to execute a new agreement whereas here, Defendant had "a single passive log-in," and (ii) *Dasher* did not involve a survivorship clause. (Opp'n 8.) Neither ground is viable:

- *First*, the Superseded SSA provided that "Valve may amend this agreement . . . you will be notified by e-mail of any amendment to this Agreement made by Valve at least [thirty] (30) days before the effective date of the amendment . . . Your failure to cancel your Account prior to the effective date of the amendment will constitute your acceptance of the amended terms." (Ex. A § 8(B).) Consistent with this term, the email notice and pop-up provided: "[T]he updated [SSA] will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then." (Lynch Decl. ¶ 8.) Defendant did not delete or discontinue use of his account; instead, he logged into his account in 2025 and used the Steam mobile app in 2026. (*Id.* ¶¶ 15-

PLAINTIFF VALVE
CORPORATION'S REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
(No. 2:26-cv-000698-JNW) - 3

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

17.) Courts consistently enforce modified agreements where the agreement states that continued use after a modification will constitute the party's assent. *See, e.g.*, *Dlugolecki v. PeopleConnect, Inc.*, 2020 WL 13587803, at *2 (C.D. Cal. Nov. 9, 2020); *Goggins*, 2025 WL 2782872, at *10.

- *Second*, while *Dasher* did not involve a survivorship clause, nor does this case. The Superseded SSA neither expired nor was terminated. It was superseded.

Defendant seeks to distinguish *Majidi-Ahy v. ClassPass, Inc.*, 2026 WL 585465 (C.D. Cal. Feb. 11, 2026), because there, the plaintiff received notice of the updated agreement whereas here "Valve has not demonstrated that [he] saw or even received the email Valve claims it sent." (Opp'n 9.) But courts uniformly hold that email notice is sufficient. (Mot. 13.) Moreover, whether Defendant chose to read the terms that he was presented with is, as a matter of law, irrelevant to whether he is bound. *See, e.g.*, *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1225 n.4 (9th Cir. 2013) (plaintiffs "bound by [consumer] contract, even if they did not read it"); *Saucedo v. Experian Info. Sols., Inc.*, 2023 WL 4708015, at *6 (E.D. Cal. July 24, 2023) (similar).

### 3. The Current SSA Does Not Violate the Implied Covenant of Good Faith and Fair Dealing

Defendant argues that the SSA amendment violates the implied covenant of good faith and fair dealing. (Opp'n 10.) Defendant is wrong:

*First*, Valve did not exceed its rights under the Superseded SSA. The implied covenant "requires only that the parties perform in good faith the obligations imposed by their agreement" and does not "inject substantive terms into the parties' contract." *Badgett v. Sec. State Bank*, 116 Wash. 2d 563, 569, 574 (1991) (en banc). "[I]f the defendant did what it was expressly given the right to do, there can be no breach" of the implied covenant because "the conduct is, by definition, within the reasonable expectation of the parties." *Missing Link, Inc. v. eBay, Inc.*, 2008 WL 3496865, at *5 (N.D. Cal. Aug. 12, 2008). Here, the Superseded SSA expressly included amendment procedures. Defendant does not dispute that Valve complied with those procedures.

*Second*, as Defendant concedes (Opp'n 10), the implied covenant "ordinarily works to save

PLAINTIFF VALVE CORPORATION'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION (No. 2:26-cv-000698-JNW) - 4

provisions allowing *unilateral* modifications—even retroactive ones—from being considered illusory, since the covenant bars the party with unilateral power to modify from using that power capriciously." *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 295 (S.D.N.Y. 2025) (emphasis in original). The covenant, however, "does not prevent parties from mutually modifying their contracts." *Id.* Parties are always free to enter into a new agreement that supersedes a prior agreement, and such agreements may apply retroactively, including to accrued claims. *Id.* (implied covenant did not prevent mutual modification that applied to accrued claim); *SCPS LLC v. Kind Law*, 2026 WL 96898, at *9-10 (C.D. Cal. Jan. 8, 2026) (enforcing updated agreement to accrued claims and explaining that "the result would be the same even if the [claimants] had assented [to the updated agreement] **after initiating arbitrations with the AAA**").

Here, the SSA amendment was mutual, not unilateral. For online transactions, "a determination of mutual assent often turns on whether a consumer had reasonable notice of the terms." *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1189 (W.D. Wash. 2024). Valve provided notice through several channels, and Steam users could agree to the new terms through use of Steam, as Defendant did. (Mot. 11-13.) Thus, this was a mutual amendment. *See Pilon*, 769 F. Supp. 3d at 288, 295. Defendant's assertion that "a one-time log-in" is not an "explicit expression of consent" is unsupported and does not alter this analysis. (Opp'n 6.) The authority on which Defendant relies, *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015) (Opp'n 11), addressed unilateral amendments, and its reasoning "does not extend to mutual modifications." *Pilon*, 769 F. Supp. 3d at 295 (distinguishing *Cobb*).

Courts routinely enforce modified consumer agreements that require acceptance of new terms as a condition of using the service. *See Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 857 n.9 (W.D. Wash. 2023) (updated terms apply where terms "expressly provide that users' 'continued use of Alexa' after any modifications to that agreement constitutes [their] acceptance of the terms" (alteration in original)), *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024); *In re Amazon Prime Video Litig.*, 765 F. Supp. 3d 1165, 1170, 1173 (W.D. Wash. 2025) (similar). That is precisely what occurred here.

PLAINTIFF VALVE
CORPORATION'S REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
(No. 2:26-cv-000698-JNW) - 5

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Third*, even if the amendment were "unilateral," it was made in good faith and without any "questionable timing." (Opp'n 11.) Valve amended the SSA only after arbitral rulings found the arbitration provision in the Superseded SSA was unenforceable, and a putative class action was commenced on that basis. (Compl. ¶ 3.)

### 4. Applying the Forum Selection Clause in the Current SSA to This Defendant Is Not Unconscionable

#### (a) The Forum Selection Clause in the Current SSA Is Not Procedurally Unconscionable

Valve acknowledges this Court's ruling in *Abbruzzese* that certain Steam users could likely show procedural unconscionability because they lacked a meaningful choice whether to enter into the Current SSA. 2026 WL 1481630, at *8. Valve respectfully submits that this conclusion was erroneous, because video games are nonessential activities and a consumer always has the option of forgoing a nonessential activity. (Mot. 15); *see also A.C. ex rel. Carbajal v. Nintendo of Am. Inc.*, 2021 WL 1840835, at *3 (W.D. Wash. Apr. 29, 2021) (no unconscionability because plaintiff "had a meaningful choice to . . . return his Nintendo"). Moreover, courts applying Washington law enforce modified consumer contracts where there is no option to reject the new terms and continue using the service. *See*, *e.g.*, *Gray*, 653 F. Supp. 3d at 857 n.9.

This Court further held that defendants were likely to be able to show that "[t]o reject the [Current] SSA, the consumer had to abandon . . . access to her Steam account and the game license(s) she had already bought." *Abbruzzese*, 2026 WL 1481630, at *8. But those licenses are for games—nonessential activities that Defendant may choose to forgo. The decision in *Bassett v. Electronic Arts Inc.*, 2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015), *report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015), illustrates the point. There, a consumer plaintiff purchased a video game and, after the purchase, was required to agree to an arbitration agreement before registering his online account. The plaintiff argued that the defendant "effectively forced him to agree to the [arbitration agreement]" because "[b]y the time he tried to access the product's online play feature, [he] had already purchased the game and could not return it." Opp'n to Motion to Compel at 24, *Bassett v. Elec. Arts Inc.*, No. 1:13-cv-04208-MKB-SMG (E.D.N.Y. filed May

PLAINTIFF VALVE
CORPORATION'S REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
(No. 2:26-cv-000698-JNW) - 6

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

23, 2014), Dkt. 29. The court rejected this argument, holding that there was "no need to evaluate" unconscionability because, although the plaintiff had already made his purchase, he could forgo playing his video game. *Bassett*, 2015 WL 1298644, at *11 (citing cases).

Regardless, Valve respectfully suggests that Defendant had a choice that would not require him to forfeit his licenses. Valve's notices specified that Steam users could reject the proposed modifications *and* retain the licenses they had purchased to use games on Steam by discontinuing use of the platform while arbitrating. (Mot. 15.) Defendant's counsel is aware of Valve's position: on June 26, 2025, Valve agreed to arbitrate with another of Defendant's counsel's clients—Ryan Lally—because he had not logged onto Steam. (Mot. 15; Marks-Dias Decl. ¶ 11, Ex. 2.) Nonetheless, long after Valve expressed its willingness to arbitrate with users who had not logged on, on December 11, 2025, Defendant logged onto Steam. In doing so, Defendant chose to assent to the Current SSA. That Defendant was required to discontinue use or delete his account if he did not agree with an amendment should come as no surprise to him as it was within his "reasonable expectations": Defendant agreed to such a provision in both the Superseded and Current SSA. *See Missing Link, Inc.*, 2008 WL 3496865, at *5; *accord Cunico Corp. v. Custom Alloy Corp.*, 2017 WL 8793221, at *7 (C.D. Cal. Dec. 15, 2017), *aff'd*, 772 F. App'x 595 (9th Cir. 2019).

Defendant also had another potential path: agree to the Current SSA, continue to enjoy his licenses without discontinuing use of Steam, and participate in the putative consumer class action his former counsel Vorys is prosecuting.

The Court noted that Valve presented its notice of the Current SSA directly to Steam users. *Abbruzzese*, 2026 WL 1481630, at *8. But Valve also gave written notice to Defendant's counsel *the day after* the update. (Marks-Dias Decl. ¶ 10; Ex. 1.) This notice distinguishes this case from *Dasher v. RBC Bank (USA)*, 882 F.3d 1017 (11th Cir. 2018), and *Russell v. Citigroup, Inc.*, 748 F.3d 677 (6th Cir. 2014), where no such communication with counsel occurred. Nor is there anything improper—let alone procedurally unconscionable—about a business communicating directly and uniformly with all its consumers to present an updated agreement, even where litigation is pending. *See, e.g.*, *Haider v. Lyft, Inc.*, 2021 WL 3475621, at *3 (S.D.N.Y. Aug. 6,

PLAINTIFF VALVE
CORPORATION'S REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
(No. 2:26-cv-000698-JNW) - 7

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

2021) (Claimants "cite no authority for the proposition that an amendment to a company's terms of service may constitute a prohibited communication with a represented party."); *SCPS*, 2026 WL 96898, at *9 (rejecting contention that businesses went "around counsel's back" to obtain claimants' assent to the updated agreement).

### (b)    The Forum Selection Clause in the Current SSA Is Not Substantively Unconscionable

The forum provision in the Current SSA is also not substantively unconscionable. Courts find substantive unconscionability where terms are "[s]hocking to the conscience," "monstrously harsh," or "exceedingly calloused." *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash. 2d 293, 303 (2004). "A contract provision becomes substantively unconscionable when it eliminates otherwise established statutory rights and is one sided, benefiting the contract drafter, is also not prominently set out in the contract, is not negotiated or bargained for, and provides no benefit to the affected party." *Tadych v. Noble Ridge Constr., Inc.*, 200 Wash. 2d 635, 645-46 (2022).

*First*, the forum provision in the Current SSA does not eliminate established statutory rights. The Current SSA permits Defendant to proceed in court. Because the pending *Wolfire* class action tolls the statute of limitations for all putative class members, including Defendant, there is no risk that his claims will become time-barred. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-53 (1974). Valve does not dispute that *American Pipe* tolling applies.

*Second*, the Current SSA is not impermissibly one-sided. Defendant's arbitration claim is at its most preliminary stage; the AAA has not even appointed an arbitrator. (Mot. 7.) And Valve reimbursed Defendant's AAA filing fees. (Marks-Dias Decl. ¶¶ 12-13.) Far from imposing a one-sided benefit to Valve, the Current SSA conferred substantial benefits on Defendant. It freed him from the arbitration agreement the class representatives in *Wolfire* challenged and that an arbitrator ruled was unenforceable. (Mot. 5.) It gave him access to the judicial forum. And it offered him the ability to pursue or participate in putative class proceedings.

### 5.    Equitable Estoppel Is Not Applicable

Defendant argues that "Valve cannot equitably claim the benefits of the SSA . . . while

PLAINTIFF VALVE
CORPORATION'S REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
(No. 2:26-cv-000698-JNW) - 8

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

simultaneously avoiding the burden of the arbitration agreement it drafted and enforced." (Opp'n 13-14.) Equitable estoppel requires acts that are "inconsistent" and inequitable. *See Saunders v. Lloyd's of London*, 113 Wash. 2d 330, 340 (1989). Valve has not taken inconsistent positions. Valve filed its motion to compel seven consumers—not including Defendant—to arbitration under an older version of the SSA **before** an arbitrator ruled that the Superseded SSA (a subsequent version) was unenforceable and **before** Valve removed the arbitration provision.[2] (Compl. ¶ 3; Mot. 5.) Taking Defendant's argument to its logical extreme, by successfully moving to compel arbitration, a business is permanently estopped from ever entering into a new agreement without an arbitration provision.

### 6.    Valve Does Not Seek Mid-Arbitration Judicial Interference—It Seeks to Stop Unauthorized Arbitrations

Defendant argues that Valve's "effort to enjoin an ongoing arbitration" is "the kind of mid-arbitration judicial interference that the FAA prohibits." (Opp'n 14.) However, the cases on which Defendant relies involve requests for court interference with interim orders issued during arbitration where the parties indisputably agreed to arbitrate. *See In re Sussex*, 781 F.3d 1065, 1070-76 (9th Cir. 2015) (rejecting request to overturn the AAA's refusal to remove an arbitrator); *Aerojet-Gen. Corp. v. Am. Arb. Ass'n*, 478 F.2d 248, 251-52 (9th Cir. 1973) (rejecting challenge to arbitrator's choice of locale); *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638-39 (7th Cir. 2011) (rejecting challenge to de-consolidation).

Here, Valve is not asking the Court to interfere mid-arbitration with a decision delegated to an arbitrator or arbitration provider. Rather, Valve is asking the Court to decide an issue that this Court has already concluded is within its authority: whether an arbitration agreement exists. *Abbruzzese*, 2026 WL 1481630, at *6 n.6; *see also* (Mot. 10).

---

[2] The court in *Wolfire* compelled arbitration under versions of the SSA that went into effect before October 25, 2021. *Wolfire Games, LLC v. Valve Corp.*, No. C21-0563-JCC, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021). The Superseded SSA went into effect April 25, 2023. (Lynch Decl. Ex. A.)

PLAINTIFF VALVE
CORPORATION'S REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
(No. 2:26-cv-000698-JNW) - 9

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**B.    Valve Will Face Irreparable Harm if Forced to Arbitrate**

Defendant argues that "[b]y seeking a mandatory injunction, Valve's burden is 'doubly demanding'" and Valve "must establish that the law and facts clearly favor [its] position." (Opp'n 15.) However, this Court already held in *Abbruzzese* that a request to enjoin an arbitration is a "quintessential prohibitory injunction." 2026 WL 1481630, at *6.

Defendant also contends that "the Ninth Circuit has expressly rejected the proposition that 'unnecessarily undergoing arbitration proceedings' is irreparable injury." (Opp'n 16.) But Defendant's authorities are distinguishable. In *Camping Constr. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333 (9th Cir. 1990), the Ninth Circuit reversed an order enjoining arbitration of a labor dispute because a federal statute "severely restricted the jurisdiction of the federal courts to issue injunctions in 'any labor dispute.'" *Id.* at 1341. And in *Postmates v. 10,356 Individuals*, 2020 WL 1908302 (C.D. Cal. Apr. 15, 2020), the court denied injunctive relief because "Plaintiff [did] *not* argue that Defendants' wage and hour claims themselves [were] *non-arbitrable*," "but instead [took] issue with the method Defendants' counsel [had] used"—proceeding as a de facto class arbitration rather than on an individual basis. *Id.* at *8 (emphasis in original).

This Court in *Abbruzzese* concluded that Valve could not show irreparable harm because Valve had compelled the consumers to arbitration and "litigated there for more than a year before deciding it preferred court." 2026 WL 1481630, at *10. But Valve did not move to compel—nor did the court compel—Defendant to arbitrate in *Wolfire*. The court there compelled only seven other individuals, represented by other counsel, to arbitrate under an older version of the SSA that preceded the Superseded SSA. The court issued its order in 2021, years before Defendant filed his arbitration. Nor have the parties here engaged in any substantive arbitration proceedings.

**C.    The Relative Interests of The Parties Favor an Injunction**

Defendant contends that equity weighs in his favor because he faces "the loss of a pending individualized proceeding." (Opp'n 16.) He argues that an "injunction would strand [his] investment of time and effort" because he paid filing fees and "proceeded through the AAA process." (*Id.*) However, Defendant can proceed on an individual basis in court, he has invested

PLAINTIFF VALVE
CORPORATION'S REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
(No. 2:26-cv-000698-JNW) - 10

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

no time or effort (as his claims are still at the preliminary, administrative stage, without an arbitrator selected), and Valve reimbursed his filing fees. (Mot. 6-7.)

Defendant also argues that *Wolfire* is an inadequate substitute for individual arbitration because he is not a named plaintiff, a class has not been certified, and no judgment is imminent. (Opp'n 16.) Defendant distinguishes Valve's authority on the grounds that, in those cases, parallel government proceedings sought the same relief as the party in arbitration—an order enjoining a merger—thus, there would be no prejudice from an injunction. (Opp'n 17.) But *Wolfire* asserts overlapping claims on behalf of a putative class that would include Defendant, and Defendant fails to explain why filing an individual action in court as allowed by the Current SSA is inadequate.

This Court held in *Abbruzzese* that the balance of the equities tipped in favor of the defendants there because "by the time of argument, some had prevailed on liability or completed their merits hearings, and arbitrators had begun entering awards in their favor." 2026 WL 1481630, at *11. Not so for Defendant, whose merits arbitration has not even begun.

### D.    The Public Interest Favors an Injunction

Defendant does not contest Valve's authority showing that "[t]here is no public interest in compelling" a party "to arbitrate if it does not have to" or in allowing an arbitration to proceed only to result in motions to vacate. (Mot. 20-21.)

Defendant argues that the FAA "reflects a policy of enforcing arbitration agreements according to their terms." (Opp'n 18.) "However, this policy is inapplicable to the question of whether a particular party is bound by an arbitration agreement" or when there is no agreement to arbitrate. *NYLIFE Sec., LLC v. Duhame*, 2020 WL 7075599, at *4 (N.D. Cal. Dec. 3, 2020); *see also Morgan Stanley & Co. v. Couch*, 659 F. App'x 402, 406 (9th Cir. 2016) (forcing parties to arbitrate "when it is doubtful" that they "ha[ve] any obligation to do so" "does not serve any public interest").

This Court held in *Abbruzzese* that the public interest favored defendants because Valve as the drafter should not be permitted to "abandon arbitration once its chosen field becomes muddy." 2026 WL 1481630, at *12. But here Valve did not unilaterally abandon arbitration; the parties

PLAINTIFF VALVE
CORPORATION'S REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
(No. 2:26-cv-000698-JNW) - 11

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

mutually agreed to the Current SSA. The Court also raised concerns about "the prospect of serial forum-switching." *Id.* There is no indication, however, that Valve would attempt to engage in serial forum-switching. If anything, the record refutes that notion: Valve has changed the forum for disputes in the SSA just once in the last 15 years. (Lynch Decl. ¶¶ 5-6.) But those are mere hypotheticals, and, regardless, courts overseeing class actions have authority to step in where appropriate. *See Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1065 (W.D. Wash. 2019).

### E.    The Court Should Not Require a Bond

Courts do not impose a bond requirement when enjoining arbitrations. (Mot. 21.) Defendant suggests that an injunction would cause "compensable harm such as the costs of maintaining his records, reactivating his Subscriptions, and/or refiling the arbitration if necessary" and that he would "lose[] access to his games." (Opp'n 19.) However, Defendant fails to substantiate these purported costs.

### III.    CONCLUSION

The Court should enjoin Defendant's arbitration.

DATED: June 3, 2026

I certify that this memorandum contains 4,200 words, in compliance with the Local Rules.

CORR CRONIN LLP

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Plaintiff Valve Corporation*

PLAINTIFF VALVE
CORPORATION'S REPLY IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
(No. 2:26-cv-000698-JNW) - 12

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900